ORIGINAL

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2019 JAN 14 PM 4: 18

KUBO
CLERK

GALIHER DeROBERTIS & WAXMAN LLP

PETER A. KRAUS      10912
ALLISON M. AOKI      6912
ALYSSA R. SEGAWA      9798
820 Mililani Street, Suite 505
Honolulu, Hawai'i 96813
Telephone: (808) 597-1400
Facsimile: (808) 591-2608
Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| TERRY N. AGENA, Individually and as the Legal Representative of the Estate of JAMES K. AGENA, Deceased; | CIVIL NO. **19-1-0074-01** (JHA)<br>(Toxic Tort/Asbestos Personal Injury) |
| KERI YAMAMOTO, as the Legal Representative of the Estate of ANTONIO P. AGODONG, Deceased, and as the Legal Representative of NANCY AGODONG; | **COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |
| JOHN MANUEL, Successor Trustee of the BENJAMIN ALMASON Trust; | |
| TERRY ALDEAN BLEVINS, Legal Representative of the Estates of JAMES BLEVINS and HAZEL BLEVINS, Deceased; | |
| JANE LORRAINE BROWN, GILES BROWN, BRADY BROWN, Individually and JANET ILENE FUTCH, Individually and as the Legal Representative of the Estate of BOB C. BROWN, Deceased; | |
| JOYCE C. CABASUG, Individually and as Successor Trustee of the ROBERT A. CABASUG Revocable Living Trust; | Complex Litigation<br>Judge: Honorable James H. Ashford<br>Trial Date: None |
| ANITA M. CASSANI, Individually and as Legal Representative of the Estate of VINCENT J. CASSANI JR, Deceased; | |

RECEIVED
$ 315.00

RECEIVED
$200.00

1

PAULINE GAIL CHANG, Individually and )
as Legal Representative of the Estate of )
HARRISON M.Y. CHANG, Deceased; )

KARRO YEE, as the Legal Representative )
of the Estates of JANET A.T. CHU and )
JACK S.Y. CHU, Deceased; )

ANN CHRISTINE FABER, Individually )
and as Legal Representative of the Estate of )
CLARENCE E. FABER, Deceased; )

HENRY TAKAKI, Individually and as the )
Legal Representative of the Estate of FAYE )
GARRETT-TAKAKI, Deceased; )

JEANNE KAHANAOI, Individually and as )
Successor Co-trustee of the DAVID )
KAWIKA KAHANAOI, SR. Trust; )

HARRIET H. KANESHIRO, Individually )
and as Trustee for the WALTER M. )
KANESHIRO Revocable Living Trust; )

GRACE R. MEANS, Individually and as )
Legal Representative of the Estate of )
HOMER W. MEANS, Deceased; )

LEINA MORTON, Individually and as )
Personal Representative for the Estate of )
LEONARD E. MORTON, Deceased; )

IRENE MUNZE, as the Legal )
Representative of the Estate of PETER )
PAGAN JR., Deceased; )

MERCEDES PAGATPATAN, Individually, )
and TERESA PAGATPATAN GRACE, as )
Successor Trustee of the GEORGE )
PAGATPATAN, JR. Trust; )

WANDA J. RALSTON, Individually, and )
CURTIS B. RALSTON, as Legal )
Representative of the Estate of MIKE R. )
RALSTON, Deceased; )

)
)
)

2

HISAE RIO, Individually and as Successor )
Trustee of the BARNEY RIO Revocable )
Living Trust; )
)
MERLE E. LOUI-SAKAMOTO, as )
Successor Trustee to the ERNEST Y. )
SAKAMOTO Trust; )
)
THERESA R. SCHRINER, Individually )
and as Legal Representative of the Estate of )
CHARLES T. SCHRINER, Deceased; )
)
KATHERINE K. YEE, Individually and as )
Legal Representative of the Estate of )
JAMES K.L. YEE, Deceased; )
)
CYNTHIA CALVEY, as the Legal )
Representative of the Estate of RICHARD J. )
AKAU, SR., Deceased, and as the Legal )
Representative of the Estate of AMY K. )
AKAU, Deceased; )
)
MARVELYN BAKER, as the Legal )
Representative of GERALDINE )
ALAPASCO, and JULINA GLAZA, as the )
Legal Representative of the Estate of )
JULIAN ALAPASCO, Deceased; )
)
ENID L. CABATBAT, Individually and as )
the Legal Representative of the Estate of )
ARTURO S. CABATBAT, Deceased; )
)
BERNADETTE M. RICHARDSON, )
Successor Trustee to the RAYMOND )
SOUZA CAVACO TRUST; )
)
PRISCILLA CHAMIZO, Individually and )
as the Legal Representative of the Estate of )
ALLAN BOB CHAMIZO, Deceased; )
)
JOHN MICHAEL CLEMENTE, as the )
Legal Representative of the Estate of )
MARY AUGUSTA BEKSTROM )
CLEMENTE, the widow of STEPHEN )
ARTHUR CLEMENTE, Deceased; )
)
)
)

3

RAFAEL de la SIERRA, as the Legal )
Representative of the Estate of MANUEL )
de la SIERRA, Deceased; )
 )
WARREN K. DOTE, as the Legal )
Representative of the Estate of KENNETH )
S. DOTE, Deceased; )
 )
STELLA S. ISARA, Individually and as )
Successor Trustee to the KENNETH K. )
ISARA Trust; )
 )
HERBERT H. ISARA, as the Legal )
Representative of the Estate of DOROTHY )
Y. ISARA, Deceased; )
 )
PAULA YONEZAWA, as the Legal )
Representative of the Estate of WALLACE )
S.M. KIM, Deceased; )
 )
ROSALYN W. BOHNER, as the Successor )
Trustee to the SAMUEL B.Y. LUM Trust; )
 )
JEANIE RACOMA, Individually and as the )
Legal Representative of the Estate of )
ROCKY RACOMA, Deceased; )
 )
HELEN SHIMAZU, Individually and )
CHERYL MATSUMOTO, as the Legal )
Representative of the Estate of PETER K. )
SHIMAZU, Deceased; )
 )
ROXANE E. SHINTAKU, as the Legal )
Representative of the Estate of ROSEI )
SHINSATO, Deceased; )
 )
GERMAINE ALBESO, as the Legal )
Representative of the Estates of )
MELCHIRO VILLIATORA, SR., )
Deceased, and SHINAKO VILLIATORA, )
Deceased; )
 )
CLARITA WICKMAN, Individually and as )
Legal Representative of the Estate of )
PATRICK WICKMAN, Deceased; )
 )
 )
 )

4

ETHEL Y. FUJII, Individually and as the
Legal Representative of the Estate of
JAMES NAOTO FUJII, Deceased;

ANNE NONIES, Individually and as
Trustee for the MAXIMO AND ANNE
NONIES REVOCABLE LIVING TRUST;

DAVID K. PARAGES, as the Legal
Representative of the Estates of
ALEXANDER R. PARAGES, Deceased,
and MAY P. PARAGES, Deceased;

TERESITA AGUILAR, Individually and as
the Legal Representative of the Estate of
WALFRED T. AGUILAR, Deceased;

NOFOTOLU ALO and MANHART ALO;

JOSEPH A. BEHLERT and MARIA
LUISA BEHLERT;

HERMAN CALBERO, JR. and EVELYN
CALBERO;

DANILO M. CAPATI;

BONG AE CHUN;

RICHARD M. FELIMER and FLORENCE
L. FELIMER;

SHARON L. GABALIS, Individually and
as the Legal Representative of the Estate of
ABSTININCIO GABALIS, Deceased;

GLENN KAAWALAUOLE and LINDA J.
KAAWALAUOLE;

DOUGLAS P. LEITE and MARY ANN K.
LEITE;

BARBARA JEAN OSHIRO, Individually
and JOANN ROTH, as the Legal
Representative of the Estate of NORMAN
OSHIRO, SR., Deceased;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

5

PATSY R. OTA, Individually and as the )
Legal Representative of the Estate of )
HERBERT T. OTA, Deceased; )

LYNN DELL PALADA, Individually and )
as Trustee of the Palada Joint Trust; )

EARL R. RIVEIRA, as the Successor )
Trustee of the Revocable Trust of )
PATRICK A. RIVEIRA; )

WINIFRED K.H. ROBINSON, Individually )
and as Legal Representative of the Estate of )
CHARLES ROBINSON, Deceased; )

ALBIN ROSALDO and PRUDENCE )
ROSALDO; )

DANIEL SANTOS, JR.; )

WAYNE K. THOMPSON, as the Legal )
Representative of the Estate of DAVID M. )
THOMPSON, JR., Deceased; )

                Plaintiffs, )

    vs. )

1) CLEAVER-BROOKS, INC., a Delaware )
corporation; )

2) HUSCH BLACKWELL, as successor-in- )
interest to WHYTE HIRSCHBOECK )
DUDEK, a Missouri law firm; and )

3) DOES 1 to 25, )

               Defendants. )
    )
    )

\\ai1dc101\clients\08000A29\pleading\COMPLAINT.docx

## **COMPLAINT**

### I.     **PARTIES**

1.      Plaintiff TERRY N. AGENA, Individually and as the Legal Representative of the Estate of JAMES K. AGENA, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  JAMES K. AGENA was a pipefitter at Pearl Harbor Naval Shipyard during the approximate years of 1960 to 1992.

2.      Plaintiff KERI YAMAMOTO, as the Legal Representative of the Estate of ANTONIO P. AGODONG and the Legal Representative of NANCY AGODONG, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  ANTONIO P. AGODONG was a warehouseman and stockman at Pearl Harbor Naval Shipyard during the approximate years of 1959 to 1966.

3.      Plaintiff JOHN MANUEL, Successor Trustee of the BENJAMIN ALMASON Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  BENJAMIN ALMASON worked as a longshoreman, engineman, and journeyman rigger at Pearl Harbor Naval Shipyard, and other shipyards, the Naval Supply Center in Hawaii, and other locations during the approximate years 1953 to 1989.

4.      Plaintiff TERRY ALDEAN BLEVINS, Legal Representative of the Estates of JAMES BLEVINS and HAZEL BLEVINS, is a resident of Wilkes County, State of North Carolina, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  JAMES BLEVINS served in the United States Navy during the approximate years 1946 to 1947.

5.     Plaintiffs JANE LORRAINE BROWN, GILES BROWN, BRADY BROWN, Individually and JANET ILENE FUTCH, Individually and as the Legal Representative of the Estate of BOB C. BROWN, are residents of Beauregard Parish, State of Louisiana, and PEGGY PERKINS, Individually, is a resident of Allen Parish, State of Louisiana, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  BOB C. BROWN served in the United States Navy during the approximate years 1948 to 1951 as a machinist mate aboard the following repair ships: USS Lenawee (APA-195) and USS Satyr (ARL-23).

6.     Plaintiff JOYCE C. CABASUG, Individually and as Successor Trustee of the ROBERT A. CABASUG Revocable Living Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  ROBERT A. CABASUG was a pipefitter at Pearl Harbor Naval Shipyard during the approximate years 1973 to 1982 and as a nuclear inspector and then nuclear engineer from March 1982 to January 2006.

7.     Plaintiff ANITA M. CASSANI, Individually and as Legal Representative of the Estate of VINCENT J. CASSANI JR., is a resident of the City of New Port Richey, State of Florida, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  VINCENT J. CASSANI JR. served in the United States Navy during the approximate years 1961 to 1967 and was employed by General Dynamics Corporation Electric Boat Division as an Electric test mechanic from 1965 to 1968.

8.     Plaintiff PAULINE GAIL CHANG, Individually and as Legal Representative of the Estate of HARRISON M.Y. CHANG, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later

8

in this complaint. HARRISON M.Y. CHANG was a boilermaker helper at Pearl Harbor Naval Shipyard during the approximate years 1964 to 1968.

9. Plaintiff KARRO YEE, as Legal Representative of the Estates of JACK S.Y. CHU and JANET A.T. CHU, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. JACK S.Y. CHU was a sheet metal worker at Pearl Harbor Naval Shipyard during the approximate years 1940 to 1972.

10. Plaintiff ANN CHRISTINE FABER, Individually and as Legal Representative of the Estate of CLARENCE E. FABER, is a resident of the City of Beaverton, State of Oregon, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. CLARENCE E. FABER served in the United States Navy during the approximate years 1945 to 1947 at Pearl Harbor Naval Shipyard.

11. Plaintiff HENRY TAKAKI, Individually and as the Legal Representative of the Estate of FAYE GARRETT-TAKAKI, is a resident of the City and County of Hawaii, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. FAYE GARRETT-TAKAKI was married to PIERRE APISALOMA, who was her husband from 1970 to 1979, and who worked at Pearl Harbor Naval Shipyard during the approximate years 1964 to 1997 as an electrician.

12. Plaintiff JEANNE KAHANAOI, Individually and as Successor Co-trustee of the DAVID KAWIKA KAHANAOI, SR. Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. DAVID KAWIKA KAHANAOI, SR. was a wiper, fireman, and merchant

seaman in boiler rooms, engine rooms, and machinery spaces in the Merchant Marines during the approximate years 1966 to 1977.

13.     Plaintiff HARRIET H. KANESHIRO, Individually and as Trustee for the WALTER M. KANESHIRO Revocable Living Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  WALTER M. KANESHIRO was a welder at Dillingham Shipyard during the approximate years 1964 to 1979.

14.     Plaintiff GRACE R. MEANS, Individually and as Legal Representative of the Estate of HOMER W. MEANS, is a resident of the City of Virginia Beach, State of Virginia, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  HOMER W. MEANS served in the United States Navy as a steward and was assigned to the USS WALTON (DE-361) from 1953 to 1956, homeported at Pearl Harbor Naval Shipyard, and also temporarily assigned to the USS RENSHAW (DD-499) for about 2 months at Pearl Harbor Naval Shipyard, then the USS HOLDER (DD-819) from 1956 to 1959, then the USS ROBERT L. WILSON (DD-847) from 1959 to 1960, then the USS BAINBRIDGE (DLGN-25) from 1963 to 1965, then the USS LEAHY (DDG-16) from 1965 to 1966, then the USS CHUKAWAN from 1966 to 1968 and then the USS GUADALCANAL (LPH-7) from 1972 to 1974.

15.     Plaintiff LEINA MORTON, Individually and as Personal Representative for the Estate of LEONARD E. MORTON, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  LEONARD E. MORTON was an electronics mechanic at Pearl Harbor Naval

Shipyard from 1955 to the late 1970s and a part-time electronics mechanic at Dillingham Shipyard in the late 1970s.

16.   Plaintiff IRENE MUNZE, as the Legal Representative of the Estate of PETER PAGAN JR., is a resident of the City of Pacifica, State of California, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. PETER PAGAN JR. was a boilermaker and shipfitter at Pearl Harbor Naval Shipyard during the approximate years 1966 to 2009.

17.   Plaintiffs   MERCEDES   PAGATPATAN,   Individually,   and   TERESA PAGATPATAN GRACE, as Successor Trustee of the GEORGE PAGATPATAN, JR. Trust, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.   GEORGE PAGATPATAN JR. was a shipyard worker at Pearl Harbor Naval Shipyard during the approximate years 1966 to 1968 and again from 1970 to 2004.

18.   Plaintiffs WANDA J. RALSTON, Individually, is a resident of the City of Odessa, State of Texas, and CURTIS B. RALSTON, as Legal Representative of the Estate of MIKE R. RALSTON, is a resident of the City of Midland, State of Texas, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.   MIKE R. RALSTON served in the United States Navy during the approximate years 1959 to 1965 as a boiler tender aboard the USS George K. MacKenzie (DD-836), USS Hamul (AD-20) and USS Isle Royale (AD-29).

19.   Plaintiff HISAE RIO, Individually and as Successor Trustee of the BARNEY RIO Revocable Living Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this

11

complaint. BARNEY RIO was a machinist at Hunters Point Naval Shipyard from 1967 to 1974, Puget Sound Naval Shipyard from 1974 to 1978, Mare Island Naval Shipyard from 1978 to 1979, and again at Hunters Point Naval Shipyard from 1979 to 1988.

20.     Plaintiff MERLE E. LOUI-SAKAMOTO, as Successor Trustee to the ERNEST Y. SAKAMOTO Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. ERNEST Y. SAKAMOTO was a machinist at Pearl Harbor Naval Shipyard during the approximate years 1947 to 1979.

21.     Plaintiff THERESA R. SCHRINER, Individually and as Legal Representative of the Estate of CHARLES T. SCHRINER, is a resident of the City of Big Rapids, State of Michigan, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. CHARLES T. SCHRINER served in the United States Navy as a boiler tender during the approximate years 1950 to 1954 aboard the USS Walton (DE-361).

22.     Plaintiff KATHERINE K. YEE, Individually and as Legal Representative of the Estate of JAMES K.L. YEE, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. JAMES K.L. YEE was a woodworker, shipwright, and foreman shipwright at Pearl Harbor Naval Shipyard during the approximate years 1942 to 1945 and 1947 to 1980, and served in the United States Army from 1945 to 1947.

23.     Plaintiff CYNTHIA CALVEY, as the Legal Representative of the Estate of RICHARD J. AKAU, SR., and as the Legal Representative of the Estate of AMY K. AKAU, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful

12

and tortious conduct of Defendants as explained later in this complaint. RICHARD J. AKAU, SR. was a shipfitter at Pearl Harbor Naval Shipyard during the approximate years 1941 to 1975.

24.    Plaintiff MARVELYN BAKER, as the Legal Representative of GERALDINE ALAPASCO, is a resident of the City and County of Honolulu, State of Hawaii, and JULINA GLAZA, as the Legal Representative of the Estate of JULIAN ALAPASCO, is a resident of the City of Hesperia, State of California, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. JULIAN ALAPASCO was a boiler maker apprentice and refrigeration helper at Pearl Harbor Naval Shipyard during the approximate years 1941 to 1952, and as a heating plant operator for the State of Hawaii during the approximate years 1948 to 1952.

25.    Plaintiff ENID L. CABATBAT, Individually and as the Legal Representative of the Estate of ARTURO S. CABATBAT, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. ARTURO S. CABATBAT was a pipefitter at Pearl Harbor Naval Shipyard during the approximate years 1975 to 2004.

26.    Plaintiff BERNADETTE M. RICHARDSON, Successor Trustee to the RAYMOND SOUZA CAVACO TRUST, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. RAYMOND S. CAVACO was a laborer at Pearl Harbor Naval Shipyard during the approximate years 1940 to 1941 and as a utility worker for Marine Cooks & Stewards from 1945 to 1972.

27.    Plaintiff PRISCILLA CHAMIZO, Individually and as the Legal Representative of the Estate of ALLAN BOB CHAMIZO, is a resident of the City and County of Honolulu, State of

Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. ALLAN BOB CHAMIZO was a pipefitter at Pearl Harbor Naval Shipyard during the approximate years 1960 to 1993.

28.    Plaintiff JOHN MICHAEL CLEMENTE, as the Legal Representative of the Estate of MARY AUGUSTA BEKSTROM CLEMENTE, the widow of STEPHEN ARTHUR CLEMENTE, is a resident of the City of Carlsbad, State of California, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. STEPHEN ARTHUR CLEMENTE was a sheetmetal worker at Pearl Harbor Naval Shipyard during the approximate years 1941 to 1979.

29.    Plaintiff RAFAEL de la SIERRA, as the Legal Representative of the Estate of MANUEL de la SIERRA, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. MANUEL de la SIERRA served in the United States Navy as a forward battery steward during the approximate years 1961 to 1990, and worked aboard the USS Atule (SS-403) at Portsmouth Shipyard in Virginia, and overhauled, among other ships, the USS Blueback (SS-581) at Bremerton Shipyard in Washington State, and the USS John Adams, USS Sailfish, and USS Gudzeon at Pearl Harbor Naval Shipyard.

30.    Plaintiff WARREN K. DOTE, as the Legal Representative of the Estate of KENNETH S. DOTE, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. KENNETH S. DOTE was an outside machinist at Pearl Harbor Naval Shipyard during the approximate years 1952 to 1957 and 1963 to 1985, and served in the United States Navy as a marine machinist during the approximate years 1957 to 1963.

14

31.    Plaintiff STELLA S. ISARA, Individually and as Successor Trustee to the KENNETH K. ISARA Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. KENNETH K. ISARA was a mason and plasterer in private industries in Hawaii and other locations during the approximate years 1947 to 1962, and at Fort Shafter and Tripler Army Medical Center during the approximate years 1962 to 1984.

32.    Plaintiff HERBERT H. ISARA, as the Legal Representative of the Estate of DOROTHY Y. ISARA, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. DOROTHY Y. ISARA was married to RAYMOND ISARA, who was a plumber at the Public Works Center (PWC) at Pearl Harbor Naval Shipyard during the approximate years 1950 to 1980.

33.    Plaintiff PAULA YONEZAWA, as the Legal Representative of the Estate of WALLACE S.M. KIM, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. WALLACE S.M. KIM was a machinist helper at Pearl Harbor Naval Shipyard during the approximate years 1942 to 1944, served in the United States Navy during the approximate years 1944 to 1946, and was an electrician at the Public Works Center at Pearl Harbor during the approximate years 1959 to 1961.

34.    Plaintiff ROSALYN W. BOHNER, as the Successor Trustee to the SAMUEL B.Y. LUM Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. SAMUEL B.Y. LUM served in the United States Army during the approximate years 1946 to 1948 and worked as a shipfitter at Pearl Harbor Naval Shipyard during the approximate years 1941 to 1977.

35.     Plaintiff JEANIE RACOMA, Individually and as the Legal Representative of the Estate of ROCKY RACOMA, is a resident of the City of San Antonio, State of Texas, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. ROCKY RACOMA was a pipefitter at Pearl Harbor Naval Shipyard during the approximate years 1959 to 1979.

36.     Plaintiff HELEN SHIMAZU, Individually and CHERYL MATSUMOTO, as the Legal Representative of the Estate of PETER K. SHIMAZU, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. PETER K. SHIMAZU was an outside machinist at Pearl Harbor Naval Shipyard during the approximate years 1950 to 1980.

37.     Plaintiff ROXANE E. SHINTAKU, as the Legal Representative of the Estate of ROSEI SHINSATO, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. ROSEI SHINSATO was an inside machinist at Pearl Harbor Naval Shipyard during the approximate years 1954 to 1985.

38.     Plaintiff GERMAINE ALBESO, as the Legal Representative of the Estates of MELCHIRO VILLIATORA, SR. and SHINAKO VILLIATORA, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. MELCHIRO VILLIATORA, SR. was a marine machinist at Pearl Harbor Naval Shipyard during the approximate years 1947 to 1982.

39.     Plaintiff CLARITA WICKMAN, Individually and as Legal Representative of the Estate of PATRICK WICKMAN, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in

this complaint. PATRICK WICKMAN was a deckhand in the Merchant Marines during the approximate years 1947 to 1950, served in the United States Army on boats during the approximate years 1950 to 1953, and worked at Hunter's Point Naval Shipyard during the approximate years 1966 to 1971, including but not limited to the following ships and submarines: USS Bonefish, USS Coral Sea, USS Enterprise, USS Midway, USS Oriskany, and USS Ranger.

40.     Plaintiff ETHEL Y. FUJII, Individually and as the Legal Representative of the Estate of JAMES NAOTO FUJII, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. JAMES NAOTO FUJII served in the United States Air Force during the approximate years 1952 to 1956, was a civilian electronics mechanic at Pearl Harbor Naval Shipyard during the approximate years 1958 to July 1967 and was a Production Shop Planner (Electronics) at Pearl Harbor Naval Shipyard during the approximate years July 1967 to December 1989.

41.     Plaintiff ANNE NONIES, Individually and as Trustee for the MAXIMO AND ANNE NONIES REVOCABLE LIVING TRUST, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. MAXIMO NONIES, SR. was an outside machinist at Pearl Harbor Naval Shipyard during the approximate years 1941 to 1945 and 1949 to 1980.

42.     Plaintiff DAVID K. PARAGES, as the Legal Representative of the Estates of ALEXANDER PARAGES and MAY P. PARAGES, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. ALEXANDER R. PARAGES was an asbestos insulator at Pearl Harbor Naval Shipyard during the approximate years 1965 to 1993 and an asbestos worker in private industry from 1958 to 1965.

17

43.     Plaintiff TERESITA AGUILAR, Individually and as the Legal Representative of the Estate of WALFRED T. AGUILAR, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. WALFRED T. AGUILAR served in the United States Navy as a mess management specialist/cook and general laborer during the approximate years 1960 to 1990 on the USS Forrestal, USS Independence, USS Sea Leopard, USS Clamagore, USS Cavalla, USS Sirago (SS 485), USS Sea Devil (SSN 664), USS N. Hale (SSBN 623), and USS George Washington (SSBN 598).

44.     Plaintiffs NOFOTOLU ALO and MANHART ALO, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. NOFOTOLU ALO was a boilermaker at Pearl Harbor Naval Shipyard during the approximate years 1962 to 1980, part-time boilermaker at Pacific Marine/Kapalama Shipyard during the approximate years 1964 to 1979, part-time boilermaker at Honolulu Iron Works during the approximate years 1966 to 1969, and part-time boilermaker at Fraser Boiler Service in approximately 1980.

45.     Plaintiffs JOSEPH A. BEHLERT and MARIA LUISA BEHLERT, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. JOSEPH A. BEHLERT served in the United States Navy during the approximate years 1970 to 1994, serving aboard the USS Newport (LST 1179) during the approximate years 1971 to 1974 and aboard the USS Peoria (LST 1183) during the approximate years 1974 to 1979.

46.     Plaintiffs HERMAN CALBERO, JR. and EVELYN CALBERO, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious

18

conduct of Defendants as explained later in this complaint.  HERMAN CALBERO, JR. was a welder at Kapalama Shipyard during the approximate years 1965 to 1972 and as a welder/boilermaker at Hawaiian Electric Company (HECO) during the approximate years 1972 to 2002.

47.     Plaintiff DANILO M. CAPATI, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  DANILO M. CAPATI served in the United States Navy as a steward, warehouseman, and ship's serviceman during the approximate years 1965 to 1989.

48.     Plaintiff BONG AE CHUN, is the widow of CHARLES Y. K. CHUN and is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  CHARLES Y. K. CHUN was a pipefitter at Pearl Harbor Naval Shipyard during the approximate years 1940 to 1976.

49.     Plaintiffs RICHARD M. FELIMER and FLORENCE L. FELIMER, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  RICHARD M. FELIMER served in the United States Navy as a shipfitter during the approximate years 1957 to 1961, as a journeyman plumber for the United States Government during the approximate years 1961 to 1966, and as a pipefitter at Pearl Harbor Naval Shipyard during the approximate years 1966 to 1980.

50.     Plaintiff SHARON L. GABALIS, Individually and as the Legal Representative of the Estate of ABSTININCIO GABALIS, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later

in this complaint. ABSTININCIO GABALIS was an outside machinist at Pearl Harbor Naval Shipyard during the approximate years 1962 to 1993.

51.     Plaintiffs GLENN KAAWALAUOLE and LINDA J. KAAWALAUOLE, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. GLENN KAAWALAUOLE served in the United States Navy during the approximate years 1960 to 1964 aboard the USS Midway, as a machinist in private industry during the approximate years 1964 to 1972, and as a machinist at Pearl Harbor Naval Shipyard during the approximate years 1972 to 1980.

52.     Plaintiffs DOUGLAS P. LEITE and MARY ANN K. LEITE, are residents of the City and County of Hawaii, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. DOUGLAS P. LEITE was a machinist at Pearl Harbor Naval Shipyard during the approximate years 1966 to 1972.

53.     Plaintiffs BARBARA JEAN OSHIRO, Individually and JOANN ROTH, as the Legal Representative of the Estate of NORMAN OSHIRO, SR., are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. NORMAN OSHIRO, SR. was a welder at Pearl Harbor Naval Shipyard during the approximate years 1959 to the late 1970s.

54.     Plaintiff PATSY R. OTA, Individually and as the Legal Representative of the Estate of HERBERT T. OTA, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. HERBERT T. OTA was a welder at Pearl Harbor Naval Shipyard during the approximate years 1950 to 1958.

55.     Plaintiff LYNN DELL PALADA, Individually and as Trustee of the Palada Joint Trust, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  LYNN DELL PALADA is the widow of ANACLITO PALADA.  ANACLITO PALADA was a boiler maker at Pearl Harbor Naval Shipyard during the approximate years 1966 to 1994.

56.     Plaintiff EARL R. RIVEIRA, as the Successor Trustee of the Revocable Trust of PATRICK A. RIVEIRA, is a resident of the City of Castro Valley, State of California, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. PATRICK A. RIVEIRA was a Merchant Marine on board vessels in private industries in Hawaii during the approximate years 1967 to 1969, on board the USS President Cleveland, Hannibal Victory (State Steamship Company, 320 California St., San Francisco, CA), SS Clarksburg Victory, SS Ohio (States Steamship Co.), and SS Lurline (Matson Navigation Co., San Francisco), among others.

57.     Plaintiff WINIFRED K.H. ROBINSON, Individually and as Legal Representative of the Estate of CHARLES ROBINSON, is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.   CHARLES ROBINSON served in the United States Navy during the approximate years 1951 to 1971.

58.     Plaintiffs ALBIN ROSALDO and PRUDENCE ROSALDO, are residents of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.  ALBIN ROSALDO was a laborer at Pearl Harbor Naval Shipyard during the approximate years 1974 to 1979.

59.     Plaintiff DANIEL SANTOS, JR. is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. DANIEL SANTOS, JR. was a marine machinist at Pearl Harbor Naval Shipyard during the approximate years 1961 to 1992.

60.     Plaintiff WAYNE K. THOMPSON, as the Legal Representative of the Estate of DAVID M. THOMPSON, JR., is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint. DAVID M. THOMPSON, JR. was a machinist at Pearl Harbor Naval Shipyard during the approximate years 1951 to 1964, at Dillingham Shipyard during the approximate years 1958 and 1968 to 1985, and at Kapalama Shipyard during the approximate years 1964 to 1967.

61.     Defendant CLEAVER-BROOKS, INC., a Delaware corporation (hereinafter also "CLEAVER-BROOKS"), manufactured, sold, and/or supplied certain asbestos products which were ultimately used by workers, and/or to which workers came in contact, while working in their trades and occupations in the State of Hawai'i and other locations. Defendant above named also manufactured, sold, and/or supplied certain asbestos products to Pearl Harbor Naval Shipyard and other shipyards and ships for use in the general overhaul, building, refitting, and maintenance of ships. Defendant sold and supplied certain equipment to the United States Navy and Pearl Harbor Naval Shipyard and other shipyards, which contained asbestos gaskets and/or packing and which were sold by said defendant as after-market replacement parts and which required asbestos insulation, or required other asbestos containing parts to function properly; and also sold replacement components parts for their equipment, including asbestos gaskets and packing which were identical to their commercial counterparts. This equipment includes but is not limited to

22

auxiliary boilers, distilling plants, distillers, evaporators and through its predecessor Davis Engineering, fuel oil heaters, heat exchangers, and feed water heaters.

62.    Defendant HUSCH BLACKWELL, as successor-in-interest to WHYTE HIRSCHBOECK DUDEK, is a law firm whose main office is located in Kansas City, Missouri. WHYTE HIRSCHBOECK DUDEK ("WHD") has been CLEAVER-BROOKS'S national coordinating counsel in nationwide asbestos litigation and merged with HUSCH BLACKWELL in 2016.

63.    The true names and capacities of Defendants DOES 1 to 25, inclusive, and each of them, are unknown to Plaintiffs, who, therefore sue these Defendants by such fictitious names and will ask leave of court to amend this Complaint when the same shall have been ascertained. Defendants DOES 1 to 25 ("DOE Defendants") are unidentified and presently unknown party defendants sued under fictitious names pursuant to HRCP Rule 17(d). Plaintiffs have been unable to ascertain these defendants, who are in some manner legally responsible for Plaintiffs' injuries. When ascertained, Plaintiffs will seek leave to certify the name or identity of any presently unidentified party defendant. Despite due diligence, which has included a review of records, Plaintiffs have been unable to identify DOE Defendants. Plaintiffs are informed and believes and upon such information and belief states the fact to be that each Defendant designated herein as a "DOE" was responsible, in some manner, for the events and happenings referred to herein and that DOES 1 to 25 were members or employees of the WHYTE HIRSCHBOECK DUDEK law firm who engaged in the fraudulent discovery as set out below, and other unknown persons who aided and abetted the plan to provide fraudulent discovery answers in the nationwide asbestos litigation, which included serving fraudulent discovery answers in the Hawaii asbestos litigation, as set out below.

## II.     JURISDICTION AND VENUE

64.     This Court has jurisdiction over Plaintiffs' claims of fraud and claims under Haw. Rev. Stat. § 842-2 pursuant to Haw. Rev. Stat. § 603-21.5 and concurrent jurisdiction over Plaintiffs' claims under 18 U.S.C. § 1962(a) and § 1962(c) pursuant to *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792 (1990).

65.     Venue is predicated upon Haw. Rev. Stat. § 603-36(5), which provides for venue in the circuit where the claim for relief arose, and 18 U.S.C. § 1965, which provides for venue in any district in which any defendant transacts its affairs.

66.     This Court has personal jurisdiction over Defendants CLEAVER-BROOKS and WHYTE HIRSCHBOECK DUDEK as they have transacted business and committed tortious acts with the State of Hawai'i under Hawaii Revised Statutes § 634-35(a)(1) and (a)(2).

## III.     FACTUAL PREDICATE

67.     Cleaver-Brooks has been a defendant in asbestos litigation for almost 40 years. Cleaver-Brooks was first sued in 1979 in *Salzgeber v. Certain-Teed*, Civ. No. 79 L 13972 (Cook County, IL), a workers' compensation and product liability claim brought by a Cleaver-Brooks Boiler Services employee who died of mesothelioma.

68.     Cleaver-Brooks's corporate counsel at Whyte Hirschboeck Dudek (collectively "Defendants") has been involved in Cleaver-Brooks's defense since that very first case.

69.     Cleaver-Brooks was first sued in Hawaii asbestos litigation in 2005 in the case of *Faber v. Viacom, Inc., et al.*, Civ. No. 04-1-1297-07 (EEH).

70.     Cleaver-Brooks first served, through the mail and/or wires, Defendant Cleaver-Brooks, Inc. fka Aqua-Chem, Inc. dba Cleaver-Brooks Company's Responses to Plaintiffs' Amended Master Set of Interrogatories on June 21, 2007.

**A. Defendants' Intentional Failure to Identify Asbestos-Containing Distilling Equipment and Davis Engineering Heat Exchangers Sold by Cleaver-Brooks for Decades.**

71.     Cleaver-Brooks is a successor-in-interest to Aqua-Chem, Inc., a large equipment company which manufactured at least three distinct asbestos-containing product lines for much of the twentieth century. The first was boilers (sold under the name Cleaver-Brooks), the second was water distillation equipment (sold under the Aqua-Chem brand name), and the third was heat exchangers (sold under the Davis Engineering brand name).

72.     The water-distillation and heat exchanger product lines were a major part of Aqua-Chem's business. By 1969, Aqua-Chem and its licensees had built more than half of the world's large water distillation plants, and that 90% of all naval and commercial vessels in operation had Davis Engineering heat exchangers on board.

73.     Cleaver-Brooks continued to sell asbestos-containing replacement parts for its boilers through at least 1994, and sold asbestos gaskets for water distillation equipment at least through 1996.

74.     From at least 1997, Cleaver-Brooks has served, through the mail and/or wires, the same boilerplate response to nearly every discovery request which asked Cleaver-Brooks to identify its historical sales of asbestos products:

> a.  In order to determine whether any particular Cleaver-Brooks boiler was equipped with one or more asbestos-containing parts and components, it would be necessary to first locate the commercial boiler file for that individual boiler and then to search a matrix of approximately 12,000,000 documents in order to locate the specific drawings and other materials which would describe the precise manufacture of the particular boiler in question. It would take an experienced employee approximately 35 to 40 hours to research all of the drawings and other materials which were used in the manufacture of that particular boiler. When those materials have been assembled and reviewed, it would be impossible to determine whether that particular boiler had one more parts and components which contained some asbestos. This search will not, however, determine whether any other Cleaver-

Brooks boiler contained asbestos containing parts or components. To make that determination, the process must be repeated for each individual boiler.

75.    This is the same boilerplate response that Cleaver-Brooks gave in its Responses to Plaintiffs' Amended Master Set of Interrogatories that was served in 2007.

76.    Absent from this standard response is any mention of Cleaver-Brooks's asbestos-containing Aqua-Chem distillers and Davis heat exchangers.

77.    Even in response to case-specific interrogatories related to Cleaver-Brooks's asbestos-containing equipment on specific Navy vessels and shipyards, Cleaver-Brooks intentionally limited its responses to boilers only.

78.    Documents produced by Cleaver-Brooks in May 2015 ("May 2015 Production") include a memorandum dated August 7, 1996, from Aqua-Chem Treasurer Ron Thimm to new CEO Jeff Miller, which specifically identified asbestos products sold by its Water Technologies division as a potential source of future asbestos liability.

79.    Thimm noted that as of 1996, Cleaver-Brooks had been sued by 6,721 plaintiffs for asbestos in boilers, but that "Water Tech, IC, IBC, and CB Canada have all used asbestos but have never had a claim" even though Aqua-Chem continued to sell asbestos gaskets for Navy distillers.

80.    Thimm further noted that although no direct claims had been filed for distilling equipment, Cleaver-Brooks faced an indemnification claim from a shipyard that had been sued by a retired Water Tech serviceman with asbestosis. Thus, Cleaver-Brooks was fully aware in 1996 that it was potentially liable to Navy veterans and shipyard workers who were exposed to asbestos from its Aqua-Chem distillers and Davis heat exchangers.

81.    However, Cleaver-Brooks never voluntarily disclosed its sales of asbestos in Water Tech equipment even when directly asked in interrogatories to identify all asbestos-containing products that Cleaver-Brooks ever sold.

82.     Instead, since the mid-1990s, Cleaver-Brooks and its counsel at WHD, using the mail and/or wires, served intentionally limited answers to discovery in asbestos litigation to the boiler products for which Cleaver-Brooks was already being sued.

## B. Defendants' Intentional Withholding of Aqua-Chem and Davis Engineering Documents

83.     Cleaver-Brooks and its counsel at WHD continued their fraudulent withholding of evidence even where Plaintiffs in Navy and shipyard cases were able to identify Cleaver-Brooks's distillers and heat exchangers through independent archive research.

84.     While Cleaver-Brooks did not deny that the products existed, Cleaver-Brooks and its counsel used the same boilerplate language above in refusing to provide information or documents for Aqua-Chem and Davis products, merely substituting the word "boiler" with "water distillation equipment."

85.     Plaintiffs in the Hawaii litigation requested drawings, sales records, technical manuals, and other documents related to Aqua-Chem and Davis equipment on specific ships.

86.     Cleaver-Brooks and its counsel, using the mail and/or wires, served responses claiming that the Aqua-Chem equipment could only be identified through Navy archives or other third-party sources; and that the documents had to be retrieved through a labor-intensive process which took 35 to 100 hours for each piece of equipment, making them almost inaccessible.

87.     Until Plaintiffs began filing motions to compel in the Hawaii litigation in late 2014, Cleaver-Brooks refused to produce a single document related to its Aqua-Chem and Davis product lines which had not been independently obtained by Plaintiffs' counsel. The only document voluntarily produced by Cleaver-Brooks for its Aqua-Chem and Davis product lines was a transcript of a Rule 30(b)(6) deposition of Cleaver-Brooks taken by this firm in January 2009, with "most of the exhibits," although Cleaver-Brooks refused to authenticate the exhibits.

88.     Cleaver-Brooks, using the mail and/or wires, otherwise responded to all requests for Aqua-Chem and Davis drawings, technical manuals, and sales records by falsely claiming that it was "unaware of documents responsive to this request."

89.     These discovery responses, which were served through the mail and/or wires, were false as revealed during the January 8, 2015, deposition of Cleaver-Brooks corporate representative, David Fitch, taken by court order in the *Cabasug* case. Mr. Fitch testified that the Aqua-Chem service files, manuals, and drawings were neatly organized in the files of Aqua-Chem, Inc., and could easily be retrieved by ship name in about two and half hours per ship.

90.     Without the Aqua-Chem drawings and engineering documents that were deliberately withheld, dozens of Hawai'i Plaintiffs settled their cases without knowing the full extent of Cleaver-Brooks's use of asbestos in its equipment. For instance, drawings that were not produced until 2015 demonstrated that not only did Cleaver-Brooks supply asbestos-containing replacement parts like gaskets to the Navy, but Cleaver-Brooks instructed the Navy that such replacement gaskets were proprietary and could not be purchased from third-party suppliers.

91.     These plaintiffs with Navy and shipyard exposure settled their claims with CB in reliance on CB's claims that it was unaware of any documents related to its distiller and heat exchanger product lines on Navy ships. Those responses were knowingly false, and the responsive documents were fraudulently withheld.

### C. Defendants' Intentional Withholding of Documents and Information Related to Cleaver-Brooks's Historical Use of Asbestos Products, Warnings, and Knowledge of Hazards.

92.     Until May 2015, Cleaver-Brooks and its counsel at WHD also fraudulently withheld the most basic information and documents related to Cleaver-Brooks's historical sales of asbestos products. These included some of the most fundamental questions in asbestos litigation: when Cleaver-Brooks stopped selling asbestos, its reasons for stopping, whether Cleaver-Brooks

28

ever received or considered any asbestos warnings or MSDS sheets on any of its products; and Cleaver-Brooks's historical knowledge of asbestos hazards. Despite having been a defendant in over 200,000 asbestos cases since the late 1970s, Cleaver-Brooks and its counsel falsely asserted in jurisdictions across the country that Cleaver-Brooks had no information or records available on any of these issues.

93.     Cleaver-Brooks and its counsel, though the mail and/or wires, responded to every request for information about its historical use of asbestos with a boilerplate, false statement claiming that all evidence related to Cleaver-Brooks's historical sales of asbestos products was locked away in a matrix of 12 million drawings and boiler job files which were organized in a way to make this information inaccessible.

94.     Cleaver-Brooks claimed that it could not provide any general information or documents about its historical sales of asbestos except through an arduous review of 12 million documents, which would take 35-100 hours per boiler and would only provide information about Cleaver-Brooks's use of asbestos in that particular piece of equipment.

95.     Again, these answers were intentionally false. The Cleaver-Brooks documents produced in July 2015, show that in 1980 Cleaver-Brooks's outside counsel responded to document requests in the *Salzgeber* case by 1) identifying 3000 specific asbestos products sold by Cleaver-Brooks boiler division by part prefix; 2) estimating that it would take a total of 3-4 months to compile all parts descriptions, drawings, and purchase records related to all asbestos products sold by the Cleaver-Brooks boiler division from three separate locations; and 3) specifically noting that these records were relevant to asbestos litigation because these asbestos products were sold as replacement parts for Cleaver-Brooks boiler and because their removal "might create free asbestos in the air."

96.     A handwritten note on the front of this letter indicates that it distributed to M.T. Hart of WHD on July 22, 1980.  Thus, Cleaver-Brooks and its outside counsel at WHD knew exactly how to identify the entire universe of asbestos-containing products sold by Cleaver-Brooks.  Contrary to decades of sworn testimony and discovery responses, this information was not locked away in an inaccessible matrix of 12 million documents.

97.     The records produced for the first time in May 2015 also directly contradict years of sworn testimony by Cleaver-Brooks's corporate representative that Cleaver-Brooks never made a policy decision to stop using asbestos; that Cleaver-Brooks has no documents related to its decision to stop using asbestos; and that Cleaver-Brooks's parts suppliers phased out use of asbestos "at times and for reasons unknown to Cleaver-Brooks."

98.     The May 2015 production showed that Cleaver-Brooks engineers systematically phased out the use of asbestos gaskets beginning in 1980 with the purpose of removing asbestos from Cleaver-Brooks product lines, and that this effort intensified in 1988 as a matter of policy pursuant to Cleaver-Brooks's newly adopted "Company Guidelines on Gasket Material & Reduce Company Product Liability."

99.     The Thimm memorandum produced in the May 2015 production also showed that Cleaver-Brooks's treasurer and CEO knew that the company was still selling asbestos gaskets for water distillation equipment in 1996, which is corroborated by newly produced sales records showing sales of replacement asbestos gaskets well into the 1990s.

100.     Many of these documents were created with future asbestos litigation in mind, as they describe the compilation of information about Cleaver-Brooks's use of asbestos to reduce its product liability.  All such documents were known and accessible to Cleaver-Brooks and its

outside counsel at WHD, but were intentionally withheld from Plaintiffs while Cleaver-Brooks falsely claimed that it did not know when or why it stopped using asbestos.

101.    The records produced in the May 2015 production also directly contradicted decades of Cleaver-Brooks's sworn testimony that it never received asbestos warnings or MSDS sheets from its suppliers, never considered providing such warnings with the asbestos products it sold, and had no records related to asbestos warnings or MSDS sheets.

102.    The documents produced in 2015 demonstrated that Cleaver-Brooks maintained MSDS sheets for a variety of asbestos products used in its equipment as part of a Hazard Communication Program established in the mid-1980s; that Cleaver-Brooks specifically discussed whether it was required to provide an MSDS sheet with asbestos gaskets sold to customers; and that the entire Hazard Communication Program was established with the guidance of Cleaver-Brooks's outside counsel at WHD.

103.    Additionally, contrary to its sworn testimony, Cleaver-Brooks both received and considered providing asbestos warnings with the asbestos components of its boilers, and did so under the guidance of WHD.

104.    The documents produced in 2015 showed that Cleaver-Brooks's responses to discovery, which were served through the mail and/or wires, were false, and that both Cleaver-Brooks and its corporate counsel at WHD knew that they were false when made.

105.    Cleaver-Brooks and WHD intentionally withheld this information from hundreds of thousands of asbestos plaintiffs for decades in order to make it more difficult for plaintiffs to prove their claims against Cleaver-Brooks and to thereby induce plaintiffs to settle for artificially low values.

**D. Defendants' Fraudulent Representation that Cleaver-Brooks Had Never Had a Workers' Compensation Claim Related to Asbestos**

31

106.    Cleaver-Brooks's corporate representatives have also falsely testified for decades that the company has never had an asbestos-related workers' compensation claim.  When asbestos plaintiffs requested records of workers' compensation cases from Cleaver-Brooks, Cleaver-Brooks responded, through the mail and/or wires, that no such records existed.

107.    Cleaver-Brooks then made this supposed lack of asbestos-related illness in its own employees a centerpiece of its defense to negligence.  For over two decades, Cleaver-Brooks's corporate representatives have claimed that Cleaver-Brooks has never had a workers' compensation claim for asbestos, and cited this as a primary basis for Cleaver-Brooks's belief that the asbestos in its products were "safe."

108.    George Provance, Cleaver-Brooks's corporate representative, began testifying in the mid-1990s that Cleaver-Brooks had "no reason to think that [its] product has ever harmed anyone" because "since 1930, when [it was] manufacturing, [it] had never had a workers' comp claim for any pleural diseases," and "these people work with the boilers every day."

109.    Another Cleaver-Brooks's corporate representative, John Tornetta, gave nearly identical testimony in numerous depositions in the WHD offices in Milwaukee, WI.  For instance, Mr. Tornetta testified, "Cleaver-Brooks – hasn't had a Worker's Comp claim related to asbestos, and with all the people that worked with it," and "[w]e have never received a Workers' Comp claim related to asbestos from people that have worked with these boilers for years, and we have been in business for 75 years."

110.    In Cleaver-Brooks' Answers to Master Interrogatories in Hawaii asbestos litigation, which were served through the mail and/or wires, Cleaver-Brooks stated under oath in 2007 that, "Cleaver-Brooks is not aware of any asbestos related injury or disease suffered by any employee in the history of the Company."

111. Plaintiffs' counsel believed that Cleaver-Brooks' assertion that it never had a workers' compensation claim nor any asbestos-related disease in any employee, as support for their claim that their products were safe, could be considered very appealing to a jury.

112. However, it turned out that these statements were false. Cleaver-Brooks did have workers' compensation claims related to asbestos and was aware of asbestos-related diseases among both boiler and distiller servicemen. In addition, Cleaver-Brooks's national coordinating counsel at WHD was well-aware of the existence of those claims at the time that Cleaver-Brooks's corporate representative testified under oath that Cleaver-Brooks had never had such a claim.

113. Documents related to those claims were finally produced in May and July 2015. These records showed Cleaver-Brooks was first sued in 1979 by a former Cleaver-Brooks Boiler Service employee who died of mesothelioma, and that Cleaver-Brooks successfully had the product liability claims against it in the *Salzgeber* case dismissed on workers' compensation grounds.

114. These documents also showed that Cleaver-Brooks had settled at least one workers' compensation claim for asbestosis in a plant employee as of August 7, 1996, and that Cleaver-Brooks was aware of another asbestosis claim by a former Water Tech serviceman in the same year.

115. The documents produced in 2015 also make it clear that Cleaver-Brooks's former national coordinating counsel and WHD partner, Michael Hart, was fully aware of Cleaver-Brooks's historical workers' compensation claims for asbestos. Mr. Hart was intimately involved in Cleaver-Brooks's defense of the 1979 workers' compensation claim in *Salzgeber*. However, Cleaver-Brooks's national coordinating counsel at WHD allowed Cleaver-Brooks to give false

33

discovery responses and perjured testimony that Cleaver-Brooks believed its products were safe because no such claims had ever been brought.

## IV.  CAUSES OF ACTION

### COUNT I
### FRAUDULENT INDUCEMENT OF A SETTLEMENT
### (Against All Defendants)

116.  Plaintiffs incorporate and re-allege the preceding paragraphs as if fully repeated herein.

117.  As set forth above, beginning on or about the mid-1990s, Cleaver-Brooks and its national coordinating counsel at WHD, together with and all or some of the Doe Defendants, engaged in a continuance, uniform and persistent pattern and practice of falsely misrepresenting the following material facts to Plaintiffs, their counsel, and presiding courts:

a.  That Cleaver-Brooks did not have evidence that it sold the water distillation equipment, sold under the Aqua-Chem brand name, and the heat exchangers, sold under the Davis Engineering brand name; and/or

b.  That Cleaver-Brooks was not in possession of Aqua-Chem and Davis Engineering Documents; and/or

c.  That Cleaver-Brooks had no information or records available as to the issue of Cleaver-Brooks's historical use of asbestos products, warnings, and knowledge of hazards; and/or

d.  That Cleaver-Brooks never had a workers' compensation claim related to asbestos.

118.  Each such representation was false and misleading at the time it was made.

119.  Defendants, acting as aforesaid, knew each representation was false and misleading at the time it was made.

34

120.    Plaintiffs and their counsel reasonably believed that such representations were true.

121.    Each misrepresentation was material and made for the purpose of inducing the Plaintiffs and their counsel to agree to artificially low settlement amounts, far below their settlement value if the true facts were known.

122.    Plaintiffs and their counsel reasonably and detrimentally relied upon the above misrepresentations and omissions and as a result acted in a way that caused Plaintiffs damage, specifically by agreeing to settle their claims for artificially low settlement amounts.

123.    Cleaver-Brooks, Inc. and Whyte Hirschboeck Dudek are liable to Plaintiffs for fraud and conspiracy to commit fraud for creating, implementing, and fostering this scheme to falsely answer discovery requests in Hawaii to induce low settlement agreements.

124.    As a direct and proximate result of the above fraud and deceitful conduct, Plaintiffs suffered harms, losses, and detriments, and request and demand relief and remedies in an as yet undetermined amount to be proven at trial.

### COUNT II
### VIOLATION OF 18 U.S.C. § 1962(a)
### (Against all defendants)

125.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully repeated herein.

126.    Defendant CLEAVER-BROOKS is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1964(c).

127.    Defendant WHYTE HIRSCHBOECK DUDEK is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1964(c).

128.    Defendants CLEAVER-BROOKS and WHYTE HIRSCHBOECK DUDEK, together, are an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(a), which

35

הbrief

enterprise has, at all relevant times, been engaged in activities that are in and affect interstate commerce.

129.    Defendants have been using or investing, directly or indirectly, in the establishment or operation of the enterprise, income received by Defendants and derived, directly or indirectly, from a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), 1961(5), and 1962(a), namely and as described more fully above, multiple related instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

130.    By reason of the violation of 18 U.S.C. § 1962(a) committed by Defendants, including their use or investment of racketeering income, Plaintiffs were injured within the meaning of 18 U.S.C. § 1964(c) in an as yet undetermined amount to be proven at trial.

131.    By reason of Defendants' violations as specified above, Plaintiffs are entitled to three times their actual damages pursuant to 18 U.S.C. § 1964, with interest thereon from the date of loss and reasonable attorneys' fees.

## COUNT III
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Against all defendants)

132.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully repeated herein.

133.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

134.    The association between Defendants, as more particularly alleged above, constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c), which enterprise has, at all relevant times, been engaged in activities which are in and affect interstate commerce.

135.   Defendants have shared a common purpose of perpetrating the fraud alleged above.

136.   Defendants have been related through Defendant CLEAVER-BROOKS employment and retainment of WHYTE HIRSCHBOECK DUDEK.

137.   Defendants' association in fact has been sufficient in duration to enable Defendants to perpetrate the fraud alleged above.

138.   Defendants have conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), 1961(5), and 1962(c), namely and as more fully described above, multiple related instances of mail and wire fraud in violation of 18 U.S.C. § 1341 and 343.

139.   In furtherance of their fraud, Defendants have utilized the enterprise's resources to carry out their pattern of racketeering activity.

140.   By reason of the violation of 18 U.S.C. § 1962(c) committed by Defendants, Plaintiffs were injured within the meaning of 18 U.S.C. § 1964(c) in an as yet undetermined amount to be proven at trial.

141.   By reason of Defendants' violations as specified above, Plaintiffs are entitled to three times their actual damages pursuant to 18 U.S.C. § 1964, with interest thereon from the date of loss and reasonable attorneys' fees.

### COUNT IV
### VIOLATION OF HAW. REV. STAT. § 842-2
### (Against all defendants)

142.   Plaintiffs incorporate and re-allege the preceding paragraphs as if fully repeated herein.

143.   Each Defendant is a "person" within the meaning of HRS §842-1 and 842-2.

144.   The association between Defendants, as more particularly alleged above, constitutes an "enterprise" within the meaning of HRS §842-1 and 842-2, which enterprise has, at all relevant times, been engaged in activities which are in and affect interstate commerce.

145.   Defendants have shared a common purpose of perpetrating the fraudulent scheme alleged above.

146.   Defendants have been related through Defendant CLEAVER-BROOKS' employment and retainment of WHYTE HIRSCHBOECK DUDEK.

147.   Defendants' association in fact has been sufficient in duration to enable Defendants to perpetrate the fraud alleged above.

148.   Defendants have conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through racketeering activity within the meaning of HRS §842-2(3), namely and as more fully described above, multiple related instances of mail and wire fraud in violation of 18 U.S.C. § 1341 and 1343.

149.   In furtherance of their fraud, Defendants have utilized the enterprise's resources to carry out their pattern of racketeering activity.

150.   By reason of the violation of HRS §842-2 committed by Defendants, Plaintiffs were injured within the meaning of HRS §842-8(c) in an as yet undetermined amount to be proven at trial.

151.   By reason of Defendants' violations as specified above, Plaintiffs are entitled to their actual damages pursuant to HRS §842-8(c), with interest thereon from the date of loss and reasonable attorneys' fees.

**COUNT V**
**PUNITIVE DAMAGES**
**(Against all defendants)**

152.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully repeated herein.

153.    In committing the tortious acts, activities, misrepresentations and omissions set forth above, each Defendant acted outrageously, maliciously, oppressively, willfully, wantonly, recklessly, and in conscious disregard for, or with conscious indifference to, the rights of others, including Plaintiffs, amounting to gross negligence or willful misconduct, warranting imposition of punitive damages against them.

154.    An award of punitive damages is appropriate in this case to deter the Defendants and others from engaging in similar conduct.

## V.    DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, that is within the minimum jurisdictional limits of this Court, as follows:

1.   General damages as are proven at the time of trial;

2.   Special damages as are proven at the time of trial;

3.   Punitive damages as are proven at the time of trial;

4.   Treble damages pursuant to 18 U.S.C. § 1964, with interest thereon from the date of loss and reasonable attorneys' fees.

5.   For costs incurred herein;

6.   For equitable relief against Defendants; and

7.   For such other and further relief as may be deemed just and equitable in the premises, including, but limited to, prejudgment interest.

DATED: Honolulu, Hawaii, _____**JAN 1 4 2019**_____.


_____

PETER A. KRAUS
ALLISON M. AOKI
ALYSSA R. SEGAWA
Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | | |
|---|---|---|
| TERRY N. AGENA, et al. | ) | CIVIL NO. 19-1-0074-01 _____(JHA) |
| | ) | (Toxic Tort/Asbestos Personal Injury) |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| CLEAVER-BROOKS, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

DEMAND FOR JURY TRIAL

        Plaintiffs, by and through their undersigned counsel, hereby demand trial by jury

on all issues so triable herein.

        DATED:  Honolulu, Hawaiʻi, _____ JAN 1 4 2019 _____.

                                        _____
                                        PETER A. KRAUS
                                        ALLISON M. AOKI
                                        ALYSSA R. SEGAWA
                                        Attorneys for Plaintiffs

41

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| TERRY N. AGENA, Individually and as the Legal Representative of the Estate of JAMES K. AGENA, Deceased; | ) CIVIL NO. **19-1-0074-01** (JHA) ) (Toxic Tort/Asbestos Personal Injury) ) |
| KERI YAMAMOTO, as the Legal Representative of the Estate of ANTONIO P. AGODONG, Deceased, and as the Legal Representative of NANCY AGODONG; | ) ) **SUMMONS** ) ) ) |
| JOHN MANUEL, Successor Trustee of the BENJAMIN ALMASON Trust; | ) ) |
| TERRY ALDEAN BLEVINS, Legal Representative of the Estates of JAMES BLEVINS and HAZEL BLEVINS, Deceased; | ) ) ) ) |
| JANE LORRAINE BROWN, GILES BROWN, BRADY BROWN, Individually and JANET ILENE FUTCH, Individually and as the Legal Representative of the Estate of BOB C. BROWN, Deceased; | ) ) ) ) ) |
| JOYCE C. CABASUG, Individually and as Successor Trustee of the ROBERT A. CABASUG Revocable Living Trust; | ) ) ) |
| ANITA M. CASSANI, Individually and as Legal Representative of the Estate of VINCENT J. CASSANI JR, Deceased; | ) ) ) |
| PAULINE GAIL CHANG, Individually and as Legal Representative of the Estate of HARRISON M.Y. CHANG, Deceased; | ) ) ) |
| KARRO YEE, as the Legal Representative of the Estates of JANET A.T. CHU and JACK S.Y. CHU, Deceased; | ) ) ) Complex Litigation ) Judge: Honorable James H. Ashford ) Trial Date: None |
| ANN CHRISTINE FABER, Individually and as Legal Representative of the Estate of CLARENCE E. FABER, Deceased; | ) ) ) ) |

HENRY TAKAKI, Individually and as the )
Legal Representative of the Estate of FAYE )
GARRETT-TAKAKI, Deceased; )

JEANNE KAHANAOI, Individually and as )
Successor Co-trustee of the DAVID )
KAWIKA KAHANAOI, SR. Trust; )

HARRIET H. KANESHIRO, Individually )
and as Trustee for the WALTER M. )
KANESHIRO Revocable Living Trust; )

GRACE R. MEANS, Individually and as )
Legal Representative of the Estate of )
HOMER W. MEANS, Deceased; )

LEINA MORTON, Individually and as )
Personal Representative for the Estate of )
LEONARD E. MORTON, Deceased; )

IRENE MUNZE, as the Legal )
Representative of the Estate of PETER )
PAGAN JR., Deceased; )

MERCEDES PAGATPATAN, Individually, )
and TERESA PAGATPATAN GRACE, as )
Successor Trustee of the GEORGE )
PAGATPATAN, JR. Trust; )

WANDA J. RALSTON, Individually, and )
CURTIS B. RALSTON, as Legal )
Representative of the Estate of MIKE R. )
RALSTON, Deceased; )

HISAE RIO, Individually and as Successor )
Trustee of the BARNEY RIO Revocable )
Living Trust; )

MERLE E. LOUI-SAKAMOTO, as )
Successor Trustee to the ERNEST Y. )
SAKAMOTO Trust; )

THERESA R. SCHRINER, Individually )
and as Legal Representative of the Estate of )
CHARLES T. SCHRINER, Deceased; )

)
)
)

43

KATHERINE K. YEE, Individually and as      )
Legal Representative of the Estate of       )
JAMES K.L. YEE, Deceased;                   )
                                            )
CYNTHIA CALVEY, as the Legal                )
Representative of the Estate of RICHARD J.   )
AKAU, SR., Deceased, and as the Legal       )
Representative of the Estate of AMY K.       )
AKAU, Deceased;                             )
                                            )
MARVELYN BAKER, as the Legal                )
Representative of GERALDINE                 )
ALAPASCO, and JULINA GLAZA, as the          )
Legal Representative of the Estate of        )
JULIAN ALAPASCO, Deceased;                  )
                                            )
ENID L. CABATBAT, Individually and as        )
the Legal Representative of the Estate of    )
ARTURO S. CABATBAT, Deceased;               )
                                            )
BERNADETTE M. RICHARDSON,                   )
Successor Trustee to the RAYMOND            )
SOUZA CAVACO TRUST;                         )
                                            )
PRISCILLA CHAMIZO, Individually and         )
as the Legal Representative of the Estate of )
ALLAN BOB CHAMIZO, Deceased;                )
                                            )
JOHN MICHAEL CLEMENTE, as the               )
Legal Representative of the Estate of        )
MARY AUGUSTA BEKSTROM                       )
CLEMENTE, the widow of STEPHEN              )
ARTHUR CLEMENTE, Deceased;                  )
                                            )
RAFAEL de la SIERRA, as the Legal           )
Representative of the Estate of MANUEL       )
de la SIERRA, Deceased;                     )
                                            )
WARREN K. DOTE, as the Legal                )
Representative of the Estate of KENNETH      )
S. DOTE, Deceased;                          )
                                            )
STELLA S. ISARA, Individually and as         )
Successor Trustee to the KENNETH K.         )
ISARA Trust;                                )
                                            )
                                            )

HERBERT H. ISARA, as the Legal )
Representative of the Estate of DOROTHY )
Y. ISARA, Deceased; )
)
PAULA YONEZAWA, as the Legal )
Representative of the Estate of WALLACE )
S.M. KIM, Deceased; )
)
ROSALYN W. BOHNER, as the Successor )
Trustee to the SAMUEL B.Y. LUM Trust; )
)
JEANIE RACOMA, Individually and as the )
Legal Representative of the Estate of )
ROCKY RACOMA, Deceased; )
)
HELEN SHIMAZU, Individually and )
CHERYL MATSUMOTO, as the Legal )
Representative of the Estate of PETER K. )
SHIMAZU, Deceased; )
)
ROXANE E. SHINTAKU, as the Legal )
Representative of the Estate of ROSEI )
SHINSATO, Deceased; )
)
GERMAINE ALBESO, as the Legal )
Representative of the Estates of )
MELCHIRO VILLIATORA, SR., )
Deceased, and SHINAKO VILLIATORA, )
Deceased; )
)
CLARITA WICKMAN, Individually and as )
Legal Representative of the Estate of )
PATRICK WICKMAN, Deceased; )
)
ETHEL Y. FUJII, Individually and as the )
Legal Representative of the Estate of )
JAMES NAOTO FUJII, Deceased; )
)
ANNE NONIES, Individually and as )
Trustee for the MAXIMO AND ANNE )
NONIES REVOCABLE LIVING TRUST; )
)
DAVID K. PARAGES, as the Legal )
Representative of the Estates of )
ALEXANDER R. PARAGES, Deceased, )
and MAY P. PARAGES, Deceased; )
)

45

TERESITA AGUILAR, Individually and as )
the Legal Representative of the Estate of )
WALFRED T. AGUILAR, Deceased; )
 )
NOFOTOLU ALO and MANHART ALO; )
 )
JOSEPH A. BEHLERT and MARIA )
LUISA BEHLERT; )
 )
HERMAN CALBERO, JR. and EVELYN )
CALBERO; )
 )
DANILO M. CAPATI; )
 )
BONG AE CHUN; )
 )
RICHARD M. FELIMER and FLORENCE )
L. FELIMER; )
 )
SHARON L. GABALIS, Individually and )
as the Legal Representative of the Estate of )
ABSTININCIO GABALIS, Deceased; )
 )
GLENN KAAWALAUOLE and LINDA J. )
KAAWALAUOLE; )
 )
DOUGLAS P. LEITE and MARY ANN K. )
LEITE; )
 )
BARBARA JEAN OSHIRO, Individually )
and JOANN ROTH, as the Legal )
Representative of the Estate of NORMAN )
OSHIRO, SR., Deceased; )
 )
PATSY R. OTA, Individually and as the )
Legal Representative of the Estate of )
HERBERT T. OTA, Deceased; )
 )
LYNN DELL PALADA, Individually and )
as Trustee of the Palada Joint Trust; )
 )
EARL R. RIVEIRA, as the Successor )
Trustee of the Revocable Trust of )
PATRICK A. RIVEIRA; )
 )
WINIFRED K.H. ROBINSON, Individually )
and as Legal Representative of the Estate of )
CHARLES ROBINSON, Deceased; )
 )
 )

46

| | |
|---|---|
| ALBIN ROSALDO and PRUDENCE ROSALDO; | ) ) |
| | ) |
| DANIEL SANTOS, JR.; | ) ) |
| | ) |
| WAYNE K. THOMPSON, as the Legal Representative of the Estate of DAVID M. THOMPSON, JR., Deceased; | ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| vs. | ) ) |
| | ) |
| 1) CLEAVER-BROOKS, INC., a Delaware corporation; | ) ) ) |
| | ) |
| 2) HUSCH BLACKWELL, as successor-in-interest to WHYTE HIRSCHBOECK DUDEK, a Missouri law firm; and | ) ) ) ) |
| | ) |
| 3) DOES 1 to 25, | ) ) |
| | ) |
| Defendants. | ) ) ) |
| | ) |
| _____ | ) |

## S U M M O N S

STATE OF HAWAI`I

To the above-named Defendants:

You are hereby summoned and required to file with the court and serve upon GALIHER DeROBERTIS & WAXMAN LLP, Plaintiffs' attorneys, whose address is 820 Mililani Street, Suite 505, Honolulu, Hawai`i 96813-2935, an answer to the Complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawai`i, _____ JAN 1 4 2019 .

_____
CLERK OF THE ABOVE-ENTITLED COURT

48