IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| TERRY N. AGENA, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>CLEAVER-BROOKS, INC., *et al.*,<br><br>Defendants. | Case No. 19-cv-0089-DKW-WRP<br><br>**ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER DENYING IN PART DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL** |

The instant action was brought under Hawaii law and the Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. § 1961 *et seq.*, by a group of more than fifty Plaintiffs, alleging they were fraudulently induced to settle their asbestos claims by virtue of Cleaver-Brooks, Inc. and its national coordinating counsel concealing adverse information during the discovery process. Each of the plaintiffs who executed a settlement agreement in the underlying asbestos actions was advised by the same law firm that represents the group of Plaintiffs in this case.

On that basis, Defendants Cleaver-Brooks and Husch-Blackwell, LLP moved to disqualify Plaintiffs' counsel. Dkt. Nos. 41, 45. The Magistrate Judge issued an Order denying the motion in part. Dkt. No. 65. Defendants now seek review, Dkt. Nos. 68, 70, contending the Magistrate Judge erred in applying Rules 1.7 and 3.7 of the Hawaii Rules of Professional Conduct. The Magistrate Judge held, in relevant

part, that under Rule 1.7, there is not a concurrent conflict of interest between Plaintiffs and their counsel, and that although two of Plaintiffs' attorneys (Richard DeRobertis and Ilana Waxman) will likely testify at trial, under Rule 3.7, DeRobertis and Waxman are only disqualified from the trial portion of this action.

For the reasons set forth below, the Magistrate Judge's conclusions are not clearly erroneous or contrary to law, and therefore the Magistrate Judge's Order is AFFIRMED.

## **FACTUAL & PROCEDURAL BACKGROUND**

### A.  **Relevant Facts**

The facts relevant to Plaintiffs' claims are set forth in the Court's recent Order regarding Defendants' motion to dismiss. Dkt. No. 71 at 2–9. Although Plaintiffs have since filed a second amended complaint, Dkt. No. 76, the gist of their claims remains the same. Plaintiffs seek relief on the basis that in the underlying asbestos lawsuits: (1) Cleaver-Brooks and its national coordinating counsel for asbestos litigation withheld information during discovery that "would make it more difficult for Plaintiffs" to prevail at trial; (2) "Plaintiffs through their counsel reasonably and detrimentally relied upon the [discovery] misrepresentations and omissions"; and (3) "as a result acted in a way that caused Plaintiffs damage . . . by agreeing to settle their claims for artificially low settlement amounts." *See* Dkt. No. 76, ¶¶ 147–48.

As relevant to Defendants' motion to disqualify Plaintiffs' counsel, it is undisputed that Galiher DeRobertis & Waxman LLP (the Galiher firm) represented the asbestos plaintiffs in the underlying actions when they executed their respective settlement agreements. *See* Dkt. No. 34-5. In the underlying actions, Richard DeRobertis and Gary O. Galiher "witnessed and approved" the "form and content" of the settlement agreements for each former asbestos plaintiff. *See, e.g.*, Dkt. No. 34-5 at 13, 21.

In the instant lawsuit, Plaintiffs are represented by the Galiher firm and Waters Kraus & Paul LLP (the Waters firm). *See* Dkt. Nos. 28, 76. Counsel of record from the Galiher firm is Alyssa Segawa, Allison Aoki, and Richard DeRobertis; and counsel of record from the Waters firm is Peter Kraus and Charles Siegel. *See* Dkt. Nos. 12, 28, 76. Plaintiffs admit that Richard DeRobertis and Ilana Waxman will "be witnesses at trial," but Plaintiffs aver they "will not act as trial counsel and will not take or defend any depositions in this case." Dkt. No. 46 at 31, 36; *see* Dkt. No. 73 at 24–26. According to Plaintiffs, the Waters firm will try the case. Dkt. No. 73 at 26.

**B. Procedural History**

On July 26, 2019, Defendants filed a motion to disqualify Plaintiffs' counsel, arguing that the Galiher firm must be disqualified under Rule 1.7 of the Hawaii Rules of Professional Conduct, and, at a minimum, four lawyers at the Galiher firm—

DeRobertis, Waxman, Segawa, and Aoki—should be immediately disqualified under Rule 3.7 from "all phases" of the litigation, including "pretrial proceedings." Dkt. No. 41 at 18–20; Dkt. No. 45. The Magistrate Judge (MJ) issued an Order granting in part and denying in part Defendants' motion. Dkt. No. 65. Defendants filed their timely objections to the adverse portions of the MJ's Order. Dkt. No. 68, 70; *cf.* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a).

## STANDARD OF REVIEW

Where, as here, a magistrate judge issues a pre-trial order regarding a non-dispositive matter, any party may seek review by filing its objections to the order. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a); LR 74.1. "The district judge in the case must consider timely objections," but the court cannot "modify or set aside any part of the order" unless it is "*clearly erroneous* or is *contrary to law*." *See* Fed.R.Civ. P. 72(a) (emphasis added); *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1041 n.4 (9th Cir. 2010).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (internal quotation marks omitted) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). As a result, "the 'clearly erroneous' standard is significantly deferential," *id.* at 623, and

"[t]he reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

A magistrate judge's order is "contrary to law" if the order applies the incorrect legal stand or misapplies applicable law. *Na Pali Haweo Cmty. Ass'n v. Grande*, 252 F.R.D. 672, 674 (D. Haw. 2008); *see also Olais-Castro v. United States*, 416 F.2d 1155, 1158 n.8 (9th Cir. 1969) ("The term 'contrary to law' means contrary to any existing law.")); *Coons v. BNSF Ry. Co.*, 268 F. Supp. 3d 983, 991 (D. Minn. 2017).

## **DISCUSSION**

Defendants assign two errors to the MJ's Order. First, Defendants assert that the MJ erred in his application of Rule 1.7 of the Hawaii Rules of Professional Conduct (HRPC) by not disqualifying the Galiher firm after the MJ found that Defendants "failed to present substantial evidence that a direct conflict exists between the interest of the Galiher firm and Plaintiffs' interests in this litigation." Dkt. No. 68 at 7 (quoting Dkt. No. 65 at 8). Second, Defendants contend the MJ further erred in his application of HRPC 3.7 by denying Defendants' request to disqualify DeRobertis and Waxman "from all pretrial proceedings" and instead only

disqualifying these attorneys from advocating at trial. Dkt. No. 68 at 18 (quoting Dkt. No. 65 at 10).[1] Each is addressed in turn.

## I. The Magistrate Judge Did Not Err in Applying HRPC 1.7

Because Defendants have failed to produce substantial *evidence* showing that there is a "significant" chance that a difference between the interests of Plaintiffs and the Galiher firm will arise, the MJ's refusal to disqualify the Galiher firm is not clearly erroneous or contrary to law.

The determination of whether or not counsel should be disqualified is purely a discretionary matter. *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). A "motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice," *In re Cty. of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000), and as a result, there is an inherent "potential for abuse." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation and internal quotation marks omitted); HRPC 1.7 cmt. n.15 (noting that when opposing counsel avers that a conflict of interest

---

[1]Defendants do not assign error to the MJ for refusing to disqualify Segawa and Aoki from participating in any part of this case. Dkt. No. 65 at 10. In addition, Plaintiffs do not object to the MJ granting Defendants' related motion for judicial notice; nor do they object to the MJ's conclusion that Defendants have standing to assert that a conflict of interest exists between Plaintiffs and their counsel. Dkt. No. 65 at 1 n.1, 5–6. As a result, the Court will not address these issues further. *See* Fed.R.Civ.P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); LR 74.1(a) (providing that an "objection must specifically designate the portions of the magistrate judge's order . . . to which the party is objecting and the basis of the objection"); *see also* 28 U.S.C. § 636(b) (establishing that a party may "file written objections" only "as provided by rules of court").

exists, "the objection should be viewed with caution, . . . for it can be misused as a technique of harassment"). For that reason, motions to disqualify counsel are "subjected to particularly strict judicial scrutiny." *Optyl Eyewear*, 760 F.2d at 1050. The party moving for disqualification "must satisfy a high standard of proof," *In re Marvel*, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000), *aff'd*, 265 B.R. 605 (N.D. Cal. 2001), by producing "substantial evidence" of facts justifying disqualification, *Visa U.S.A. v. First Data Corp.,* 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003), such that the asserted "impropriety is clear." *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 (9th Cir. 1981). As such, disqualification cannot be premised on "general and conclusory allegations," *Chuck v. St. Paul Fire & Marine Ins. Co.*, 606 P.2d 1320, 1325 (Haw. 1980), or "concerns which are merely anticipatory and speculative." *Marvel*, 251 B.R. at 871.

As relevant here, HRPC 1.7(a) prohibits a lawyer from representing a client "if the representation involves a concurrent conflict of interest." Rule 1.7 defines a "conflict of interest," in pertinent part, as "a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." HRPC 1.7(a)(2). For such a conflict to exist, there must be:

> [A] significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests . . . **The mere possibility of subsequent harm does not itself require disclosure and consent.**

- 7 -

HRPC 1.7 cmt. n.8 (emphasis added). The analysis involves two "critical questions: (1) "the likelihood that a difference in interests will arise"; and, if it does (2) "whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." HRPC 1.7 cmt. n.8.

Here, it is in the best interests of Plaintiffs and the Galiher firm to prove that Cleaver-Brooks (and Husch Blackwell) fraudulently withheld discovery information that would have altered the amount of settlements by Plaintiffs. Their interests are aligned. If Defendants can point to concrete evidence of an existing or imminent conflict, such as a substantial error in advising Plaintiffs to settle (not merely a difference of opinion), surely this would "materially interfere" with the Galiher firm's ability to advise Plaintiffs in this action. *Id.* Thus, the question is "the likelihood that a difference in interests will arise." *See id.*

The likelihood that the Galiher firm's interests will diverge from that of Plaintiffs, while possible, is speculative. Defendants offer "*potential ways* in which Plaintiffs' interests *may conflict* with those of the Galiher firm," all of which imply that "the Galiher firm's own interests in justifying its prior work [for plaintiffs in the underlying asbestos actions] . . . conflict with Plaintiffs' interests [in this case], impairing the Galiher firm's ability to give objective advice." Dkt. No. 68 at 8–10. Defendants question whether the former asbestos plaintiffs, with the advice of the

Galiher firm, reasonably relied on Cleaver-Brooks' representations during discovery in entering into their settlement agreements, despite the release language in each settlement agreement. Dkt. No. 68 at 8–9. But nothing Defendants have pointed to in the record suggests that Plaintiffs and the Galiher firm will find themselves at odds. *See* Dkt. No. 68 at 12–15.

First, Plaintiffs allegations do not give rise to a conflict of interest. Dkt. No. 68 at 13. The fact that Plaintiffs allege that they "and their counsel" relied on Cleaver-Brooks' alleged misrepresentations and omissions, Dkt. No. 76, ¶¶ 170–71, does not mean that there is a "significant risk" of a conflict of interest between Plaintiffs and the Galiher firm. If anything, the allegations show that their interests were aligned in the underlying actions, just as they are now in seeking to prove that Plaintiffs and the Galiher firm were both duped into agreeing to settle for "artificially low settlement amounts." Dkt. No. 76, ¶ 171.

Second, Defendants' contention that the release language in the settlement agreements substantiates a conflict of interest is wholly without merit. The Court has already determined that "Plaintiffs' settlement agreements do not abrogate the elementary principle that 'parties may reasonably rely upon an opposing party's responses to discovery requests." Dkt. No. 71 at 16–17 (quoting *Matsuura v. E.I. du Pont de Nemours & Co.*, 73 P.3d 687, 704 (Haw. 2003)). Based on that principle, Plaintiffs have alleged reasonable reliance. Dkt. No. 76, ¶¶ 146, 170.

Lastly, Defendants have not directed the Court to anything in the Galiher firm's motions to compel filed in the underlying asbestos cases that indicates there is an impending conflict of interest. Dkt. No. 68 at 14–15. To the extent the Defendants argue that the Galiher firm may have possessed discovery information that would call into question its settlement advice to the asbestos plaintiffs, the argument is premature and, again, conflates the merits of this case with the issue of disqualification under HRPC 1.7. *Id.* That is, the "mere possibility" of a conflict is not enough, *see* HRPC 1.7 cmt. n.8, and this is true even where "a potential malpractice claim against an attorney" may later arise.[2] Moreover, Defendants' inchoate suspicion that the Galiher firm may have provided "bad advice" to the asbestos plaintiffs or may be providing "bad advice now" to Plaintiffs, Dkt. No. 68 at 9, is, at best, "anticipatory and speculative," *Marvel*, 251 B.R. at 871, and at worst grossly misleading. Because the Court is not "left with the definite and firm conviction that a mistake has been committed," *Concrete Pipe & Prods.*, 508 U.S. at 622, there is no principled basis on which to disturb the MJ's determination that the Galiher firm should not be disqualified based on HRPC 1.7.[3]

---

[2]*See, e.g.*, *Feingold v. Liberty Mut. Group*, No. 11-5364, 2011 WL 6085829, at *3 (E.D. Pa. Dec. 6, 2011); *United Food & Commercial Workers Health & Welfare Fund v. Darwin Lynch Admrs., Inc.*, 781 F. Supp. 1067, 1071 (M.D. Pa. 1991). These cases applied an ethics rule identical to HRPC 1.7.

[3]If it were otherwise, as Defendants urge, this would indeed create a perverse incentive for a defendant to engage in discovery fraud to leverage a settlement because, if the plaintiff and the same law firm ever filed a lawsuit alleging the settlement was induced by fraud, the defendant

To be sure, the cases Defendants rely on to support the proposition that attorneys and their firms are disqualified "when their prior work or behavior is the focus of the subsequent lawsuit," Dkt. No. 68 at 10, are inapposite because the Galiher firm's conduct is not "at the center" of this action, as Defendants contend. Dkt. No. 68 at 4, 8. Even a cursory review of the pleadings in this case reveals that the dispute is centered around allegations that Cleaver-Brooks and its counsel engaged in flagrant discovery fraud. Nonetheless, Defendants contend that "Plaintiffs failed to cite a single case where a court refused to disqualify counsel whose prior work or behavior was a central focus of the pending litigation." Dkt. No. 68 at 12. But that burden is Defendants' to bear. *Marvel*, 251 B.R. at 871; *see also Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). And here, Defendants have not cited a case where a court disqualified a law firm simply because the firm represented a plaintiff in obtaining a settlement agreement and then the same firm sought to represent the plaintiff in a subsequent action where it was alleged that the settlement agreement was induced by discovery fraud. There may be many reasons for such an omission, but certainly among them is the absence of a litigant with the *chutzpah* to propose that disqualification is even appropriate in the posited scenario.

---

could simply derail the lawsuit by disqualifying the law firm on the grounds that the firm represented the plaintiff in the previous action. HRPC 1.7 does not dictate such a result.

In sum, there is not a concurrent conflict of interest within the meaning of HRPC 1.7(a)(2).[4] Plaintiffs' interests are aligned with those of the Galiher firm, and there is no evidence of that changing in the foreseeable future. Accordingly, the MJ's Order is not clearly erroneous or contrary to law.

## II. The Magistrate Judge Did Not Err in Applying HRPC 3.7

Defendants' second assignment of error turns on the plain text of HRPC 3.7. That rule, entitled "Lawyer as Witness," provides in relevant part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9 of these Rules.

When applied here, Rule 3.7 prohibits DeRobertis and Waxman from "advocate[ing] **at trial**" because, as Plaintiffs concede, Dkt. No. 46 at 31, 36; *see* Dkt. No. 73 at 24–26, they are "likely to be necessary witnesses." HRPC 3.7(a). But DeRobertis and

---

[4]The absence of any conflict obviates the need for the Court to determine whether a valid conflict waiver has been executed under HRPC 1.7(b), or whether the asserted conflict of the Galiher firm is imputed to the Waters firm pursuant to HRPC 1.10. *Cf.* Dkt. No. 68 at 16, 18.

Waxman have not only already affirmed that they will not serve as trial counsel, they have taken the additional step of agreeing not to "take or defend any depositions." Dkt. No. 46 at 31, 36; *see* Dkt. No. 73 at 24–26. Plaintiffs also agree that the attorneys at the Waters firm will serve as counsel at trial, Dkt. No. 73 at 26, rather than any remaining attorney at the Galiher firm, even though there is no prohibition on other Galiher firm attorneys serving in that role in light of the Court's Rule 1.7 ruling. *See supra* Part I; HRPC 3.7(b).

Contrary to Defendants' reasoning, Rule 3.7 does not require that DeRobertis and Waxman be disqualified from any involvement in pre-trial proceedings. Rule 3.7 is directed at limiting a lawyer's role at "trial," a term that is used twice in the rule. Nothing in the text of the rule refers to the litigation as a whole or the proceedings in general. Indeed, Defendants acknowledge, Dkt. No. 68 at 19, Rule 3.7 "is concerned with confusion and possible prejudice that may arise when the roles of advocate and witness are combined." *Hillhouse v. Haw. Behavioral Health, LLC*, No. 14-155 LEK-BMK, 2014 WL 4093185, at *5 (D. Haw. Aug. 18, 2014).[5] This is because, as Comment 2 explains, "the trier of fact may be confused or misled by a lawyer serving as both *advocate and witness*." HRPC 3.7 cmt. n. 2 (emphasis added).

---

[5]*See also* HRPC 3.7 cmt. n.1 ("Combining the roles of advocate and witness can prejudice the tribunal and the opposing party . . .").

For example, "in addressing the jury, the lawyer will appear to vouch for his own credibility"; opposing counsel would be placed in a "difficult situation" when they must "cross-examine [a] lawyer-adversary"; and there is the "likely," but perhaps unwarranted, "implication that the testifying lawyer may well be distorting the truth for the sake of his client." *Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 99–100 (1st Cir. 1988). But if a lawyer-witness is not functioning as a trial attorney in the courtroom, it follows that the jury cannot be confused (and thus Defendants cannot be prejudiced) simply because they hear testimony from the lawyer-witness who, unbeknownst to the jury, drafted interrogatories or pre-trial motions. "The above concerns are absent or, at least, greatly reduced, when the lawyer-witness" merely "performs behind-the-scenes work for the client in the same case." *Id.* Therefore, where the roles of advocate and witness are not combined "at trial"—and it appears they will not be here—Rule 3.7 is not implicated. Thus, DeRobertis and Waxman may participate in pre-trial proceedings (although, as noted, Plaintiffs have represented that neither will participate in taking or defending depositions).

The cases Defendants cite do not command a different result. Dkt. No. 68 at 20–21. Although some courts have disqualified a witness-attorney from all pre-trial

proceedings,[6] these cases are not binding precedent nor is the Court aware of any. Moreover, other courts have interpreted rules of ethics identical to HRPC 3.7 and concluded that the plain language of the rule does not require disqualification from pre-trial or post-trial matters. *See, e.g.*, *Culebras Enterprises Corp.*, 846 F.2d at 97–101; *Premium Payment Plan v. Shannon Cab Co.*, 268 F.R.D. 203, 207 (E.D. Pa. 2010); *Caplan v. Braverman*, 876 F. Supp. 710, 711 (E.D. Pa. 1995). As outlined above, the Court agrees.

In short, HRPC 3.7 precludes DeRobertis and Waxman from serving as counsel at trial. Because none of the evils the rule intends to avoid will arise by virtue of DeRobertis and Waxman participating in pre-trial proceedings, they may do so.[7] Accordingly, the MJ's Order is not clearly erroneous or contrary to law.

///

///

///

---

[6] *See Shaughnessy v. Ass'n of Apartment Owners of Moana Pac.*, No. 09-00051-ACK-LK, 2011 WL 613580, at *7 (D. Haw. Feb. 10, 2011); *Royal Travel, Inc. v. Shell Management Hawaii, Inc.*, No. 08-00314-JMS–LEK, 2009 WL 649929, at *5 (D. Haw. Mar. 12, 2009); *Rizzuto v. De Blasio*, No. 17-cv-7381ILGST, 2019 WL 1433067, at *8 (E.D.N.Y. Mar. 29, 2019); *Mutual Life Ins. Co. v. Liberty Mut. Ins. Co.*, 746 F. Supp. 375, 377 (S.D.N.Y. 1990); *Azizollah Abrishamian v. Wash. Med. Group, P.C.*, 86 A.3d 681, 694 (Md. Ct. App. 2014).

[7] Again, subject to their voluntary agreement not to participate in taking or defending depositions.

## CONCLUSION

For the reasons set forth herein, the Magistrate Judge's Order granting in part and denying in part Defendants' motion to disqualify Plaintiffs' Counsel, Dkt. No. 65, is AFFIRMED.

IT IS SO ORDERED.

DATED: December 19, 2019 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

*Terry N. Agena, et al v. Cleaver-Brooks, Inc., et al*; Civil No. 19-0089 DKW-WRP
**ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER DENYING IN PART DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**