Margery S. Bronster        #4750
Kenneth S. Robbins         #1000
Jenna Durr                 #10854
BRONSTER FUJICHAKU ROBBINS
1003 Bishop Street, Suite 2300
Honolulu, Hawai'i  96813
Telephone:  (808) 524-5644
Email: mbronster@bfrhawaii.com
Email: krobbins@bfrhawaii.com
Email: jdurr@bfrhawaii.com

Robert M. Rolfe, *admitted pro hac vice*
Cassandra C. Collins, *admitted pro hac vice*
Jonathan L. Caulder, *admitted pro hac vice*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219-4074
Telephone:  (804) 788-8200
E-mail:  rrolfe@HuntonAK.com
E-mail:  scollins@HuntonAK.com
E-mail:  jcaulder@HuntonAK.com

Attorneys for Defendant
CLEAVER-BROOKS, INC.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TERRY N. AGENA, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> CLEAVER-BROOKS, INC., *et al.*, <br><br> Defendants. | CIVIL 1:19-cv-00089-DKW-WRP <br><br> CLEAVER-BROOKS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO DEFINE THE PROPER SCOPE OF DISCOVERY [ECF# 104]; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE <br> <u>Hearing</u>: <br> Date/Time:  None (previously vacated) <br> Judge:        Honorable Wes Reber Porter <br> Trial:          July 12, 2021 |

# TABLE OF CONTENTS

I.    Cleaver-Brooks' Discovery Subjects Are Relevant. ......................................5

II.   Plaintiffs' Proposed Restrictions On Subjects 1, 2, 6, 7 And 8 Are
      Contrary To Binding Hawai'i Precedent.......................................................16

III.  Discovery Subjects 9 Through 17 Are Relevant And Proportional To
      The Needs Of This Lawsuit...........................................................................22

CONCLUSION ...........................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir. 1975) ............................................................24

*Cresswell v. Sullivan & Cromwell*,
   922 F.2d 60 (2d Cir. 1990) ..............................................................15

*Dooley v. Korean Air Lines Co.*,
   524 U.S. 116, 118 S. Ct. 1890 (1998)..............................................11

*Equal Employment Opportunity Comm'n v. Lockheed Martin*,
   No. CV 05-00479, 2006 WL 8436554 (D. Haw. Sept. 11, 2006).......8

*Exotics Hawai'i-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*,
   116 Haw. 277, 172 P.3d 1021 (2007)........................................*passim*

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008)...........................................................................11

*Matter of Haw. Corp.*,
   88 F.R.D. 518 (D. Haw. 1980) ..........................................................21

*In re Hawai'i Fed. Asbestos Cases*,
   960 F.2d 806 (9th Cir. 1992) .............................................................11

*Hearn v. Rhay*,
   68 F.R.D. 574 (E.D. Wash. 1975) .......................................................8

*Hickman v. Taylor*,
   329 U.S. 495, 67 S.Ct. 385 (1947).....................................................20

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) .................................................13, 17, 18

*Matsuura v. E.I. du Pont de Nemours & Co.*,
   102 Haw. 149, 73 P.3d 687 (2003)......................................................1

*Matsuura v. E.I. du Pont DeNemours & Co.*,
   No. 00-00328, 2006 WL 5249742 (D. Haw. Dec. 21, 2006) .......17, 18

*McBride v. Estis Well Serv., L.L.C.*,
768 F.3d 382 (5th Cir. 2014) ...............................................................11

*McIndoe v. Huntington Ingalls Inc.*,
817 F.3d 1170 (9th Cir. 2016) .............................................................11

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340, 98 S. Ct. 2380 (1978)......................................................9

*Plata v. Brown*,
754 F.3d 1070 (9th Cir. 2014) .............................................................20

*Saavedra v. Korean Air Lines Co.*,
93 F.3d 547 (9th Cir. 1996) .................................................................11

*Shoen v. Shoen*,
5 F.3d 1289 (9th Cir.1993) ..................................................................21

*Smith v. Trinidad Corp.*,
992 F.2d 996 (9th Cir. 1993) ...............................................................11

*Tiki Shark Art Inc. v. CafePress Inc.*,
No. CV 13-00577, 2014 WL 12603135 (D. Haw. June 30, 2014)....................15

*United States v. Amlani*,
169 F.3d 1189 (9th Cir. 1999) ...............................................................8

*Yousefi v. Delta Elec. Motors, Inc.*,
No. C13-1632, 2015 WL 11217257 (W.D. Wash. May 11, 2015) ...................15

**Statutes**

Haw. Rev. Stat. § 663-15.5(a)(2)...............................................................12

**Rules**

Fed. R. Civ. P. 26 .................................................................................2, 22

Hawaiʻi Rule of Professional Conduct 1.2(a)........................................7, 21

Hawaiʻi Rule of Professional Conduct 3.4(c)............................................15

**Other**

Restatement (Third) of the Law Governing Lawyers § 80(1)(a)...............................8

**CLEAVER-BROOKS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO DEFINE THE PROPER SCOPE OF DISCOVERY[1]**

Each Plaintiff's claim of fraudulent inducement must stand on its own individual merits.  *See Exotics Hawai'i-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Haw. 277, 305, 172 P.3d 1021, 1049 (2007).  Each Plaintiff must prove "(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to his or her damage."  *Id.* at 285 n.6, 172 P.3d at 1029 (*quoting Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 162–63, 73 P.3d 687, 700–01 (2003)).  For each of the 56 settlements at issue, the jury must determine "the probable amount of settlement in the absence of fraud after considering ***all known or foreseeable facts and circumstances*** affecting the value of the claim on the date of settlement[.]"  *Id.* at 298, 172 P.3d at 1042 (emphasis added and citations omitted).

Whether each Plaintiff was damaged and the amount of any such damage depends upon a wide range of variables, including nine identified by the Hawai'i Supreme Court in *Exotics*:

---

[1]   The parties have stipulated to the filing of Plaintiffs' proposed Third Amended Complaint [ECF# 112].  Cleaver-Brooks' arguments in this opposition brief apply equally to the proposed Third Amended Complaint.  *See id.* ("To avoid the necessity of refiling all pending motions, all pending motions shall be deemed to apply to the Third Amended Complaint and briefing deadlines for those pending motions shall remain the same."

1. The type of case and difficulty of proof at trial, *e.g.*, rear-end motor vehicle collision, medical malpractice, product liability, etc.;

2. The realistic approximation of total damages that the plaintiff seeks;

3. The strength of the plaintiff's claim and the realistic likelihood of his or her success at trial;

4. The predicted expense of litigation;

5. The relative degree of fault of the settling tortfeasors;

6. The amount of consideration paid to settle the claims;

7. The insurance policy limits and solvency of the joint tortfeasors;

8. The relationship among the parties and whether it is conducive to collusion or wrongful conduct; and

9. Any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

*Id.* at 300, 172 P.3d at 1044 (citation omitted).

The elements of fraudulent inducement—including the *Exotics* variables for damages—will be contested at trial. Cleaver-Brooks' seventeen "subjects on which discovery may be needed," identified pursuant to Fed. R. Civ. P. 26(f)(2)–(3), directly relate to these elements. *See* Defs.' Suppl. Rule 26(f) Report [ECF# 90] at 5–7.

For each settlement, Cleaver-Brooks seeks to discover the facts relevant to each asbestos plaintiff's exposure and injury. It seeks to discover how each underlying plaintiff—or counsel for each plaintiff—evaluated the underlying case based on facts known to or foreseeable by each plaintiff and her counsel at the time of settlement. Because each Plaintiff in this lawsuit pleads that her counsel relied

2

on the alleged misrepresentations, Cleaver-Brooks seeks to test whether counsel did in fact rely and how, as reflected in part by the value of other settlements into which Plaintiffs or their counsel entered.

In many ways, the relevance of these subjects overlap.  For example, a fact known to the underlying plaintiff or her counsel may affect that plaintiff's likelihood of success at trial or difficulty of proof at trial and, therefore, affect the settlement value of the case.  If that fact influenced the underlying plaintiff's evaluation of her case, it may have impacted whether that plaintiff or her counsel in fact relied on the alleged misrepresentations of Cleaver-Brooks or whether those alleged misrepresentations were material in the underlying plaintiff's decision to settle.  That fact would therefore be relevant regardless of whether it was known to Cleaver-Brooks at the time of settlement.

Plaintiffs' Motion to Define the Proper Scope of Discovery [ECF# 104] disregards the issues in this case as expressly delineated by the Hawai'i Supreme Court in *Exotics*.  Plaintiffs ask the Court to deny Cleaver-Brooks discovery into what facts were material to the underlying settlements, upon what facts the underlying plaintiffs and their counsel relied, and the strengths and weaknesses of the underlying claims as they affected settlement value.  Plaintiffs want their counsel to be able to testify at trial about what was material, upon what they relied and what the settlement value of the underlying claims would have been but for the

alleged misrepresentations.  But Plaintiffs want the Court to prevent Cleaver-Brooks from discovering facts to contest these issues and upon which to cross-examine Plaintiffs' counsel.  They wrongly contend that Cleaver-Brooks (but not Plaintiffs) should be limited to facts it knew—regardless of what Plaintiffs knew or could foreseeably have known—at the time of each settlement.

Indeed Plaintiffs' proposed discovery constraints ignore the very nature of a settlement agreement, *i.e.* that it is an agreement that requires the consent of both parties.  Agreements are not one-sided.  Plaintiffs' unilateral view of a case's value does not prove its settlement value.  For example, *Exotics* instructs that the cost of litigation is a variable that may affect settlement value.  A defendant may decide to settle a case for $1,000 without discovery to avoid spending $50,000 on litigation.  That does not mean that the defendant would have settled for $100,000 without discovery.  But Plaintiffs here want the Court to assume that Cleaver-Brooks would have settled without discovery for any amount that Plaintiffs now declare to be the settlement value of the case.  That is not the law and not what *Exotics* teaches.  There is no precedent for such a request and no basis to impose such one-sided discovery restrictions.  The Court should deny Plaintiffs' motion.

I.     **Cleaver-Brooks' Discovery Subjects Are Relevant.**

Cleaver-Brooks has identified seventeen subjects of relevant discovery. Each subject bears directly on the framework established in *Exotics* for the elements of fraudulent inducement.

   ___Subject 1___:  *All facts related to the underlying asbestos claims.*

The facts related to the underlying asbestos claims are relevant to the merits of Plaintiffs' allegations of fraud and also bear on the *Exotics* variables that should be considered for evaluating Plaintiffs' alleged damages.  For example, whether a particular alleged misrepresentation was material requires exploration of the facts of the underlying asbestos claim.  If the underlying plaintiff's claim related to exposure to boiler equipment and not water technologies equipment, then any alleged misrepresentation related to water technologies equipment could not be material to that plaintiff's decision to settle.  Likewise, if the underlying plaintiff's alleged exposure occurred only in the 1940s, then an alleged misrepresentation related to workers' compensation claims in the 1990s could not be material to that plaintiff's decision to settle.

Further, *Exotics* makes clear that the "type of case and difficulty of proof" and "the strength of the plaintiff's claim" are among the variables that experienced lawyers consider in reaching a settlement value.  *Exotics*, 116 Haw. at 300, 172 P.3d at 1044.  The facts related to the underlying asbestos claims, *i.e.*, the asbestos-

exposure work history, the asbestos-related disease, the proof of Cleaver-Brooks' product exposure, the number and identity of other defendants, the proof of product exposure for the other defendants, and the relative degree of fault of the other defendants, bear directly on the difficulty of proof and strength of each Plaintiff's underlying case and thus are relevant to Plaintiffs' alleged damages.

***Subject 2***: ***All facts related to the underlying settlements.***

Subject 2 also encompasses facts relevant to the strengths and weaknesses of the underlying claims, as well as how Plaintiffs and their counsel actually perceived those strengths and weaknesses as manifested both by their negotiations with Cleaver-Brooks and by the lawyers and underlying plaintiffs' communications and analyses that were unknown to Cleaver-Brooks.

As to the latter, Plaintiffs' Second Amended Complaint places directly at issue the Galiher lawyers' analysis of each Plaintiff's claims and the advice the Galiher lawyers gave to the settling plaintiffs:

- Whether the underlying plaintiff or her counsel actually relied on the alleged misrepresentation;

- Whether the subject matter of the alleged misrepresentation was discussed in the negotiations;

- Whether counsel factored the strengths and weaknesses of this advice into its evaluation of the case or recommendations to the underlying plaintiff;

- Whether the strengths and weaknesses of the case were material to the settlement value of the case in any way and, if so, to what extent; and

6

- How each party viewed "the predicted expense of litigation" and "the relative degree of fault of the settling tortfeasors." *Exotics*, 116 Haw. at 300, 172 P.3d at 1044.

These are all relevant inquiries.  Finally, what other facts affected each underlying plaintiff's desire to settle?

> **_Subject 3_:  _All communications between the Galiher firm and Plaintiffs or any other person reporting on or evaluating the underlying asbestos claims, reporting on or evaluating Cleaver-Brooks' discovery responses, discussing settlement negotiations or recommending settlement._**

Communications from the Galiher firm are likely to bear on the issues discussed above.  Indeed, Plaintiffs emphasize the importance of their counsel's communications when they plead that counsel reasonably relied on Cleaver-Brooks' discovery responses.  Not only are those communications likely to contain evidence of facts known and foreseeable to Plaintiffs, but those communications bear on why the underlying plaintiffs actually settled and how they valued their cases.  In that regard, the decision "whether to settle a civil matter must be made by the client."  Haw. R. Prof'l Conduct 1.2(a) & cmt.1.

> **_Subject 4_:  _All work product of the Galiher firm evaluating the merits, Cleaver-Brooks' discovery responses or the settlement value of the underlying asbestos cases._**

Discovery about the Galiher firm's work product[2] evaluating the underlying claims, settlements, and discovery responses is relevant for multiple reasons.  It

---

[2]   Although it may be too early to evaluate privilege issues in the absence of specific inquiries, the Court should note that Plaintiffs have waived privilege over

goes directly to the essential elements of materiality and reasonable reliance.  For

example, the Galiher lawyers filed numerous motions to compel against Cleaver-

Brooks, yet recommended settlements without obtaining the information they

sought.  How did the lawyers evaluate the discovery responses?  Their work

product and analysis bear directly on what they considered material to

recommending the settlements and whether they relied upon Cleaver-Brooks'

discovery responses in making those recommendations.

     Discovery related to the Galiher firm's work product also informs the

settlement value of the asbestos claims.  How much did the Galiher lawyers think

---

these documents by pleading that their counsel relied on the discovery responses
and by putting at the heart of this lawsuit what Plaintiffs and their counsel knew,
what was material, and what was reasonably relied upon in entering the settlements
at issue.  *See Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (three-part test
for "at issue" privilege waiver:  "(1) assertion of the privilege was a result of some
affirmative act, such as filing suit, by the asserting party; (2) through this
affirmative act, the asserting party put the protected information at issue by making
it relevant to the case; and (3) application of the privilege would have denied the
opposing party access to information vital to his defense.").  The Ninth Circuit and
this Court have employed the *Hearn* test.  *See United States v. Amlani*, 169 F.3d
1189, 1195–96 (9th Cir. 1999); *Equal Employment Opportunity Comm'n v.
Lockheed Martin*, No. CV 05-00479 SPK-LEK, 2006 WL 8436554, at *4 (D. Haw.
Sept. 11, 2006); *see also* Restatement (Third) of the Law Governing Lawyers
§ 80(1)(a) ("The attorney-client privilege is waived for any relevant
communication if the client asserts as to a material issue in a proceeding
that . . . the advice was otherwise relevant to the legal significance of the client's
conduct.").  Further, any claim of work product or trial preparation protection must
similarly yield to the high importance of this information coupled with the fact that
the attorneys themselves will testify.

each case was worth and why?  Their internal evaluations fall squarely within the variables discussed in *Exotics.*

Finally, Plaintiffs assert that their counsel L. Richard DeRobertis will "testify on reliance of the Galiher firm on the discovery answers of Cleaver-Brooks in evaluating the liability of C-B and the valuation of the 56 settlements" and Ilana K. Waxman will "testify on reliance of the Galiher firm on the fraudulent discovery for [Cleaver-Brooks]."  *See* Pls.' Initial Disclosures [ECF# 107] at 2. Discovery related to Subjects 3 and 4 is necessary to prepare adequately for the cross-examination of Mr. DeRobertis and Ms. Waxman.

> **<u>Subject 5</u>:  The standing of trustee Plaintiffs.  Documents relevant to this subject include the trust instruments and assignments for the trustee Plaintiffs.**

Some Plaintiffs are trustees of trusts established by former asbestos plaintiffs who settled with Cleaver-Brooks.  The trustee Plaintiffs allege that they have standing to pursue fraud and RICO claims because that right was assigned to them via trust agreements.  *See* Second Am. Compl. [ECF# 76] ¶¶ 1, 3, 6, 11–12, 17, 20, 22, 27, 30, 33, 37, 51–52.  Cleaver-Brooks seeks evidence to confirm the alleged assignments and to evaluate whether trustee Plaintiffs have standing in this lawsuit. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13, 98 S. Ct. 2380, 2389 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); Mot. to Dismiss Order

[ECF# 71] at 33 (the trustee Plaintiffs may sue "so long as the fraud and RICO claims have been assigned to the trust."). Without such evidence, Cleaver-Brooks risks adjudicating (or settling) these fraud claims with the wrong party.

> **_Subject 6_: _The nature and extent of the injuries of the individuals who were allegedly exposed to asbestos and whose injuries were the subject of the underlying actions._**

> **_Subject 7_:  _For each person whose alleged asbestos exposure resulted in a settlement with Cleaver-Brooks that is now at issue, that person's alleged exposure to Cleaver-Brooks' products._**

> **_Subject 8_:  _For each person whose alleged asbestos exposure resulted in a settlement with Cleaver-Brooks that is now at issue, that person's exposure to asbestos-containing products manufactured or sold by others._**

Subjects 6, 7 and 8 relate to the evaluation of settlement factors such as the "difficulty of proof at trial," "the strength of the [underlying] claims," and "the realistic approximation of total damages." *Exotics*, 116 Haw. at 300, 172 P.3d at 1044. This Court already has recognized that the nature of the injuries in the underlying actions are relevant to the value of the settled claims. *See* Mot. to Dismiss Order [ECF# 71] at 24 (quoting *Exotics*, 116 Haw. at 294, 172 P.3d at 1038). Moreover, evidence regarding exposure to asbestos-containing products of other companies is necessary for analyzing "the relative degree of fault of the settling tortfeasors." *Exotics*, 116 Haw. at 300, 172 P.3d at 1044.

The factual circumstances surrounding the alleged asbestos exposure also relate to whether Hawai'i law or maritime law governed the underlying claims,

which will directly impact the settlement value of each underlying case.  The

causation standard for asbestos torts is higher under maritime law than Hawaiʻi

law.  *Compare McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir.

2016), *with In re Hawaiʻi Fed. Asbestos Cases*, 960 F.2d 806, 817 (9th Cir. 1992).

Application of maritime law also impacts the damages analysis because maritime

law limits punitive damages.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 506,

513 (2008) (holding that maritime law caps punitive damages at a 1:1 ratio of

compensatory damages for asbestos torts); *McBride v. Estis Well Serv., L.L.C.*, 768

F.3d 382, 390–91 (5th Cir. 2014) (holding that a claimant seafarer cannot recover

punitive damages for personal injury claims under maritime law).  Further,

maritime law precludes claims for pain and suffering, loss of consortium, and loss

of society.  *Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 122–24, 118 S. Ct.

1890, 1895 (1998) ("Because Congress has chosen not to authorize a survival

action for a decedent's pre-death pain and suffering, there can be no general

maritime survival action for such damages."); *Saavedra v. Korean Air Lines Co.*,

93 F.3d 547, 550–51 (9th Cir. 1996) ("We hold that the Supreme Court's reasoning

in *Zicherman,* although directly dealing only with a claim for loss of society,

effectively forecloses any claims under American law for nonpecuniary damages,

including compensation for the grief of the survivors, and the pre-death pain and

suffering of the victims."); *Smith v. Trinidad Corp.*, 992 F.2d 996, 996 (9th Cir.

11

1993) (holding that a seafarer's spouse cannot recover damages for loss of consortium or loss of society for personal injury claims under maritime law).

> **_Subject 9_:  _Plaintiffs' settlements with other defendants in the underlying asbestos cases or other defendants whose conduct may have contributed to the injuries claimed in the action against Cleaver-Brooks._**

Plaintiffs' settlements with other defendants relate to the settlement value of their claims against Cleaver-Brooks.  If Cleaver-Brooks allegedly committed discovery fraud but other defendants did not, then what settlement value did Plaintiffs and those other "truthful" defendants assign to the underlying claims?  In contradiction to their argument now, *see* Pls. Mot. to Define Discovery [ECF# 104] at 4, Plaintiffs previously argued to Cleaver-Brooks that "these plaintiffs in Hawaiʻi Navy and shipyard cases settled their claims with CB for a fraction of **_what was paid by similarly situated equipment defendants_** that had responded to discovery requests in a forthright manner."  *See* Galiher firm Nov. 9, 2016 Demand Letter at 10 [attached hereto as **_Exhibit A_**] (emphasis added).

The timing and amount of Plaintiffs' settlements with other defendants also affects the settlement value of those underlying claims governed by Hawaiʻi law. Earlier settlements set-off the liability of remaining defendants on a dollar-for-dollar basis.  *See* Haw. Rev. Stat. § 663-15.5(a)(2) (any good-faith settlement shall "[r]educe the claims against the other joint tortfeasor or co-obligor not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the

consideration paid for it, whichever is greater.").  Thus, Cleaver-Brooks' liability

(if any) on the settlement date varied according to the timing and amount of

settlements with other defendants.

> *__Subject 10__:  The Galiher firm's settlements on behalf of asbestos plaintiffs other than those at issue in this action with Cleaver-Brooks.*

> *__Subject 11__:  The Galiher firm's settlements on behalf of asbestos plaintiffs with all manufacturers or sellers of equipment or products containing asbestos.*

> *__Subject 17__:  The Galiher firm's valuation of asbestos settlements in Hawai'i including cases by other plaintiffs and against other defendants.*

Subjects 10, 11 and 17 concern asbestos settlements in Hawai'i outside of

the underlying cases.  Like Plaintiffs' settlements with other defendants, these

outside settlements are strong evidence of settlement value for asbestos claims

similar to the underlying claims that were not allegedly tainted by fraud.  The

Ninth Circuit agrees that such evidence is useful.  *See Living Designs, Inc. v. E.I.*

*Dupont de Nemours & Co.*, 431 F.3d 353, 368 (9th Cir. 2005) (endorsing

"comparable settlements" as appropriate evidence for settlement fraud damages).

> *__Subject 12__:  The Galiher firm's dossiers (as mentioned in the litigation over the ownership of the Galiher firm following the death of Gary Galiher) on Cleaver-Brooks and all other asbestos defendants with whom settlements were reached in Hawai'i.*

> *__Subject 13__:  The dispute over the Galiher firm's assets and files after Gary Galiher's death.*

Subjects 12 and 13, like Subject 3, relate to the underlying merits of Plaintiffs' fraud allegations as well as Plaintiffs' claimed damages.  After Gary Galiher unexpectedly died, a dispute arose between the Galiher estate and some of the Galiher firm lawyers (including Mr. DeRobertis and Ms. Waxman) over ownership of the Galiher firm's assets and files.  The Galiher estate sued DeRobertis & Waxman LLP over ownership of, among other things, the files relevant to the underlying cases at issue here.  The Galiher estate's TRO motion stated that the "dossiers the firm has created for certain entities that appear frequently as asbestos defendants . . . provide[] the Galiher Law Corporation a substantial advantage in recruiting plaintiffs and extracting larger settlements from defendants."  *See* Galiher Estate's TRO Mot. at 13–14 [attached hereto as ***Exhibit B***].  It is reasonable to believe that these dossiers contain evidence related to what the Galiher lawyers thought they knew about Cleaver-Brooks, what they considered to be material, and how they valued cases against Cleaver-Brooks and other asbestos defendants.  Because Plaintiffs must establish that their lawyers' reliance on the supposed misrepresentations was reasonable, their existing knowledge is crucial to Plaintiffs' fraud claims.

> *Subject #14*:  *Plaintiffs' engagement of the Galiher firm in this action.*

> *Subject #15*:  *Any arrangements between Plaintiffs or their counsel for financing this litigation.*

14

Subjects 14 and 15 relate to the competence and credibility of Galiher firm lawyers as witnesses in this action.  *See Tiki Shark Art Inc. v. CafePress Inc.*, No. CV 13-00577 JMS-RLP, 2014 WL 12603135, at \*2 (D. Haw. June 30, 2014), *aff'd*, No. CIV. 13-00577 JMS, 2014 WL 3928799 (D. Haw. Aug. 12, 2014) (permitting discovery into "information [that] is relevant to bias and witness credibility"); *Yousefi v. Delta Elec. Motors, Inc.*, No. C13-1632RSL, 2015 WL 11217257, at \*2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through . . . contributions from the union is not relevant to any claim or defense at issue.  If, however, Local 46 . . . has an expectation of payment if and only if plaintiff prevails, evidence of that financial interest may be relevant to determining the credibility and potential bias of Local 46 witnesses.").

Plaintiffs have identified Mr. DeRobertis and Ms. Waxman as key fact and opinion witnesses.  Depending on the facts discovered about their respective interests in this litigation, Hawaiʻi Rule of Professional Conduct 3.4(c) might preclude their testimony.  *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 73 (2d Cir. 1990) (barring a lawyer whose testimony "would be essential to the proof of plaintiffs' claims" from receiving a contingency fee in the same case).  And even if they are competent to testify, their credibility is certainly subject to challenge by Cleaver-Brooks if they stand to gain financially from the outcome of the case.

**_Subject #16_: _Claims made or threatened by Plaintiffs against the Galiher firm._**

Plaintiffs here claim that they settled the underlying cases for too little because their counsel relied on misrepresentations by Cleaver-Brooks. Presumably the underlying plaintiffs were advised of the various challenges made by the Galiher firm to the sufficiency of Cleaver-Brooks' discovery responses in the underlying cases. If any Plaintiff asked why the Galiher firm recommended settlement with Cleaver-Brooks when the firm knew of alleged discovery insufficiencies, and if any Plaintiff has made a claim that they settled for too little because of the Galiher lawyers' fault, such a claim would certainly relate both to Plaintiffs' credibility as witnesses and to the reasons Plaintiffs settled the underlying cases. If there are no such claims, Plaintiffs can easily say so. If any Plaintiff made such a claim, it is frivolous for Plaintiffs to contend the claim has no relevance.

## II.   Plaintiffs' Proposed Restrictions On Subjects 1, 2, 6, 7 And 8 Are Contrary To Binding Hawai'i Precedent. [3]

Ignoring the facts relevant to the fraud claims and the variables identified in _Exotics_ as relevant to settlement fraud damages, Plaintiffs ask this Court to limit

---

[3]   Plaintiffs concede that any decision about Subjects 3, 4 and 5 would be premature in advance of specific discovery requests. _See_ Pls.' Memo. in Supp. [ECF# 104-1] at 27. But the Court can certainly address the relevance of the topics at this time.

discovery on Subject 1, 2, 6, 7 and 8 to "[o]nly documents and discovery actually taken or produced by Plaintiffs as of the date(s) of the 56 individual settlements." *See* Pls.' Memo. in. Supp. [ECF# 104-1] at 27.  Contrary to Plaintiffs' argument, Cleaver-Brooks does not "seek discovery to relitigate the merits of each of the 56 underlying settlements." *Id.* at 10.  Nor does Cleaver-Brooks argue that Plaintiffs must prove as a threshold requirement that they would have prevailed in the underlying cases.  But ***the strengths and weaknesses*** of Plaintiffs' underlying claims are central to their fraud claims here as *Exotics* plainly directs.  In short, the risks of loss and probabilities of success determine the settlement value of each underlying case.  That value must be determined based not only on what Cleaver-Brooks knew or might have foreseen at the time, but also must be determined based on what Plaintiffs and their counsel knew or might have foreseen at the time.

Plaintiffs unpersuasively argue to the contrary based on two cases decided before *Exotics*—*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005) and *Matsuura v. E.I. du Pont DeNemours & Co.*, No. 00-00328 SOM-LEK, 2006 WL 5249742 (D. Haw. Dec. 21, 2006).

*Living Designs* does not support Plaintiffs' argument at all.  That case held that the defendant was not entitled to summary judgment because the fraud-in-the-inducement plaintiffs could not prove their damages with certainty.  The Ninth Circuit held that the plaintiff need not prove that the settled claim had merit.

17

Importantly, however, the Ninth Circuit explained that "the relative strength of the claim in the absence of fraud should be used by the trier of fact to determine the amount of the defrauded party's damages." *Living Designs*, 431 F.3d at 368. "Evidence of the legal and factual strength of the [underlying] claim merely goes to the value of the claim that was compromised in determining damages from the fraud." *Id.* at 367–68.  The Ninth Circuit also stated that "[t]he use of probability analysis, for example, in calculating settlement values is not uncommon." *Id.* at 368.  And it endorsed "comparable settlements" as appropriate evidence for settlement fraud damages. *Id.*  All of this is consistent with *Exotics* and supports Cleaver-Brooks' efforts to gather evidence about the strengths and weaknesses of Plaintiffs' underlying claims and the reasons for the underlying settlements, as well as evidence about settlements in comparable cases.

In contrast, *Matsuura* has no import to the discovery subjects of this case. *Matsuura* granted in part a motion in limine to preclude DuPont's 18 scientific experts from testifying at trial "about the merits, or lack thereof, of Plaintiffs' underlying products liability claims, nor may they testify about whether Benlate was or was not defective or contaminated." *Matsuura*, 2006 WL 5249742, at *2. The opinion conflicts with the Hawai'i Supreme Court's later opinion in *Exotics* to the extent that the *Matsuura* court held that evidence about the relative weakness of plaintiffs' underlying claims was not relevant to their settlement value.

18

*Exotics* explains that the jury needs guidance from legal and economic experts on the settlement value of the underlying cases. *See Exotics*, 116 Haw. at 301–02, 172 P.3d at 1045–46 (it "would be nearly impossible for a lay person to determine" settlement fraud damages "without guidance from expert legal testimony" and "economic experts would likely be necessary to aid the jury in determining the underlying tort damages" and "how those economic damages affect the settlement value"). Defendants' discovery subjects seek evidence necessary for their experts to provide such jury guidance and to rebut Plaintiffs' experts.

Plaintiffs misread *Exotics* to justify their one-sided view of discovery. *Exotics* does not limit relevant evidence to what a settling defendant knew at the time of the settlement. For the fair settlement value, *Exotics* provides that "the trier of fact determines 'the probable amount of settlement in the absence of fraud after considering **all known or foreseeable facts and circumstances affecting the value of the claim** on the date of settlement[.]'" *Id.* at 298, 172 P.3d at 1042 (citation omitted) (emphasis added). The *Exotics* Court did not limit the jury's inquiry only to facts known by one side, as Plaintiffs' narrow reading requires. Plainly, facts that Plaintiffs or their counsel knew or that were foreseeable to them at the time of settlement bear on the settlement value of the underlying cases, whether or not those facts were then known to Cleaver-Brooks.

19

Plaintiffs cherry-pick the phrase "on the date of settlement" from *Exotics* and argue that the settlement value cannot be based on evidence that might have been discovered "if defendants had chosen to do more discovery, or taken more depositions, or developed more defenses."  *See* Pls.' Memo. in. Supp. [ECF# 104-1] at 5.  But, *Exotics* says "all known *or foreseeable* facts" are relevant, not just "known facts."  *Exotics*, 116 Haw. at 298, 172 P.3d at 1042 (citation omitted) (emphasis added).  And that includes facts known or foreseeable to both sides.  Thus, Plaintiffs' emphasis on the fact that 26 federal cases were settled during a discovery stay is nothing more than a red herring.  *See* Pls.' Memo. in. Supp. [ECF# 104-1] at 18–19.  To deny Cleaver-Brooks discovery into facts that were known or foreseeable to Plaintiffs and their counsel at the time deprives Cleaver-Brooks of the ability to defend itself and risks the award of a windfall to Plaintiffs.

Plaintiffs' one-sided view of discovery also violates fundamental discovery principles of mutuality and fairness.  The U.S. Supreme Court announced "more than 60 years ago" the "fundamental principle" that "*[m]utual* knowledge of all the relevant facts gathered by *both parties* is essential to proper litigation."  *Plata v. Brown*, 754 F.3d 1070, 1078 (9th Cir. 2014) (emphasis added) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385 (1947)).  Indeed, the Federal Rules of Civil Procedure create a "broad right of discovery" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting

the search for the truth." *Shoen v. Shoen,* 5 F.3d 1289, 1292 (9th Cir.1993); *see also Matter of Haw. Corp.*, 88 F.R.D. 518, 524 (D. Haw. 1980) ("Discovery must be accorded a broad and liberal scope in order to provide both parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." (citations omitted)).

Plaintiffs' view that they get to conduct new discovery while Cleaver-Brooks does not violates these fundamental discovery principles.  Cleaver-Brooks needs evidence to test Plaintiffs' theories in this lawsuit.  Although Plaintiffs plead that their counsel reasonably relied on Cleaver-Brooks' discovery responses, the Galiher firm lawyers could only advise their clients to settle.  The decision "whether to settle a civil matter must be made by the client."  Haw. R. Prof'l Conduct 1.2(a) & cmt.1.  To deny Cleaver-Brooks discovery into why Plaintiffs settled and what they reasonably relied upon would shackle Cleaver-Brooks' ability to defend itself against the serious fraud and racketeering claims.

Exacerbating the issue, Plaintiffs plan to call Mr. DeRobertis to testify on reasonable reliance and valuation of the 56 settlements as well as Ms. Waxman to testify on reasonable reliance.  *See* Pls.' Initial Disclosures [ECF# 107] at 2.  Mr. DeRobertis and Ms. Waxman likely have a contingency fee arrangement with Plaintiffs.  By seeking to deny discovery for Cleaver-Brooks, Plaintiffs are effectively arguing that the jury must take as true the word of Ms. Waxman on

reliance and Mr. DeRobertis on reliance and damages even though both lawyers stand to collect a significant portion of Plaintiffs' recovery. Cleaver-Brooks is entitled to discover the evidence it needs to cross examine Mr. DeRobertis and Ms. Waxman effectively and to test Plaintiffs' theories.

## III.   Discovery Subjects 9 Through 17 Are Relevant And Proportional To The Needs Of This Lawsuit.

As explained in detail above, Subjects 9 through 17 relate either to materiality, reasonable reliance, damages or witness credibility and therefore fall within the permissible scope of discovery under Rule 26. That rule provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, ]3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Plaintiffs' boilerplate proportionality argument finds no basis in the circumstances of this case.[4] Simply put, Cleaver-Brooks must defend 73

---

[4]   Plaintiffs cite four unpublished cases and argue that these cases somehow support their proportionality argument. *See* Pls.' Memo. in Supp. [ECF# 104-1] at 19–22 (citing *Moskowitz, Delgado, Gilead,* and *Shirley*). The four cases do not evaluate discovery subjects in the context of fraudulent inducement of settlement claims and therefore are unpersuasive. *See* Fed. R. Civ. P. 26 advisory committee's note 2015 ("The court's responsibility, using all the information

Plaintiffs' claims that they were fraudulently induced to enter into 56 separate settlements. As Judge Watson has already ruled, Plaintiffs "do not get a free pass" simply "because of the collective fashion in which they have chosen to bring this case." *See* Mot. to Dismiss Order [ECF# 71] at 20. Each claim must be adjudicated on its individual merits. Proportionality must, therefore, be evaluated based on each individual claim. In other words, the Court must decide proportionality as if it were adjudicating 56 different cases, not one.

Considering what is proportional to each Plaintiff's claim, Cleaver-Brooks does not seek excessive discovery. With respect to each settlement, it seeks to discover the facts relevant to each injured asbestos plaintiff's exposure and injury. It seeks to discover how each Plaintiff—or counsel for each Plaintiff—evaluated the underlying case based on facts known to or foreseeable by each Plaintiff and her counsel at the time of settlement. Because each Plaintiff pleads that her counsel relied on the alleged misrepresentations, Cleaver-Brooks seeks to test whether counsel did in fact rely and how, as reflected in part by the value of other settlements into which Plaintiffs or their counsel entered.

The anticipated discovery on each of these subjects will not involve excessive depositions about each settlement or the production of voluminous

---

provided by the parties, is to consider these and all the other factors in reaching a ***case-specific determination*** of the appropriate scope of discovery." (emphasis added)).

documents about each settlement, or excessive expense in any way.  This is especially true given Plaintiffs' assertion that "[t]he true settlement value of these claims is well in excess of $25 million."  *See* Galiher firm Nov. 9, 2016 Demand Letter at 10 [attached hereto as ***Exhibit A***].  Nor can Plaintiffs argue that the information is available to Cleaver-Brooks through means other than discovery from Plaintiffs and their counsel.  Moreover, Plaintiffs do not explain what makes these general subjects of relevant discovery unduly burdensome.  *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied."); Fed. R. Civ. P. 26 advisory committee's note 2015 ("A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination.").

## **CONCLUSION**

Plaintiffs have failed to show that Defendants' discovery subjects are irrelevant or disproportionate to this lawsuit.  Accordingly, the Court should deny Plaintiffs' motion.

DATED: Honolulu, Hawaiʻi, April 20, 2020.

*/s/Margery S. Bronster*
MARGERY S. BRONSTER
KENNETH S. ROBBINS
JENNA DURR

Attorneys for Defendant
CLEAVER-BROOKS, INC.