GALIHER DeROBERTIS & WAXMAN LLP

L. RICHARD DeROBERTIS   3179
ILANA K. WAXMAN   8733
ALLISON M. AOKI   6912
ALYSSA R. SEGAWA   9798
820 Mililani Street, Suite 505
Honolulu, Hawai'i  96813
Telephone: (808) 597-1400
Facsimile: (808) 591-2608
E-mail:   alyssa.segawa@galiherlaw.com

WATERS KRAUS & PAUL

PETER A. KRAUS   10912
CHARLES SIEGEL (Pro hac vice)
3141 Hood Street, Suite 700
Dallas, Texas  75219
Telephone: (214) 357-6244
Facsimile: (214) 357-7252

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI`I

| | |
|---|---|
| TERRY N. AGENA, Individually and as the Successor Trustee of the JAMES K. AGENA Trust, Deceased, et al.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>CLEAVER-BROOKS, INC., et al.,<br><br>    Defendants. | CIVIL NO. 19-00089-DKW-WRP<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO [101] CLEAVER-BROOKS, INC.'S MOTION FOR SEPARATE TRIALS, FILED MARCH 23, 2020, AND [*CAPTION CONTINUED ON NEXT PAGE*]<br><br><u>Hearing</u>:<br>Date:  None (previously vacated)<br>Judge:  The Hon. Wes Reber Porter<br><br>Trial:  July 12, 2021 |

[105] DEFENDANT HUSCH
BLACKWELL LLP'S JOINDER TO
CLEAVER-BROOKS INC.'S MOTION
FOR 56 SEPARATE TRIALS, FILED
MARCH 23, 2020; DECLARATION OF
COUNSEL; EXHIBITS "A" - "F";
CERTIFICATE OF COMPLIANCE
WITH LOCAL RULE 7.5;
CERTIFICATE OF SERVICE

Opp CB Mtn Separate Trials (with CSS Insert)_4.19.20.docx

## TABLE OF CONTENTS

I.    PREFACE ............................................................................................1

II.   STATEMENT OF FACTS ..................................................................2

III.  STANDARD.........................................................................................5

IV.   ARGUMENT .......................................................................................6

      A.   The Issues And Evidence In These Cases Substantially Overlap........ 6

      B.   Discovery On The Issues Favors A Single Trial................................ 13

      C.   There Are No Differences In Governing Law That Justify
           Bifurcation...................................................................................... 14

      D.   The Plaintiffs Will Be Prejudiced If Bifurcation Is Granted ............. 23

V.    CONCLUSION...................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Barrette v. Jubilee Fisheries, Inc.*,
   2011 WL 3516061 (W.D. Wash. Aug. 11, 2011)...............................................22

*Batterton v. Dutra Group*,
   880 F.3d 1089 (9th Cir. 2018) ...........................................................................21

*Cabasug v. Crane Co.*,
   989 F.Supp. 2d 1027 (D. Haw. 2013) ........................................................ 17, 26

*Clark v. United States*,
   2010 WL 11610668 (D. Haw. Nov. 18, 2010................................................ 6, 27

*Clausen v. Icicle Seafoods, Inc.*,
   272 P.3d 827 (Wash. 2012)................................................................................19

*Columbo v. BRP U.S. Inc.*,
   230 Cal. App. 4th 1442 (2014) .........................................................................20

*Davis v. Mason Cnty.*,
   927 F.2d 1473 (9th Cir. 1991) .................................................................... 28, 29

*Dowkin v. Honolulu Police Department*,
   2011 WL 13350246 (D. Haw. June 30, 2011)......................... 5, 6, 14, 26, 27, 28

*Dowkin v. Honolulu Police Department*,
   2011 WL 3021784 (D. Haw. Jul. 22, 2011).................................... 5, 7, 8, 26, 27

*Dusky v. Bellasaire Investments*,
   2007 WL 4403985 (C.D. Cal. Dec. 4, 2007) .....................................................14

*Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*,
   116 Hawai'i 277,
   172 P.3d 1021 (2007)................................................................................... 9, 12

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008).............................................................................. 17, 18, 19

*Hambrook v. Smith*,
2016 WL 4084110  (D. Haw. Aug. 1, 2016) ......................................................23

*In re Asbestos Prods. Liab. Litig.* (No. VI),
2014 WL 3353044 (E.D. Pa. July 9, 2014).........................................................20

*In re Cendant Corp. Litigation*,
182 F.R.D. 476 (D.N.J. 1998)..............................................................................13

*In re Hawai'i Fed. Asbestos Cases*,
960 F.2d 806 (9th Cir. 1992)................................................................................16

*Kahumoku v Titan Mar., LLC*,
486 F.Supp. 2d 1144 (D. Haw. 2007) ..................................................................23

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................13

*Kawamata Farms, inc. v. United Agri Products*,
86 Haw. 214,
948 P.2d 1055 (1997)...........................................................................................25

*Lindstrom v. A-C Prod. Liab. Trust*,
424 F.3d 488 (6th Cir. 2005)................................................................................26

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
431 F.3d 353 (9th Cir. 2005)................................................................................28

*Matsuura v. E.I. du Pont DeNemours and Co.*,
2006 WL 5249742 (D. Haw. Dec. 21, 2006)................................................. 2, 12

*McCoy v. St. Louis Public Schools*,
2011 WL 4857931 (E.D. Mo. Oct. 13, 2011) ......................................................30

*McIndoe v. Huntington Ingalls, Inc.*,
817 F.3d 1170 (9th Cir. 2016) .............................................................................16

*Miller v. Fairchild Industries, Inc.*,
885 F.2d 498 (9th Cir. 1989)..................................................................................6

*Sutton v. Earles,*
   26 F.3d 903 (9th Cir. 1994)......................................................................23

*Tabieros v. Clark Equipment Co.,*
   85 Haw. 336,
   944 P.2d 1279 (1997)...........................................................................25

*The Dutra Group v. Batterton,*
   139 S.Ct. 2275 (2019) .........................................................................22

*Topadzhikyan v. City of Glendale,*
   2011 WL 13124623 (C.D. Cal. Mar. 17, 2011)..................................29

*United Air Lines Inc. v. Weiner,*
   286 F.2d 302 (9th Cir. 1961)...................................................................6

*Wagner v. Kona Blue Water Farms. LLC,*
   2010 WL 3566731 (D. Haw. Sept. 13, 2010).....................................21

*Warren v. Shelter Mut. Ins. Co.,*
   233 So.2d 568, 593-99 (La. 2017) ......................................................19

## Other Authorities

David W. Robertson,
   *Punitive Damages in U.S. Maritime Law: Miles, Baker and Townsend,*
   70 La. l. Rev. 463 (2010) ....................................................................17

John W. DeGravelles,
   *Supreme Court Charts Courts for Maritime Punitive Damages,*
   22 U.S.F. Mar. L. J. 123 (2009-10).....................................................17

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO [101]
CLEAVER-BROOKS, INC.'S MOTION FOR SEPARATE TRIALS,
FILED MARCH 23, 2020, AND [105] DEFENDANT HUSCH
BLACKWELL LLP'S JOINDER TO CLEAVER-BROOKS INC.'S
MOTION FOR 56 SEPARATE TRIALS, FILED MARCH 23, 2020

I.        PREFACE

Defendants argue that this case should be bifurcated into 56 separate

trials because the facts, law, and circumstances relevant to each settlement materially

differ and defendants would be prejudiced.  However, the evidence of Cleaver-

Brooks' false statements of material facts, which are central to this action for

discovery fraud, substantially overlap between the 56 underlying settlements and in

many cases are identical.  As will be demonstrated below, the Galiher firm relied

upon the false statements of material fact contained within the 2007 Master

Interrogatories in recommending settlements to all 56 plaintiffs in the underlying

settlements.  Additionally, as plaintiffs settled in trial groups in both the Hawaii state

and federal asbestos litigation, the Galiher firm would have relied upon the same

false statements for various groups of settling plaintiffs.  Thus, the evidence of the

fraudulent statements that the Galiher firm relied on would substantially overlap

across the 56 settlements and in many cases be identical.  Defendants focus on the

damages portion of Plaintiffs' claims in arguing that the facts of the underlying cases

are so different that it warrants bifurcation.  However, under Hawaii law, "testimony

about the merits, or lack thereof, of Plaintiffs' underlying products liability claims are not relevant[.]"  *Matsuura v. E.I. du Pont DeNemours and Co.*, 2006 WL 5249742, *2 (D. Haw. Dec. 21, 2006).  Plaintiffs plan on using one or two experts to testify as to the amount of damages for all 56 Plaintiffs.  Plaintiffs also anticipate one expert on legal ethics.

Furthermore, there are no substantial differences in maritime law and Hawaii law which would require bifurcation of these cases.  Cleaver-Brooks did not argue for any limitation of damages in the underlying cases, nor were they even raised by Cleaver-Brooks in its negotiations with the Galiher firm.  To have this Court prepare for and try 56 separate cases on similar issues with overlapping and in some cases identical evidence and applicable law would be a complete waste of time and judicial resources.

II.        STATEMENT OF FACTS

The facts of this case are well known to this Court, but the following concise facts are relevant to this motion.   Cleaver-Brooks first served its interrogatory answers in state court in June 2007 ("2007 Master Interrogatories).  Second amended complaint, ECF No.76, at p. 43, ¶75.  These responses were intended to apply to all present and future asbestos cases in Hawai'i state court.  *Id.* *See also* Exhibit "A" (excerpt from CMO No. 1, dated Aug. 2, 2005), at p.8 ("A defendant's Standard Answers shall apply in all pending cases and in all

2

subsequently filed cases in which it has been named as a party, until its Standard Answers are further amended in accordance with this CMO.")  As plaintiffs later learned, these answers contained intentionally false statements of material fact.  ECF No. 76, at p.43-48, ¶76.  On August 31, 2007, Cleaver-Brooks produced depositions of corporate representative John Tornetta, taken on April 5 and 9, 2007, as well as prior interrogatory answers.  *Id.* at p. 48-50, ¶77.  All of these discovery products contained multiple material misrepresentations as to Cleaver-Brooks' liability.  *Id.*

The Galiher firm relied on these false statements of material fact in recommending settlement to 28 sets of plaintiffs: those in the *Riviera*, *Palada*, *Almason*, *Chu*, *Lum*, *Agena*, *Garrett-Takaki*, *de la Sierra*, *Yee*, *Aguilar*, *Kahanaoi*, *Cassani*, *Cabatbat*, *Villiatora*, *Alapasco*, *Santos*, *Parages*, *Rio*, *Isara*, *Means*, *Wickman*, *Pagan*, *Sakamoto*, *Fujii*, *Alo*, *Oshiro*, *Chang*, and *Racoma* cases.  *See Id.* at p.50-65, ¶¶ 78-86.  The firm also relied upon the 2007 answers in recommending settlement in the *Kaneshiro* case.  *Id.* at p.87, ¶96.

On January 29, 2009, plaintiffs filed a motion to compel, seeking supplemental answers to the 2007 master interrogatories.  *Id.* at p.52, ¶80.  At the meet-and-confer for the motion, Cleaver-Brooks' local counsel repeated the falsity that defendant needed to go to the National Archives to look for drawings of its products, including Aqua-Chem products.  *Id.*  On February 9, 2009, plaintiffs took

the Rule 30(b)(6) deposition of corporate representative Tornetta, in which he made numerous false statements. *Id.* at p.52-56, ¶81.

On the Galiher firm relied upon the false statements of material fact in the 2009 Tornetta deposition, and the false statement of local counsel regarding searching the National Archives, in recommending settlement to 23 sets of plaintiffs: those in the *Agena*, *Garrett-Takaki*, *de la Sierra*, *Yee*, *Aguilar*, *Kahanaoi*, *Cassani*, *Cabatbat*, *Villiatora*, *Alapasco*, *Santos*, *Parages*, *Rio*, *Isara*, *Means*, *Wickman*, *Pagan*, *Sakamoto*, *Fujii*, *Alo*, *Oshiro*, *Chang*, and *Racoma* cases. *Id.* at p.52-65, ¶¶ 80-86.

On the federal side, plaintiffs filed the *Cabasug* case in 2012 while all other pending cases that had been removed to federal court were stayed. *Id.* at p.66, ¶87-88. Cleaver-Brooks produced discovery in *Cabasug*, which included the 2007 Master Interrogatories served in state court and the 2009 depositions. *Id.* at p.67, ¶89(C). Cleaver-Brooks also answered Master Interrogatories in Hawaii federal court on December 2, 2013, which would apply to all federal cases in Hawaii federal court. *Id.* at p.67, ¶89(D). The Plaintiffs' attorneys relied upon the false statements of material fact contained in discovery produced in *Cabasug*, including the federal master interrogatories, in recommending settlement to 27 sets of plaintiffs: *Agodong*, *Akau*, *Behlert*, *Blevins*, *Brown*, *Calbero*, *Chun*, *Clemente*, *Dote*, *Felimer*, *Gabalis*, *Isara*, *Kaawalauole*, *Yonezawa*, *Leite*, *Morton*, *Nonies*, *Ota*, *Rosaldo*, *Schriner*,

*Shintaku*, *Thompson*, *Cabasug*, *Ralston*, *Shimazu*, *Capati*, and *Robinson*.  *Id.* at p. 78-85, ¶¶ 91 & 93. 22 of these 27 cases were settled in November 2014, while the remaining five were settled on February 6, 2015, all through the same court-ordered mediation.  Exhibits "B" & "C."  The firm had thus relied upon the 2007 answers in recommending settlements to all 56 sets of plaintiffs in this action, and relied upon the 2009 Tornetta deposition in recommending settlements to at least 50 plaintiffs.

III.        STANDARD

The decision whether to try matters separately is within a court's discretion, but "[s]eparate trials, however, are the exception rather than the rule of normal trial procedure."  *Dowkin v. Honolulu Police Department*, 2011 WL 3021784, *2 (D. Haw. Jul. 22, 2011).  "The moving party has the burden of proving that 'bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties.'"  *Dowkin v. Honolulu Police Department*, 2011 WL 13350246, at *2 (D. Haw. June 30, 2011).  Other factors to be considered include:

> whether (1) the evidence offered in the proposed phases
> will substantially overlap, (2) the issues are so intertwined
> that they might create juror confusion and uncertainty, and
> (3) bifurcation will "permit deferral of costly and possibly
> unnecessary proceedings pending resolution of potentially
> dispositive preliminary issues."

*Id.* (internal citations omitted).  This Court has also considered the following additional factors:

> (1) whether the issues are significantly different from one another, (2) whether the posture of discovery on the issues favor a single trial or bifurcation, (3) whether the evidence on the issues overlap, and (4) whether the party opposing bifurcation will be prejudiced if it is granted.

*Clark v. United States*, 2010 WL 11610668, *1 (D. Haw. Nov. 18, 2010) (citing *Clark v I.R.S.*, 2009 WL 5698139, at *4 (D. Haw. Nov. 10, 2009)) (internal quotation marks omitted). The Ninth Circuit has held that bifurcation is inappropriate where the issues are so intertwined that confusion and uncertainty would result. *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 511 (9th Cir. 1989); *see also United Air Lines Inc. v. Weiner*, 286 F.2d 302, 306 (9th Cir. 1961).

IV.     ARGUMENT

    A.     The Issues And Evidence In These Cases Substantially Overlap

        While it is axiomatic that each individual plaintiff's claim must stand on its own, this does not require 56 separate trials for each claim. In *Dowkin, supra,* three Honolulu police officers sued the Department, and 13 supervisors, officers, and HPD personnel, for alleged race and gender discrimination. *Id.* at *1. Defendants moved to trifurcate the case, claiming that the issues of liability and damages for each particular plaintiff were divisible and distinct from one another. *Id.* at *2. Magistrate Judge Puglisi disagreed, finding that "the facts and legal issues involved in Plaintiffs' cases are sufficiently intertwined such that it is appropriate to keep them together as one action." *Id.* at *3.

6

The plaintiffs alleged that the racial discrimination was perpetrated by fellow officers.  Two plaintiffs filed a joint complaint, and the third's claims were materially related to the other two, since she experienced discrimination as a result of providing testimony in support of them.  *Id.*  As a result, the court found,

> [g]iven these connections, if this case were to be trifurcated, Bennett-Bagario would likely put on evidence relating to Dowkin and Delgadillo's alleged discrimination and her testimony to HPD, which would substantially overlap with the evidence presented by Dowkin and Delgadillo in their individual trials. Therefore, the Court finds that trifurcation of this matter is not warranted.

*Id.*  Judge Mollway agreed with Magistrate Judge Puglisi's analysis, finding that "[a]ll three officers' discrimination claims are connected in a way that would cause the evidence at trial to overlap substantially.  The alleged discrimination and retaliation against Bennett-Bagorio, for instance, allegedly resulted directly from her testimony in support of Dowkin and Delgadillos' joint racial discrimination claims." *Dowkin, supra,* 2011 WL 3021784, at *2.  The Court further stated that "[t]rifurcation would cause plaintiffs to have to present the same evidence at three trials.  This would create excess work and expense for the parties, witnesses, counsel, and the court." *Id.*

As in *Dowkin*, the issues and evidence involved in these 56 cases substantially overlap and in many cases are identical.  Plaintiffs' claims require "(1) a representation of a material fact, (2) made for the purpose of inducing the other party

to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to his or her detriment." *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawai'i 277, 298, 172 P.3d 1021, 1042 (2007) (citation omitted).  Here, although various groups of plaintiffs settled at different times, each group would have relied upon the same representations of material fact.  This is not a case where each plaintiff settled based on separate or distinct representations made in each case. Rather, in this case numerous plaintiffs settled their claims based on recommendations *from one law firm* who relied upon *the same representations made by the same defendant.*

Defendant's claim that "much of the evidence relevant to each settlement will differ and not overlap" is plainly incorrect.  As detailed above, the same misrepresentations were relied upon in recommending settlement to the 28 plaintiffs in state court (the 2007 interrogatory answers, corporate representative depositions, and Standard Interrogatories from mainland cases).  *See* ECF No. 76 at pp.50-65, pp.78-86.  The Galiher firm also relied upon the false statements made in the 2009 deposition of Tornetta, and the false statement made by defendant's local counsel that it needed to go to the National Archives, in recommending settlement to 23 of these same plaintiffs.  *Id.* at pp.52-65, ¶¶80-86.  Therefore, the evidence regarding Cleaver-Brooks' material representations would substantially overlap, and in most cases be identical, for these 28 cases.

In federal court, the firm relied upon the discovery produced by defendant's in the *Cabasug case,* and the corporate representative deposition taken therein, in settling 27 cases.   *Id*. at pp.78-85, 91, 93.   Therefore, the evidence regarding Cleaver-Brooks' misrepresentations would be identical in these 27 cases. In addition, the discovery produced in the *Cabasug* case included the 2007 answers served in state court, as well as the 2009 Tornetta deposition.  *Id.,* p.67. The 2007 interrogatory answers, therefore, were relied upon in recommending settlements to all plaintiffs in this action, and the 2009 deposition was relied upon in 50 cases.

Additionally, all of the federal cases except for *Cabasug* were stayed pending an appeal.  *See, e.g.*, Exhibit "D" (Judge Kobayashi EO dated Sept. 4, 2012, staying case pending appeal).  These 26 cases were further stayed following the disposition of the appeal while they were ordered into mandatory mediation.  *See, e.g.*, Exhibit "E" (Judge Kobayashi EO continuing the stay and ordering cases into mediation).  As discussed above, 22 of these cases were settled in November 2014 and the remaining five settled on February 6, 2015.  Therefore, contrary to defendants' claims, these 26 federal cases, excluding *Cabasug*, would have settled around the same time at similar points in the litigation process.

Plaintiffs have made it clear that it was not the 56 individual clients who relied upon Cleaver-Brooks' false discovery answers, but rather the Galiher firm attorneys.  For instance, "[o]n or about October 9, 2007, the following plaintiffs

9

settled with Cleaver-Brooks. Plaintiffs' counsel (specifically Gary O. Galiher and L. Richard DeRobertis) relied upon the false statements in Cleaver-Brooks' discovery answers…as stated above (in paragraphs 76 and 77) in evaluating Cleaver-Brooks' liability and then recommending settlements to the below Plaintiffs:" Second Amended Complaint [ECF No. 76, at p.50, ¶78]. *See also* pp. 51, 57, 59, 60-61, 63-64, 80, 84, 87, and 101.

Plaintiffs' other pleadings likewise have made it clear that it was the Galiher firm who relied on these misrepresentations: "The Galiher firm contends and admits that it relied on Cleaver-Brooks' discovery responses[,]" and "[t]he clients did not read Cleaver-Brooks' interrogatory answers or depositions before they signed their releases." ECF No. 73-00, at pp.18-19. In addition, "[t]he Galiher firm admits that it relied upon Cleaver-Brooks' fraudulent discovery responses to its detriment and has no interest in denying or minimizing such reliance[,]" and "[i]t was the Galiher firm that read the Cleaver-Brooks discovery answers, negotiated the settlements, and recommended Cleaver-Brooks' offers to plaintiffs." *Id.* at pp.13 & 15.

In sum, most of the evidence plaintiffs would submit to prove a claim of fraudulent misrepresentation would be the substantially overlapping evidence of Cleaver-Brooks' material misrepresentations, and the substantially overlapping testimony of the attorneys, Mr. DeRobertis and Ms. Waxman, regarding their

reliance on Cleaver-Brooks' representations.   Individual trials for the 56 claims would require plaintiffs to put on substantially similar, and in many cases identical evidence, in 56 separate trials.  Such duplication would be a needless waste of time and resources for the parties. Most importantly, it would be a massive but wholly unnecessary undertaking for the Court.

Defendant attempts to focus this Court solely on the issue of damages in arguing for bifurcation.  As an initial matter, "testimony about the merits or lack thereof, of plaintiffs' products liability claims are not relevant [.]"  *Matsuura v E.I. duPont deNemours & Co.*, 2006 WL 5249742, *2 (D. Haw. Dec. 21, 2006).  In any event, this is but one factor in the analysis, and it will be decided by expert testimony. "The determination of the fair value of what the plaintiffs would have received had there been no fraudulent conduct at the time of settlement entails guidance from legal experts."  *Exotics Hawaii-Kona, supra,* 116 Hawai'i at 300, 172 P.3d at 1044. Plaintiffs anticipate using a small number of experts to opine on the value of damages for all 56 underlying settlements.  While the exact value of damages might vary from case to case, the underlying theory and testimony on how each case is valued will remain constant across all 56 cases.  Variances based on an individual's exposure history, diagnosis, and personal reasons for settling do not require entirely separate trials.  The substantial overlap of issues and evidence in these 56 cases outweighs any differences in the valuation of damages.

Cases involving securities fraud often involve consolidation. "When a court is presented with securities actions in which the complaints are based on the same 'public statements and reports,' consolidation is appropriate if the actions present common questions of law and fact and if the parties will not be prejudiced." *Kaplan v. Gelfond*, 240 F.R.D. 88, 90 (S.D.N.Y. 2007). In *Kaplan*, eight related cases were brought by a purported class of investors who purchased stock during the class period. *Id.* Although there were some discrepancies between the start dates for the class periods, the court found that consolidation was appropriate because "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Id. See also In re Cendant Corp. Litigation*, 182 F.R.D. 476, 477 (D.N.J. 1998) (consolidating over 50 lawsuits because "[a]ll the actions consolidated by this Court are based on securities fraud claims that arise from a common course of conduct. The dates on which the misrepresentations occurred do not change their nature."); *Dusky v. Bellasaire Investments*, 2007 WL 4403985, *5 (C.D. Cal. Dec. 4, 2007) (consolidating three cases involving Ponzi scheme because even though there was some possibility of confusion among the relationships with various parties, "the core factual dispute for each of the claims is the PIPES scheme

itself[, which] was effectuated by a relatively small number of individuals and was relatively simple.").

B.    Discovery On The Issues Favors A Single Trial

In *Dowkin*, the plaintiffs argued that "they would need to conduct essentially the same discovery and present virtually the same evidence at each of the three trials, including possibly in excess of 25 overlapping witnesses." *Dowkin*, 2011 WL 13350246, at *3. This Court agreed, holding that

> due to the relatedness of Plaintiffs' claims, as discussed above, the evidence would likely be greatly duplicative (or, more accurately perhaps, triplicative). The Court, the parties, witnesses, and counsel would all be inconvenienced by having to deal with similar pretrial case management conferences and motions, all leading up to three possibly lengthy costly jury trials. Accordingly, the Court finds that trifurcation would not promote judicial economy or convenience and therefore is not appropriate.

*Id.* at *3.

Defendants have agreed to consolidated discovery. Motion at 18. But they also claim that "they should be allowed to take 10 depositions per settlement at issue." *See* Supplemental Rule 26(F) report, ECF No. 90, at p.10-11. In other words, defendants want 56 trials and 560 total depositions. This would be a monumental waste of time and resources for both the parties and the Court. Therefore, the issue of how discovery should be conducted does not favor bifurcation in this case.

C.      There Are No Differences In Governing Law That Justify
        Bifurcation

Cleaver-Brooks argues that "the law governing each underlying action varies in ways that affect the 56 settlement values."  Motion at 11.  These variations are said to justify separate trials because they will inevitably result in juror confusion.  Defendant contends that some plaintiffs' actions were governed by maritime law, and others by state law, and that maritime cases would be subject to a higher causation standard and to certain damages limitations.

Plaintiffs acknowledge that the cases pending in federal court would have been governed by maritime law.  But the differences between the two bodies of law, as they related to the potential settlement values of these cases, were largely nonexistent.  *And in any event, they were ignored entirely by Cleaver-Brooks when it settled the cases.*

Defendant first asserts that the standard for proving causation in an asbestos case is higher under maritime law than under Hawai'i law. Defendant quotes *McIndoe v. Huntington Ingalls, Inc.*, 817 F.3d 1170 (9th Cir. 2016), for the rule that minimal exposure is insufficient, and the need for "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural."  *Id.* at 1176, quoting *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005).  For the standard under state law, Cleaver-Brooks cites *In re Hawai'i Fed. Asbestos Cases*, 960 F. 2d 806, 817 (9th Cir. 1992), and

14

parenthetically describes its holding as follows: "Hawai'i's lower causation standard only requires 'evidence suggesting that the products of a particular defendant were present at the worksite and thus could be said to have contributed to the asbestos exposure.'" That was not a statement of the Hawai'i causation standard, but rather a summary of the Washington Supreme Court's holding in *Lockwood v. AC&S*, Inc. 744 P.2d 605, 612-13 (Wash. 1987), that the Ninth Circuit took to be the same as the Hawai'i standard.

In any event, Judge Seabright made clear in these cases that there is no rigid difference between maritime law and state law, and that "context matters." There is no "artificial check-list regarding what evidence is necessary to defend summary judgement as to causation in a maritime asbestos products liability case." *Cabasug v. Crane Co*., 989 F.Supp. 2d 1027, 1037 (D. Haw. 2013). Instead, the question of whether a particular plaintiff's proof was sufficient would be determined by a simple, familiar test: "whether plaintiffs have presented evidence to support a reasonable inference that the asbestos from a particular defendant's product was a substantial factor in the injury." *Id*. at 1037. Judge Seabright also noted that "[a] reasonable inference may be the product of either direct or circumstantial evidence. Circumstantial evidence is sufficient to withstand summary judgment, particularly where direct proof is difficult to obtain." *Id*. at 1037 n. 5. In the end, Judge Seabright

denied Cleaver-Brooks' motion for summary judgement on causation. *Id*. at 1054-55. So there plainly was no dispositive difference between maritime and state law.

Cleaver-Brooks next argues that claims governed by maritime law would have been worth less because of certain damages limitations. Defendant asserts that maritime law caps punitive damages at no more than compensatory damages, citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008). But courts applying *Baker* have made clear that the ratio approved there is not an absolute limit, and have approved higher ratios in maritime cases involving more egregious facts.

*Baker* involved the infamous Exxon Valdez oil spill, caused by the captain being drunk. Exxon personnel knew of his drinking problem, but Exxon itself was found to have acted recklessly, not intentionally or maliciously, and not out of any profit motive. Compensatory damages of $507 million were awarded. *Id*. at 510-13. The first paragraph of the opinion framed the question as "whether the award…..*in this case* is greater that maritime law should allow *in the circumstances*" *Id*. at 476 (emphasis added). The Court emphasized that the case before it did not involve "exceptional blameworthiness" or "behavior driven primarily by desire for gain," and stressed the very large amount of compensatory damages. *Id. a*t 513.

Justice Ginsberg's concurring and dissenting opinion made clear her understanding that the Court's holding was not to be applied to all cases regardless of the facts:

> The 1:1 ratio is good for this case, the Court believes, because Exxon's conduct ranked on the low end of the blameworthiness scale.   Exxon was not seeking "to augment profit," nor did it act "with a purpose to injure." What ratio will the Court set for defendants who acted maliciously or in pursuit of financial gain?

*Id*. at 524.  Legal commentators writing soon after the decision read *Baker* as not imposing any blanket rule.  E.g. John W. DeGravelles, *Supreme Court Charts Courts for Maritime Punitive Damages*, 22 U.S.F. Mar. L. J. 123, 143 (2009-10); David W. Robertson, *Punitive Damages in U.S. Maritime Law: Miles, Baker and Townsend*, 70 La. l. Rev. 463, 498-99 (2010).  They were proven right: courts have consistently upheld higher ratios of punitive to compensatory awards, when justified by the facts, and have rejected the argument that the 1:1 ratio must apply in every maritime case. *See, e.g*., *Warren v. Shelter Mut. Ins. Co.*, 233 So.2d 568, 593-99 (La. 2017) (holding that there is no rigid rule in *Baker*, and finding a 2:1 ratio between punitive and compensatory damages appropriate); *Clausen v. Icicle Seafoods, Inc.*, 272 P.3d 827, 835 (Wash. 2012) (upholding award of slightly less than three times compensatory damages, and stating that "the Court seems to embrace an approach of applying a variable limit based on the tortfeasor's culpability."); *Columbo v. BRP U.S. Inc.*, 230 Cal. App. 4th 1442, 1471 (2014) (The *Baker* Court "did not intent to create…a

bright-line rule limiting punitive damages to the amount of compensatory damages awarded to a plaintiff."). In reviewing the availability of punitive damages in maritime asbestos cases, the federal MDL court held that *Baker* "does not necessarily mean that a 1:1 ratio is the outer limit, as plaintiffs could conceivably demonstrate that defendants' blameworthiness is more 'exceptional' than the conduct at issue in *Baker*." *In re Asbestos Prods. Liab. Litig.* (No. VI), 2014 WL 3353044, *17 (E.D. Pa. July 9, 2014).

So too here. The wrongdoing alleged in these cases most assuredly was intentional, and motivated by profit. Maritime law imposes no arbitrary limit on punitive damages in such situations, and as such there were no differences among any of the plaintiffs on this score that would support separate trials.

Defendant next asserts that certain categories of damages are not available if the plaintiff was a "seafarer." Motion at 12. Defendant does not identify any such case, and plaintiffs deny that active duty Navy men who were exposed to asbestos while on board ships as they were overhauled at Pearl Harbor Naval Shipyard are seafarers. In any event, defendant's statements about damages in such cases are wrong.

Cleaver-Brooks first argues that punitive damages are unavailable for seafarers, citing Fifth Circuit authority from 2014, but the law in the Ninth Circuit at the time the underlying settlements were made was the opposite. See *Batterton v.*

18

*Dutra Group*, 880 F.3d 1089, 1091 (9th Cir. 2018), in which the court of appeals reaffirmed its earlier decision in *Evich v. Morris*, 819 F2.d 256 (9th Cir. 1987), and specifically noted its disagreement with the Fifth Circuit. *Id*. at 1092. Indeed, Judge Seabright, who presided over the lead federal case involved here *(Cabasug)*, had also held that punitive damages were available in unseaworthiness cases. *Wagner v. Kona Blue Water Farms. LLC,* 2010 WL 3566731, *8 (D. Haw. Sept. 13, 2010). Thus, at the time these cases were being settled, there was no difference between seafarers and any other plaintiffs as regards recovery of punitive damages.[1]

Next, Cleaver-Brooks states that a seafarer's spouse had no recovery for loss of consortium or loss of society, citing *Smith v. Trinidad Corp*., 902 F.2d 996 (9th Cir. 1993). At the time the federal cases were settled, however, a district court in this circuit had concluded that *Smith* was no longer good law, in view of intervening Supreme Court authority. *Barrette v. Jubilee Fisheries, Inc.*, 2011 WL 3516061, *6-7 (W.D. Wash. Aug. 11, 2011).

Cleaver-Brooks last states that in cases of death of a seafarer, punitive damages, loss of consortium, and loss of future income are not recoverable. Motion at 13, citing *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). Defendant does not state how many cases such limitations would have applied to, and plaintiffs believe

---

[1] *Batterton* was eventually reversed. *The Dutra Group v. Batterton*, 139 S.Ct. 2275 (2019). At the time the cases in question here were settled, however, the law in the Ninth Circuit was that punitive damages were recoverable.

it could only be four cases at most.  In any event, these limitations applied to Jones Act seamen; they would not have applied to plaintiffs here, who were heirs seeking recovery against a non-shipowner defendant under general maritime law.  *See, e.g.*, *Sutton v. Earles,* 26 F.3d 903, 919 (9th Cir. 1994) (upholding loss of society and future earnings damages in general maritime law claims not involving the Death on the High Seas Act or a Jones Act seaman); *Kahumoku v Titan Mar., LLC*, 486 F.Supp. 2d 1144, 1152 (D. Haw. 2007) (holding that *Miles* did not preclude an award of punitive damages to plaintiff not suing under the Jones Act, and that "[p]unitive damages are available under general maritime law."); *Hambrook v. Smith*, 2016 WL 4084110, *4 (D. Haw. Aug. 1, 2016) (lost future earnings of decedent recoverable under general maritime law in cases not involving the Jones Act or DOHSA).

In sum, the actual substantive differences between maritime and state law, as applied to the settlements at issue here, were nonexistent.  *The best indication of this fact is that Cleaver-Brooks never once raised any of the differences it now asserts, in the negotiation of any case.*  Defendant likewise never pursued, and certainly never received, any ruling actually imposing any of the limits on recoverable damages it now raises.

As detailed in Mr. DeRobertis' affidavit attached as Exhibit "F," 22 of the 27 cases in federal court were settled November 2014.  No motion had ever been made in any of the cases concerning any element of damages.  DeRobertis

Declaration, at ¶7.  On January 22, 2015, Cleaver-Brooks filed a motion seeking partial summary judgement as to any claims for nonpecuniary or punitive damages in the *Cabasug* case, but withdrew that motion the very next day.  *Id.  Cabasug* and the remaining four federal cases were settled approximately two weeks later.  Even though those asserted limitations on recoverable damages in maritime cases would theoretically have affected their value in ways that make them distinct from state-court cases, then, *Cleaver-Brooks never once actually raised them in the maritime cases themselves.*

Moreover, Cleaver-Brooks not only never actually made the arguments about maritime law it now makes, but it also never even raised them informally in negotiations.  Mr. DeRobertis' affidavit states that when he and Mr. Galiher were negotiating settlement of the 27 federal cases with Cleaver-Brooks, defendant's counsel never once asserted damages limitations of any kind as a reason for valuing any particular case lower.  *Id.* at ¶8.  Defendant's counsel indeed never mentioned any supposed limitations on damages at all. *Id.*

Finally, defendant makes a very strained argument about cases governed by state law. Cleaver-Brooks states that "several" of the allegedly fraudulent discovery responses relate to its historical knowledge that its products might be hazardous.  Defendant then asserts that "because Hawai'i is a strict liability state, Cleaver-Brooks' knowledge would only be relevant" to whether a plaintiff

could recover punitive damages, and if a plaintiff's asbestos exposure ended before 'the time that the allegedly withheld information showed Cleaver-Brooks knew of a hazard [,]'" then the fraudulent discovery answer would be irrelevant and could not support a claim.  This is incorrect for two independent reasons.

First, while some of the discovery misrepresentations relate to Cleaver-Brooks' historical knowledge of asbestos hazards, there are others that concern multiple other issues.  Such topics include, for example, defendant's responsibility for the Aqua-Chem and Davis Engineering product lines, and its ability to locate information about specific pieces of equipment.  These misrepresentations are relevant to every plaintiff's case.

Second, defendant's misrepresentations about its knowledge of the dangers of asbestos are in fact relevant to all cases.  While Hawai'i does of course afford a strict liability cause of action, a plaintiff is entitled to proceed on both negligence and strict liability theories at trial.  *Tabieros v. Clark Equipment Co.*, 85 Haw. 336, 354, 944 P.2d 1279, 1297 (1997).  Claims in the Benlate litigation, for example, were tried under both theories.  See *Kawamata Farms, inc. v. United Agri Products,* 86 Haw. 214, 227, 948 P.2d 1055, 1068 (1997).  The same is true for cases governed by maritime law.  *Cabasug,* supra, 989 F.Supp.2d at 1032; *Lindstrom*, supra, 424 F.3d at 492 ("Plaintiffs in products liability cases under maritime law may proceed under both negligence and strict liability principles.").  Plaintiffs would have

pursued negligence allegations at trial, and defendant's lies about what it knew about the dangers of asbestos affected the value of such claims and thus are now relevant.

In sum, there are no differences between maritime and state law that would warrant separate trials at all. Cleaver-Brooks certainly never raised any such differences at the time. And defendant's misrepresentations about its historical knowledge of asbestos hazards is relevant for all plaintiffs.

> D.   The Plaintiffs Will Be Prejudiced If Bifurcation Is Granted

Any theoretical prejudice that defendants assert can be mitigated by jury instructions and special verdict forms. In *Dowkin*, supra, this Court held that "concerns about potential prejudice to City Defendants and juror confusion may be addressed with appropriate limiting instructions during trial and special verdict forms for jurors to use during deliberations." The Court also noted that it is "almost an invariable assumption of law that jurors follow their instructions." 2011 WL 13350246 at *3-4, citing *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). As a result, "the Court finds that the potential prejudice to City Defendants is outweighed by considerations of substantially overlapping evidence, judicial economy, and convenience to the parties, witnesses, and counsel, and therefore, trifurcation is not appropriate." *Id.* Judge Mollway agreed with Judge Puglisi in finding that "trifurcation is unwarranted, and that Defendants will not be unduly prejudiced." *Dowkin*, 2011 WL 3021784, at *2. "Overall, the factors of substantially overlapping

evidence, judicial economy, and convenience to the parties, witnesses, and counsel weigh in favor of Plaintiffs." *Id.* In *Clark v. United States*, the Court found that "neither party will be unduly prejudiced by proceeding to trial on both the disclosure and affirmative defense issues simultaneously. On the other hand, preparing for two trials on these very closely related issues would be inconvenient and inefficient, thus thwarting the very purposes of bifurcation." 2010 WL 11610668, at *3.

In light of this authority, defendants will not be unduly prejudiced if these cases are not bifurcated. Rather, as Magistrate Judge Puglisi reasoned, "[t]he Court, the parties, witnesses, and counsel would all be inconvenienced by having to deal with similar pretrial case management conferences and motions, all leading up to three possibly lengthy costly jury trials." *Dowkin*, 2011 WL 13350246, at *3. In this case, defendant's plan would require 56 very similar sets of case management conferences and motions hearings, all leading up to 56 possibly lengthy and costly jury trials. Not only will plaintiffs be prejudiced, but this Court will also be needlessly overtaxed by having to prepare for and conduct 56 separate trials with substantially overlapping, and in many cases identical, issues and evidence. Any potential prejudice defendants claim can be cured with jury instructions, which jurors are presumed to follow, and/or special verdict forms.

As for plaintiffs' RICO claims, the elements are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate

acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). To prove there was a pattern of racketeering activity for the nine RICO claims, therefore, plaintiffs would need to put on the same evidence of Cleaver-Brooks' fraudulent discovery responses for all nine cases, which substantially overlaps with the remaining 48 cases.

When a claim involves evidence of a pattern of misconduct, bifurcation is not proper. In *Dowkin*, this Court noted that "trifurcation of the present case would not necessarily result in undue prejudice to City Defendants because evidence of a pattern of misconduct might still be admitted on the grounds that each Plaintiff possesses a claim against at least one individual defendant and the City." 2011 WL 13350246 at *3. Magistrate Judge Puglisi cited to *Davis v. Mason Cnty.*, 927 F.2d 1473 (9th Cir. 1991), in which four separate plaintiffs complained about four distinct incidents involving alleged excessive force by police officers. The county moved to sever each of the plaintiffs' claims, arguing that joinder would result in prejudice to the individual defendants if evidence was presented of a pattern of misconduct. *Id.* at 1479. But the Ninth Circuit upheld the district court's refusal to sever the claims, reasoning that "[e]ven if each plaintiff had a separate trial, evidence of a pattern of misconduct would still have been admitted because each plaintiff…presented a claim against at least one defendant *and* against the County." *Id.* at 1479-80

(emphasis in original).  As in *Dowkin* and *Davis*, severance in this case would not cure any potential prejudice to defendants, because at least nine plaintiffs would still have to put forth evidence of all of defendants' misrepresentations in order to establish a pattern of racketeering activity.

Defendants' cases in support of separate trials are unpersuasive.  In *Topadzhikyan v. City of Glendale*, 2011 WL 13124623 (C.D. Cal. Mar. 17, 2011), the court found that "Plaintiffs do allege a pattern and practice of discrimination, but that label belies the fact that Plaintiffs are not seeking common redress based on a uniform or singular widespread policy or practice that has been applied to all [,]" and that "[w]hile there may be some overlap in the allegations, the claims do not appear to arise out of the same series of transactions or occurrences." *Id.* at *4.  The court ultimately held that because the allegations of discrimination did not arise out of the same transactions, and because of the confusion surrounding which plaintiffs had claims against which defendants, the danger of confusion and prejudice outweighed any interest in judicial economy. *Id.*

As for *McCoy v. St. Louis Public Schools*, 2011 WL 4857931 (E.D. Mo. Oct. 13, 2011), defendants omit that the two principals alleged "different types of discrimination – McCoy alleges racial discrimination while Arbini's claim is based on his gender." *Id.* at *5.  By contrast, in this case all plaintiffs have claims of fraud against both defendants and nine plaintiffs have RICO claims against Cleaver-

Brooks.  Moreover, the conduct alleged against both defendants is based on the same series of transactions and in most cases the same fraudulent discovery responses.

V.          CONCLUSION

Defendants have not met their burden of proving that "bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." Plaintiffs thus respectfully request that this Court deny the motion for separate trials.

Respectfully submitted,


/s/Alyssa R. Segawa
L. RICHARD DeROBERTIS
ILANA K. WAXMAN
ALLISON M. AOKI
ALYSSA R. SEGAWA
Attorneys for Plaintiffs