GALIHER DeROBERTIS & WAXMAN LLP

| | |
|---|---|
| L. RICHARD DeROBERTIS | 3197 |
| ALLISON M. AOKI | 6912 |
| ALYSSA R. SEGAWA | 9798 |

(*Richard.derobertis@galiherlaw.com*)
820 Mililani Street, Suite 505
Honolulu, Hawaiʻi 96813
Telephone: (808) 597-1400
Facsimile: (808) 591-2608

WATERS & KRAUS, LLP
PETER A. KRAUS              10912
CHARLES S. SIEGEL        (*pro hac vice*)
3141 Hood Street, Suite 700
Dallas, Texas 75219
Telephone: (214) 357-6244
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAIʻI

| | |
|---|---|
| TERRY N. AGENA, Individually and as the Successor Trustee of the JAMES K. AGENA Trust, Deceased, et al., <br><br>                    Plaintiffs, <br><br>        vs. <br><br> CLEAVER-BROOKS, INC., et al., <br><br>                    Defendants. | CIVIL NO. 19-00089-DKW-RLP (Toxic Tort/Asbestos Personal Injury) <br><br> PLAINTIFFS' MEMORANDUM IN OPPOSITION TO HUSCH BLACKWELL LLP'S MOTION FOR ADDITIONAL DEPOSITIONS AND TO EXTEND THE SEVEN-HOUR LIMIT FOR TWO DEPOSITIONS and JOINDER BY CLEAVER-BROOKS; DECLARATION OF COUNSEL; EXHIBITS A THROUGH H; DECLARATION OF ALYSSA R. SEGAWA; DECLARATION OF ALLISON M. AOKI; DECLARATION OF ILANA K. WAXMAN; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE |

Hearing:
Date:      TBD
Time:      TBD.
Judge:     Honorable Wes Reber Porter
Re:        Doc #103 & #106

Trial: July 12, 2021

\\HDC101\Hawaii\Shc\Client\00006629\pleading - FEDERAL\2020-03-23 HB Mtn to Depos\Opp Memo\Opposition_CS addnotes.docx

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
HUSCH BLACKWELL LLP'S MOTION FOR ADDITIONAL DEPOSITIONS
AND TO EXTEND THE SEVEN-HOUR LIMIT FOR TWO DEPOSITIONS
<u>and JOINDER BY CLEAVER-BROOKS</u>

## Table of Contents

I.     **INTRODUCTION** ...............................................................................1

II.    **SUMMARY OF ARGUMENT**.........................................................2

III.   **THE STANDARDS FOR EXCEEDING THE PRESUMPTIVE LIMIT OF TEN DEPOSITIONS** ...............................................3

IV.   **THERE IS NO BASIS TO DEPOSE 73 NAMED PLAINTIFFS** ............6

V.    **ADDITIONAL FACTORS** ..............................................................7

VI.   **ALTERNATE METHODS OF DISCOVERY ARE AVAILABLE**.........7

VII.   **DEFENDANTS' "SHOWING" FOR 73 DEPOSITIONS DOES NOT MEET FRCP CRITERIA** ...........................................10

   A.   **Material facts** ......................................................................11

   B.   **Reliance** .............................................................................12

   C.   **Reasonableness** .................................................................13

   D.   **Causation**...........................................................................13

   E.   **Damages**.............................................................................15

VIII. **DEFENDANTS' CASES ARE DISTINGUISHABLE**............................17

IX.   **DEFENDANTS HAVE NO GOOD CAUSE TO EXCEED SEVEN-HOUR TIME LIMIT FOR THE DEPOSITIONS OF WAXMAN & DeROBERTIS** ...............................................................19

X.    **CONCLUSION** ...............................................................................24

TABLE OF AUTHORITIES

**Cases**

*Archer Daniels Midland Co. v. Aon Risk Services*,
    187 F.R.D. 578 (D. Minn. 1999)...........................................................................4, 9

*Atkinson v. Goord*,
    2009 WL 890682 (S.D.N.Y. Apr. 2, 2009)................................................ 5, 8, 10

*Barrow v. Greenville Indep. School Dist.*,
    202 F.R.D. 480 (N.D. Tex. 2001) .........................................................................7

*Brooks v. Motsenbocker Advanced Developments, Inc.*,
    2008 WL 2033712 (S.D. Cal. May 9, 2008)................................................. 23, 24

*Cardenas v. McLane Foodservices*,
    2011 WL 13133969 (C.D. Cal. Jan. 14, 2011) ....................................................18

*CXS Transportation v. Pierce*,
    2012 WL 12892733 (N.D.W.Va. May 23, 2012) ................................................18

*Fut. Trad. Comm. v. Commodity Inv. Grp.*,
    2005 WL 3030816 (S.D.N.Y. Nov. 10, 2005).......................................................5

*Galajian v. Beard*,
    2016 WL 5373116  (W.D. Wash. Sept. 26, 2016)....................................... 5, 8, 9

*In Re Weatherford Intern Securities Litigation*,
    2013 WL 5762923 (S.D.N.Y. Oct. 24, 2013) .......................................................5

*Living Designs v. E.I. DuPont*,
    431 F.3d. 353 (9th Cir. 2005)....................................................................... 11, 16

*Murray v. Southern Route Maritime*,
    2014 WL 2154259 (W.D. Wash. May 22, 2014) ...........................................5, 10

*Rutherford v. Palo Verde Healthcare District*,
    2014 WL 12631849 (C.D. Cal., Jan. 22, 2014) ..................................................23

*San Francisco Health Plan v McKesson Corp.*,
    264 F.R.D. 20 (D. Mass. 2010).........................................................................24

*Schmidt v. Fidelity National Title Insurance Co.,*
  2009 WL 303305 (D. Haw. Feb. 3, 2009) ...........................................................20

*Scott v. Sioux City,*
  298 F.R.D. 400 (N.D. Iowa 2014) .......................................................................19

*Small v. City of Wilmington,*
  2018 WL 6068057 (E.D.N.C. Nov. 19, 2018) ...................................................4, 9

*Talismanic Properties v Tipp City,*
  309 F.Supp.3d 488 (S.D. Ohio 2017) ...................................................................5

*Thykkuttathil v. Keese,*
  294 F.R.D. 601 (W.D. Wash. 2013) .................................................................5, 17

*United States v. Goertz,*
  2010 WL 2900309 (W.D. Tex. July 20, 2010) ......................................................5

## Other Authorities

Advisory Committee Note to the 2015 ......................................................................6

Advisory Committee Notes to the 1993 Amendment to Rule 30 .............................6

## Rules

FRCP 26(b)(1) ................................................................................................ 1, 4, 7, 9

FRCP Rule 30(a)(2)(A)(i) ....................................................................................4, 6

## I.   INTRODUCTION

Defendants seek to take 80 depositions in this action, in addition to plaintiffs' experts.  The principal dispute is Defendants' asserted need to depose all 73 named plaintiffs. It may sound superficially appropriate to depose 73 plaintiffs.  But 73 plaintiffs will not testify at trial. In this unusual case, with plaintiffs' election to affirm each settlement and the fact that not one named plaintiff (1) read Cleaver-Brooks' false discovery (2) knew of Cleaver-Brooks' false discovery or (3) negotiated the Cleaver-Brooks settlement, 73 depositions are unwarranted and disproportionate, and  will not reveal anything discoverable in this action for fraudulently-induced contracts.

The bulk of this opposition will explain why the request to depose 73 plaintiffs is grossly disproportionate to any pretense of relevance, and not allowed under the new FRCP 26(b)(1). The remainder of defendants' request can be dealt with summarily.

1.   Warren K. Dote (who signed the Dote release) is dead. (Exhibit A)

2.   Nancy Agodong (the widow of Antonio Agodong) has Alzheimer's disease. That is why her daughter, Carlene, is listed as her Power of Attorney on the Second Amended Complaint.  (Exhibit B)

3.   Expert Andrew Ott cannot be deposed for his opinions in the four underlying cases for three reasons: (i) Defendants do not get to reopen the merits of

the underlying cases, (ii) Cleaver-Brooks actually deposed Andrew Ott in all four underlying cases, (Exhibits C, D, & E) and (iii) Ott is not and will not be an expert in THIS case.

4.    Plaintiffs agree that defendants can depose Richard DeRobertis and Ilana Waxman.  However, there is no basis to depose attorneys Aoki or Segawa. Defendants falsely state that Aoki and Segawa had "central roles" in the underlying cases. (Dkt # 103-1, p.24.) But Aoki only worked on one of the 56 cases, *Cabasug*, and that was to oppose a motion by defendant Aurora Pumps.   She had nothing to do with Cleaver-Brooks. Segawa only worked on two of the 56 cases, *Cabasug* and *Kaneshiro*, and she was just finishing her second year from graduating law school and was not involved in the settlement negotiations.  See Declarations of Aoki and Segawa.

## II.   SUMMARY OF ARGUMENT

Plaintiffs have listed DeRobertis and Waxman as witnesses.  Defendants have stated they wish to take a Rule 30(b)(6) deposition of the Galiher law firm.  This totals three.  Plaintiffs anticipate having three expert witnesses: two on damages, one on the standard of practice.  This totals six (and if plaintiffs retain additional experts, they will of course be deposed as well). Plaintiffs listed certain employees or ex-employees of Cleaver-Brooks and the Whyte law firm as potential witnesses. Defendants have easy access to these employee-witnesses without taking their

depositions.  Interviewing their employees is an alternative to taking a deposition. If the experts are not counted in the presumptive limit of ten, then Defendants have seven depositions to "fish" for tangential evidence.

Exhibit F is a chart showing the 73 named plaintiffs, that reveals that just 54 of the 73 signed the underlying releases. There is no relevance to deposing 18 Personal Representatives who were not involved in the underlying cases.  As for the 54 Plaintiffs who signed releases, they are not percipient witnesses. They neither read Cleaver-Brooks' fraudulent discovery of their settlements, nor attended the federal mediation. They relied upon their counsel.  Defendants can establish all this by **simple interrogatories** or **requests for admissions**.  The unremarkable fact that all 54 releasee-plaintiffs relied upon the advice of counsel to settle can also be established by less burdensome methods than taking 54 or more depositions. (For example, interrogatories and depositions of Richard DeRobertis and the Galiher law firm can establish the unremarkable proposition that lay plaintiffs did not read the false discovery answers and relied upon their attorneys to negotiate these settlements for them.)

## III.    THE STANDARDS FOR EXCEEDING THE PRESUMPTIVE LIMIT OF TEN DEPOSITIONS

In order to take more than the presumptive 10 depositions allowed by FRCP, defendants must make a "particularized showing" of the need.  The mere fact that a witness may have potential information is not enough to justify exceeding the

presumptive ten limit.  Defendants must resort to less costly methods of discovery, rather than indiscriminately taking scores of depositions.

FRCP Rule 30(a)(2)(A)(i)'s presumptive limit of ten depositions is to be read in conjunction with Rule 26(b)(1) and its proportionality standard.  Rule 26(b)(1) states as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, concerning the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The case law is unanimous that the burden is on the party seeking to exceed the presumptive limit of ten and that party must make a "particularized showing" of the need. *Archer Daniels Midland Co. v. Aon Risk Services*, 187 F.R.D. 578, 586 (D. Minn. 1999) ("a party seeking leave to take more depositions … must make a particularized showing of why the discovery is necessary.") (citation omitted); *Small v. City of Wilmington*, 2018 WL 6068057, *1 (E.D.N.C. Nov. 19, 2018) ("the burden of persuading the court that additional depositions are necessary rests with the party seeking to take added depositions. That more than the allotted number of individuals may have discoverable information in a case does not signify that additional depositions are required.  Instead, the moving party must make a particularized showing why extra depositions are necessary."); *Murray v. Southern Route*

*Maritime*, 2014 WL 2154259, *2 (W.D. Wash. May 22, 2014) ("[T]he party seeking to exceed the limit has the burden of making a particularized showing of the need for each additional deposition."); *Galajian v. Beard*, 2016 WL 5373116, *2 (W.D. Wash. Sept. 26, 2016) ("a party seeking to exceed the presumptive limit bears the burden of making a particularized showing of the need for additional depositions."), quoting *Thykkuttathil v. Keese,* 294 F.R.D. 601, 603 (W.D. Wash. 2013). It is uniformly held that even if a proposed deponent may have relevant information that is not in itself enough reason to exceed the presumptive limit of ten. *Talismanic Properties v Tipp City,* 309 F.Supp.3d 488, 497 (S.D. Ohio 2017) ("Plaintiff's motion requested leave merely because the City had identified more than ten individuals who may possess potentially discoverable information. However, 'the mere fact that more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense.'"), quoting *United States v. Goertz,* 2010 WL 2900309, *1 (W.D. Tex. July 20, 2010); *In Re Weatherford Intern Securities Litigation*, 2013 WL 5762923, *2 (S.D.N.Y. Oct. 24, 2013) ("but even if "a witness might have discoverable information, a party is not always entitled to depose that individual.'") quoting commodity *Fut. Trad. Comm. v. Commodity Inv. Grp.,* 2005 WL 3030816, *1 (S.D.N.Y. Nov. 10, 2005); *Atkinson v. Goord*, 2009 WL 890682, *3 (S.D.N.Y. Apr. 2, 2009) ("If a party were entitled to

depose all the witnesses to a relevant event … Rule 30(a)(2)(A) would quickly become a dead letter.")

## IV. THERE IS NO BASIS TO DEPOSE 73 NAMED PLAINTIFFS

FRCP 30(a)(2)(A)(i) limits the number of depositions to be taken by defendants to ten. The Advisory Committee Note to the 2015 amendment states that Rule 30 was "amended in parallel with Rules 31 and 33 to reflect the recognition of proportionality in Rule 26(b)(1)."

The Notes to the 1993 Amendment state that the ten-deposition ruling is new and provides:

> One aim of this revision is to assure **judicial review under the standards stated in Rule 26(b)(2)** before any side will be allowed to take more than ten depositions in a case without agreement of the other parties. A second objective is to emphasize that counsel have a professional obligation to develop a mutual **cost-effective plan for discovery** in the case. [emphasis added]

Thus, defendants bear the burden of proving proportionality for each of the depositions they seek over the presumptive limit of ten. Defendants claim it is critical to depose all 73 named plaintiffs. But their reasons do not hold up. Attached as Exhibit F is a chart of all 73 named plaintiffs juxtaposed with the people who actually signed the Cleaver-Brooks release. This shows that only 54 of the 73 named plaintiffs signed the underlying releases. The remainder are merely Representatives of Estates of deceased plaintiffs. Even these 54 have no actual knowledge of the fraud at issue. They did not read, let alone rely upon, Cleaver-Brooks' fraudulent

interrogatory answers, perjurious deposition testimony, or incomplete document productions. They did not negotiate the settlements and did not attend the federal mediation which settled 27 of these 56 underlying matters. Plaintiffs' counsel have no intention of having 54, let alone 73, different people testify at trial.

## V.    ADDITIONAL FACTORS

The foregoing is enough to categorically reject Defendants' request for 73 depositions. There are still additional factors, however. Some of the "releasees" are 86 to 95 years old. Also, in 14 of the 56 underlying settlements, the underlying settlement was for a four-digit number. There are 20 named plaintiffs in those 14 settlements. (Declaration of Counsel paragraphs 10 & 11.) Even increasing the settlement value by 5-fold (or more) in those 14 settlements would still show that taking 20 depositions over the presumptive limit would violate the proportionality requirement of FRCP 26(b)(1). In any event, again, Defendants cannot reopen the merits. None of the 73 Plaintiffs read or relied upon Cleaver-Brooks' fraudulent discovery.

## VI.   ALTERNATE METHODS OF DISCOVERY ARE AVAILABLE

Seeking to depose 73 plaintiffs is a grossly inefficient and costly method of discovery. As such, it is precisely the type of wasteful discovery Rule 30(a)(2) was intended to prevent. *Barrow v. Greenville Indep. School Dist.*, 202 F.R.D. 480, 483 (N.D. Tex. 2001) ("Rule 30(a)(2)(A) is intended to control discovery, with its

attendant costs and potential for delay, by establishing a default limit on the number of depositions.").

The caselaw holds that the mandate to conform to Rule 26(b) factors requires a court to deny any request to exceed ten depositions when alternative methods of discovery are available. As the court held in *Atkinson, supra:*

> The factors relevant to determining whether a party should be entitled to more than 10 depositions are now set forth in Fed.R.Civ.P. 26(b)(2)(C) and include whether (1) "the discovery sought is unreasonably cumulative or duplicative or **can be obtained from some other source that is more convenient, less burdensome, or less expensive**," (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," and (3) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." [emphasis added]

2009 WL 890682 at *1.

And ss the District of Minnesota held in *Archer Daniels:*

> Although Aon has identified 47 proposed deponents, and has broadly stated the supposed relevance of their testimony, it has made no showing that each of the deponents is essential to its discovery, and it is not merely a replication of discovery that could be best accomplished with the number of deponents we previously allocated. *At a minimum, Aon should appropriately exhaust its current quota of depositions, in order to make an informed request for an opportunity to depose more witnesses, before seeking leave to depose a legion of others.*

187 F.R.D at 587 (emphasis added).

In *Galajian*, *supra*, the district court held in denying the request to exceed ten depositions that: "Mr. Galajian makes no showing why less expensive and less

8

burdensome means of discovery are unavailable or insufficient." 2016 WL 5973116 at *3. *See also, Small, supra,* 2018 WL 6068057 at *3 ("Small [may] obtain individualized discovery by other, less onerous means – document requests, interrogatories, requests for admission, stipulations, or affidavits – from the witnesses identified in Defendants' initial disclosures.")

Defendants of course have not taken any depositions in this case and they dispute the proper scope of discovery. Many courts will not grant leave to take more than the presumptive limit of ten *unless the party has already taken the first ten and shown that the ten depositions actually taken did indeed reveal relevant information. See*, *Archer Daniels, supra*, 187 F.R.D. at 587; *Galajian, supra*, 2016 WL 5373116 at *2 ("To make such a [particularized] showing, a party must show not only that the additional depositions are warranted, but also that the depositions the party has already taken were warranted. Furthermore, a party should ordinarily exhaust its allocated number of depositions before making a request for additional.") The *Galajian* court further explained: "Allowing additional depositions without analyzing the need for the first ten deposition would reward a party for taking superfluous depositions early in the course of discovery. [citation to FRCP 30 and 26(b)] This result would not be consistent with Rule 26(b)(1), which applies a proportionality limitation on the scope of discovery." *Id*. at n. 3.

## VII.   DEFENDANTS' "SHOWING" FOR 73 DEPOSITIONS DOES NOT MEET FRCP CRITERIA

The caselaw is clear that a defendant cannot make the particularized showing by mere generalities. As stated in *Murray*, *supra,* 2014 WL 2154259 at *2:

> Defendants have not made much of a showing regarding their need to depose any of the witnesses discussed in their motion.  They do little more than identify the contours of the witnesses' potential testimony and argue that they must be permitted to depose anyone plaintiffs may call at trial in order to avoid surprise. If such a generalized need-to-avoid-surprise rationale were sufficient, the limitation on the number of depositions imposed by the rules would be essentially meaningless.

As stated in *Atkinson*, *supra* 2009 WL 890682 at *3:

> Rule 30(a)(2)(A) places a burden on him to demonstrate that there is at least reason to believe that additional witnesses will shed new light on this case and that showing requires more than generalizations that are true in all cases.

Defendants purport to give many reasons for the need to depose 73 named plaintiffs, but none of them hold up to any scrutiny when considering the nature of this case and how reliance will be proved, not to mention the actual way the underlying 56 settlements were negotiated and who relied on the fraudulent statements. And Defendants completely ignore the fact that 26 of the underlying 27 federal settlements occurred with a discovery stay order in place. All 27, including *Cabasug*, were resolved in a mediation in which no plaintiff participated.

To read defendant's motion, one would think that it is the non-lawyer/lay party who must prove his case at trial. Of course, it is the plaintiff's **attorney** who

10

must prove the case **on behalf** of the individual lay/non-lawyer plaintiff. Defendants' purported reasons for their particularized showing are on pp. 8-11 of Husch Blackwell's motion. (Dkt. 103-1, p. 13-16.)

### A.   Material facts

Defendants claim that "material facts" for each plaintiff "will be unique to that plaintiff and the individual testimony of each plaintiff is therefore necessary." (Dkt #103-1, p.14.)  This is a gross non sequitur.  No plaintiff read Cleaver-Brooks' fraudulent discovery. The evidence that Cleaver-Brooks lied about its documents, lied about its sales, lied about its early knowledge of asbestos hazards is all material. But this will not be proven by 73 lay witnesses, even if they are named plaintiffs.

Defendants seek to obscure this obvious fact by speculation and hypotheticals. Defendants say: "Each plaintiff may also have had personal circumstances influencing their settlement decisions, separate and apart from any alleged misrepresentation." (*Id*.)

This is not only rampant speculation; it is completely irrelevant and a non sequitur.  The damages in this action are what "the trier-of-fact determines 'the probable amount of settlement in absence of fraud after considering all known or foreseeable facts and circumstances affecting *the value of the claim on the date of the settlement*.'"  *Living Designs v. E.I. DuPont*, 431 F.3d. 353, 367-8 (9th Cir. 2005) (emphasis added).

These known or reasonably foreseeable facts are those known and foreseeable "on the date of the settlement."  For example, a plaintiff alive but dying of mesothelioma knows that it is foreseeable that he will die in the next few months. Thus, it is foreseeable that such a plaintiff may wish to get his settlement now and end his case while he is alive. Everyone knew that on the date of the settlement. Defendants pretend that some plaintiffs may have had some unknown-to-Cleaver-Brooks financial hardship that was putting pressure on an individual plaintiff to settle then at any price.  Since Cleaver-Brooks was one of ten or more settling defendants, this speculation of financial hardship does not conform to reality.  On July 31, 2018, Plaintiffs' counsel provided Cleaver-Brooks counsel with the gross, total settlements in all 56 cases (Exhibit H), proving no financial hardship to any plaintiff.

This "other motivation" argument is also illogical and irrelevant to plaintiffs' damages claims. If Cleaver-Brooks had not lied, then Plaintiffs' counsel would have had more leverage to negotiate higher settlement amounts no matter what the individual circumstance of any plaintiff.

**B.    Reliance**

Again, each plaintiff will not prove his or her individual reliance on Cleaver-Brooks' fraud. No plaintiff even read Cleaver-Brooks' fraudulent discovery answers. No plaintiff was involved in negotiations with Cleaver-Brooks.  Thus, defendants' statement that plaintiffs' allegations "put at issue what each individual

plaintiff thought and understood regarding the purported representations" [Dkt #103-1, p.14] is counterfactual.  No individual plaintiff understood anything about Cleaver-Brooks' fraud.

### C.    Reasonableness

Defendants make another non sequitur.  They first state how plaintiffs' *attorneys* had argued to the courts that Cleaver-Brooks' discovery responses were not to be trusted.  (Dkt. 103-1, p.14.) Then defendants jump to the *individual plaintiffs* and perfunctorily state that: "the reasonableness of each plaintiff's decision to settle is thus also at issue – and can only be ascertained by learning through a deposition of each plaintiff what each plaintiff knew at the time each plaintiff agreed to settle their individual lawsuit." (*Id*. at 14-15) This is just another recast of defendants' same illogical argument.  It was plaintiffs' *counsel* who relied on defendant's fraudulent discovery.  Thus, the question is whether plaintiffs' counsel had reasonable reliance — that is, was plaintiffs' counsel entitled to reasonably rely upon sworn statements under oath and statements made by officers of the court.

### D.    Causation

Defendants rehash their same arguments to argue that they supposedly need to depose 73 plaintiffs on "causation."  They start their argument with the axiom: "the decision 'whether to settle a civil matter must be made by the client'." (Dkt #103-1, p. 15.)  There is no dispute that the individual clients signed all 56 Cleaver-

Brooks releases, and each release stated the exact amount of the settlement.  (See Dkt #34-5, Exhibit 2 to Cleaver-Brooks' Motion to Dismiss.)  Therefore, defendants cannot pretend that these 56 settlements were entered by counsel without the individual client's consent.

Defendants continue with the same non sequitur argument that each client's individual *motivation* to settle is relevant to plaintiffs' counsel's reliance upon Cleaver-Brooks' fraudulent discovery.  All defendants state for this argument is as follows:

> Thus, even though plaintiffs claim reliance only by their counsel, they still had to affirmatively weigh their options and decide to settle, and Husch Blackwell is allowed to *investigate these reasons for each individual plaintiff.*  Moreover, settlements are rarely based solely on documents or testimony from a single party; there must be plaintiff-specific reasons (such as *personal issues, money needs, or credibility issues*) that led each plaintiff to choose to settle. Husch Blackwell needs to question each plaintiff regarding these reasons; reasons that underly the causation element of each plaintiff's fraudulent inducement claim. [emphasis added]

Dkt #103-1, p. 15.

This is all specious reasoning. If there were "personal issues … that led each plaintiff to choose to settle," then Cleaver-Brooks should have sought to discover those personal issues *before* Cleaver-Brooks settled each of the underlying 56 matters. As described in Plaintiffs' Motion to Define the Scope of Discovery, there was a "discovery stay order" in 26 of the 27 federal cases which Cleaver-Brooks never sought to lift.  (Dkt # 104-1, pp.7-8.)  Defendant's argument is simply a

14

subterfuge to reopen discovery in the underlying 56 cases to look (i.e., fish) for weaknesses in the 56 cases, to then argue for lower settlement values. This is not allowed. Lastly, Defendants' speculation of "money needs" is bogus. Cleaver-Brooks has known the gross settlements in all cases since July 2018. (Exh H.)

### E.    Damages

Defendants again start this argument with a nod to the correct law: "Plaintiff cannot relitigate the merits of their claims." (Dkt #103-1, p. 16.)  Then, Defendants ignore **that this also applies to them,** and Defendants pretend that they may re-open discovery into the merits of each of the 56 underlying settlements.  Defendants state:

> Plaintiffs' testimony regarding asbestos-exposure, work history, asbestos-related disease, exposure to Cleaver-Brooks' products, exposure to other former defendants' products, the settlement amount with Cleaver-Brooks, the settlement amounts with other defendants, and the lost wages is therefore critical to each plaintiffs' claims -- and will be unique to each plaintiff.

Dkt. #103-1, p. 16.

What defendants brazenly ignore is that the "asbestos-related disease" (i.e., mesothelioma, lung cancer, non-malignant lung disease), "work history" (where each plaintiff worked such as PHNSY, active duty U.S. Navy, or otherwise), plaintiff's "exposure to Cleaver-Brooks' products", "the settlement amount with Cleaver-Brooks", and "the lost wages" (if any) (expert economist reports) of each plaintiff **were all previously provided to Cleaver-Brooks when each of the 56 settlements were agreed to.**  These facts are frozen in time.  These facts were

established by the discovery, the interrogatory answers, the depositions of plaintiffs,

co-workers and experts *that Cleaver-Brooks chose to take before settling*, the expert

reports produced, the initial disclosures of plaintiffs, and the medical records of each

plaintiff. All this is what Cleaver-Brooks based its 56 settlements with 56 individual

plaintiffs.

This works both ways.  For example, if a plaintiff who had a non-malignant

asbestos lung disease settled for X amount, and ten years later that lung disease

became life-threatening or transformed into malignant mesothelioma, that plaintiff

cannot claim a higher settlement value because his disease got worse ten years after

the settlement with Cleaver-Brooks.  As exhaustively discussed in Plaintiffs' Motion

to Define the Scope of Discovery, the facts of each of the underlying settlements are

frozen as of the date of the settlement.  If the law changed in the plaintiffs' or

defendants' favor, that does not matter.   If defendants chose not to take the

depositions of an expert or of a plaintiff, or if the defendants chose (as they did) *not*

to lift the discovery stay for the 26 federal cases and settle in mediation, those are all

decisions that all parties to this lawsuit are stuck with. It has been proven that

Cleaver-Brooks lied and committed perjury in its discovery answers and misled

Plaintiffs' counsel in the negotiations.  Plaintiffs will prove damages by expert

witnesses as allowed by the case law. *See Living Designs v. E.I. DuPont*, 431 F.3d

353, 368 (9th Cir. 2005) ("The use of probability analysis, for example, in calculating settlement values is not uncommon.")

In sum, all five reasons that Defendants give for deposing 73 named plaintiffs are specious. They cannot reopen the merits; they cannot seek to find weaknesses that they chose not to look for when they settled years ago. Clearly, Cleaver-Brooks thought that these 56 cases had merit because they offered and paid money to settle these cases. *See*, *Living Designs v. E.I. DuPont*, *supra* 431 F.3d at 367 ("Whether a good cause of action existed at the time of the settlement was a material fact that the parties already considered in reaching a settlement.").

## VIII.  DEFENDANTS' CASES ARE DISTINGUISHABLE

*Thykkuttathil v. Keese*, 294 F.R.D. 601 (W.D. Wash. 2013) is readily distinguishable. In that case, the defendant sought to allow a mere seven additional depositions and the plaintiffs did **not** object to this. *Id*. at 602. Moreover, the plaintiff had "disclosed an excess of thirty potential lay witnesses." *Id*. at 603.

In contrast, the only witnesses the instant plaintiffs have disclosed are DeRobertis and Waxman, and members of Cleaver-Brooks and Cleaver-Brooks' national counsel, who were the ones who provided the fraudulent discovery. The 73 plaintiffs herein are not witnesses and have no knowledge of the fraud. They are merely the victims of fraud. They are NOT claiming emotional distress or personal injuries.

17

*CXS Transportation v. Pierce*, 2012 WL 12892733 (N.D.W.Va. May 23, 2012) is distinguishable.  In that case, an asbestos defendant sued a plaintiff law firm and the plaintiffs' expert for filing "fabricated" asbestosis claims against CXS. (Essentially the law firm pretended certain claimants had asbestos-related diseases when they did not.) It was alleged that this fraudulent scheme "took place over a span of ten years." *Id.* at *9.  So, the defrauded company wanted to depose all key fact witnesses "who admitted knowledge of the alleged fraud."  *Id.* at *8.

In contrast, the 73 instant plaintiffs do not have knowledge of the fraud.  No one alleges the 73 plaintiffs did anything improper.  None of the 73 negotiated the settlements, none participated in the federal mediation, none read or relied upon Cleaver-Brooks' fraudulent discovery.

*Cardenas v. McLane Foodservices*, 2011 WL 13133969 (C.D. Cal. Jan. 14, 2011) is a short one-and-a-half-page opinion.  Forty depositions were allowed. However, the 40 individual truck drivers were representatives of hundreds of other aggrieved employees in a quasi-class action lawsuit for denial of meal and rest periods and wages under the California Private Attorneys General Act.  Again, these 40 truck driver plaintiffs would have *direct personal* knowledge of the violations that were alleged. Indeed, those violations needed to be proven by their testimony.

In contrast, the 73 named plaintiffs have no direct, personal knowledge of the wrongdoing by Cleaver-Brooks and Husch Blackwell.  The 73 never read, let alone

relied upon, the fraudulent discovery. No personal injuries are alleged herein due to the fraud.  The plaintiffs herein relied on the Galiher Firm to negotiate the settlements. The Galiher firm relied upon Cleaver-Brooks to honestly answer interrogatories and give truthful depositions.  The Galiher lawyers also relied upon Cleaver-Brooks' defense law firm to act ethically.

In *Scott v. Sioux City*, 298 F.R.D. 400 (N.D. Iowa 2014), the plaintiff wished to take an additional 11 depositions in a case alleging sexual harassment and retaliation going back 14 years.  However, "each of the proposed deponents has been identified by the City as having potentially relevant information …" *Id*. at 402. Thus, that was a simple showing to make and none of the deponents were parties, thus no other alternative discovery could be served on them.

Again, none of the 73 herein have any relevant information. None have been identified by plaintiffs' counsel as having potentially relevant information.

## IX.   DEFENDANTS HAVE NO GOOD CAUSE TO EXCEED SEVEN-HOUR TIME LIMIT FOR THE DEPOSITIONS OF WAXMAN & DeROBERTIS

Defendants perfunctorily state that they need over seven hours to depose Ilana Waxman and Richard DeRobertis.  They do not state how many hours they need and have not shown why they could not obtain all the information they need within seven hours.  This is especially true since defendants are anticipated to take a "second bite" via a Rule 30(b)(6) deposition of the Galiher DeRobertis & Waxman law firm.

The standards for exceeding the seven-hour time limit were set forth by this

Court in *Schmidt v. Fidelity National Title Insurance Co.*, 2009 WL 303305 (D.

Haw. Feb. 3, 2009), in which it was held:

> The presumptive limit for a duration of a deposition is one day of seven hours. See Rule 30(d)(1).  If a party seeks to exceed the presumptive limit, he "is expected to show good cause to justify such an order." Fed.R.Civ.P. 30(d) Advisory Committee's Note (2000 Amendment). "The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, and other person or any other circumstance impedes or delays the examination." Rule 30(d)(1). Examples that parties or the courts may consider in determining whether an extension of time is warranted include: a deponent who needs an interpreter; an examination that will cover events occurring over a long period of time; a deponent that reads documents during the deposition because he failed to review them in advance; a deposition that revealed documents which were not produced and warrant further deposition after production; the need for multiple parties to question a deponent. See Fed.R.Civ.P. 30(d) Advisory Committee's Note (2000 Amendment).
>
> The factors in Rule 26(b)(2) that this Court must consider are
>
> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.
>
> FRCP 26(b)(2)(C).

*Schmidt, supra*, at *4.

As explained in the attached Declaration of Ilana K. Waxman, she was a brand-new associate who started work at the Galiher law firm on approximately January 1, 2007. She did not become a named partner until December 2014. (Waxman Declaration)

All of the state court settlements occurred between 2007 through 2011 (with the exception of Kaneshiro). (See Chart of Hawai'i State Court and Federal Court settlements, attached as Exhibit G.) It is obvious that a young, associate attorney who joined the firm out of law school in 2007 was not involved in settlement negotiations or advising clients to settle. (Waxman Declaration)

The 27 federal cases all settled in the November 2014 and the first week of February 2015. But as explained in the Waxman Declaration, Waxman was not involved in the settlement negotiations for these 27 cases. It is true that Waxman, as an attorney, was involved in discovery issues with Cleaver-Brooks and took the Rule 30(b)(6) deposition on February 9, 2009. Accordingly, Plaintiffs concede that defendant may seek a deposition of Ms. Waxman on these "discovery" issues. However, there is no reason that this should take over seven hours.

Defendants do not state how many hours they wish to exceed the presumptive seven-hour limit. They talk in generalities: "extend the depositions to allow reasonable questioning of each lawyer about each settlement." (Dkt #103-1, p. 27.)

21

Given Defendants' position, they probably want 56 hours, one hour for each of the 56 cases. This is highly unreasonable for many reasons:

1. Plaintiffs will be using 1 or 2 experts for their damages calculations.

2. The merits and the "base-line" settlement value for each of the 56 cases was established by the arms-length negotiations and final agreements in each of the 56 settlements reached with Cleaver-Brooks. The only additional factor is the discovery fraud, which would have increased these base-line settlements.

3. Defendants will take a Rule 30(b)(6) deposition of the Galiher firm. Richard DeRobertis is the obvious designee and therefore, defendants will already be having 14 hours of the deposition testimony of DeRobertis.

4. The basis for each of the 56 settlements was established at the time of each settlement by all the documents and discovery produced in each of the cases by Plaintiffs and produced (or not) by Cleaver-Brooks. It is ludicrous for Defendants to claim that they need to question DeRobertis about these documents, given that the base-line value was already established with the underlying settlement agreements. They do not get to try to lower the base line settlements.

5. The 27 federal settlements were resolved in one ongoing mediation before C. J. Moon, resulting in 22 settlements in November 2014 and the last five

22

on February 6, 2015. (See Exhibits 2 and 3 to Plaintiffs Opposition Memorandum to 56 Separate Trials [Dkt 114-3 & 114-4].) That does not justify 27 hours of deposition testimony on these settlements.

Defendants cite *Rutherford v. Palo Verde Healthcare District*, 2014 WL 12631849 (C.D. Cal., Jan. 22, 2014)). But in *Rutherford*, the time limit was extended to only an additional five hours. It was not an open extension, as defendants seek here.

In *Brooks v. Motsenbocker Advanced Developments, Inc.,* 2008 WL 2033712 (S.D. Cal. May 9, 2008), the court denied plaintiff's motion to exceed the seven-hour time limit, even though there was an eight-year historical time period to cover and extensive documents had apparently been produced. The court did allow an additional 3.5 hours if, but only if, the plaintiff could not ask all appropriate questions within the presumptive seven hours. As the *Brooks* court held:

> Plaintiffs submit that the eight-year period is a long period of time to cover in 7 hours of deposition testimony. They also anticipate the examination will reveal that certain documents requested have not been produced. While all these factors may amount to good cause, the Court finds Plaintiffs' request premature. While there is no complete record before the Court at this time (because the deposition has not yet started), the Court makes these preliminary findings: (1) Eight years is not a period of time so long as to – on its own -- warrant an extended period of questioning; and (2) defendants represent that they have produced relevant discovery in this matter.

> The Court, therefore, denies without prejudice Plaintiffs' motion to extend time to take Greg Motsenbocker's deposition. If the issue should arise at the end of the first day of deposition that Plaintiffs need

more time to depose Greg Motsenbocker, the parties shall come to a mutual agreement about how to extend the length of the deposition. … The deposition shall [then] continue in light of these Court-ordered parameters: (1) the deposition shall occur on the following business day so as to save the parties time and expense and (2) in no event shall a lengthened deposition last for any more than an additional 3.5 hours or for a total deposition of 10.5 hours.

*Id*. at *3.

## X.    CONCLUSION

Based on the foregoing, plaintiffs respectfully request the court to deny defendants' motion to exceed ten oral depositions. While some courts require the party taking over ten depositions to pay the fees and costs of the excess depositions to the other party, e.g., *San Francisco Health Plan v McKesson Corp*., 264 F.R.D. 20, 21 (D. Mass. 2010), the 73 depositions are not warranted here. Also, plaintiffs request this court to deny the motion to exceed the seven-hour limit for the depositions of Ilana Waxman and of Richard DeRobertis.

Respectfully submitted,

/s/L. Richard DeRobertis
L. RICHARD DeROBERTIS
ALLISON M. AOKI
ALYSSA R. SEGAWA
Attorneys for Plaintiffs