IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TERRY N. AGENA, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> CLEAVER-BROOKS, INC., *et al.*, <br><br> Defendants. | Case No. 19-cv-00089-DKW-RT <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DETERMINE THE LEGAL STANDARD FOR THE MEASUREMENT OF FRAUD DAMAGES** |

The former asbestos Plaintiffs joined in this action allege Defendants intentionally withheld pertinent discovery to fraudulently induce Plaintiffs to settle in their prior asbestos litigation. Plaintiffs do not wish to rescind their settlements; they seek damages for being induced to settle for less than they would have if they had known the truth. Before the Court is Plaintiffs' rather unusual "Motion to Determine the Legal Standard for the Measurement of Fraud Damages," Dkt. No. 152, in which Plaintiffs ask the Court not only to "determine the legal standard for the measurement of fraud damages," which the parties largely agree on, but the "evidence that the trier-of-fact must consider for fraud damages." *Id.* at 2.

For the reasons set forth and more fully explained below, the evidence relevant to Plaintiffs' fraud damages is the "known or foreseeable facts" *that existed* "on the date of settlement," regardless of whether the facts were disclosed to the

opposing party. Accordingly, Plaintiffs' motion, Dkt. No. 152, is GRANTED IN PART and DENIED IN PART.

## FACTUAL & PROCEDURAL BACKGROUND

Because the parties are familiar with the facts of this lawsuit and the Court has previously summarized the facts alleged in the operative third amended complaint,[1] the Court recounts only the following facts relevant to Plaintiffs' motion.

The 73 individual Plaintiffs joined in this action (consisting of former asbestos plaintiffs or representatives of former asbestos plaintiffs) settled their respective lawsuit against Defendant Cleaver-Brooks, Inc., resulting in 56 separate settlement agreements executed in either state or federal court between 2007 and 2015. Dkt. No. 128, ¶¶ 1–56, 78–79, 82–86, 91, 93, 96. Plaintiffs in this action now seek damages for fraudulent inducement of their respective settlement. *See id.*

Plaintiffs theory of liability is that Cleaver-Brooks and its nationwide coordinating counsel, Husch Blackwell LLP (formerly Whyte Hirschboeck Dudeck), concealed adverse information during discovery in each of the 56 underlying actions in order to induce Plaintiffs, "through their counsel," to settle for less than they would have if Cleaver-Brooks had produced the discovery it was supposed to. *See id.* at ¶¶ 58, 78–79, 82–86, 91, 93, 96, 147, 155, 171.[2] In broad

---

[1] *Agena v. Cleaver-Brooks, Inc.*, No. 19-CV-00089, 2020 WL 3052204, at *1 (D. Haw. June 8, 2020); *see also* Dkt. No. 71.

[2] It is undisputed that in this case Plaintiffs are represented by the same firm (Galiher DeRobertis

- 2 -

terms, Plaintiffs claim that during discovery Cleaver-Brooks: (1) was asked "to identify all asbestos-containing products that Cleaver-Brooks ever sold" and Cleaver-Brooks responded by identifying only its boilers (but Cleaver-Brooks knew it had previously sold asbestos-containing Aqua-Chem distillers and Davis Engineering heat exchangers), *see id.* at ¶¶ 97–106; (2) stated that documents related to Aqua-Chem and Davis equipment on specific ships were virtually "inaccessible" (but they were not), *see id.* at ¶¶ 107–115; (3); represented that it had no information regarding asbestos hazard warnings or MSDS sheets when it stopped selling asbestos, or its reasons for stopping (but Cleaver-Brooks had that information in the 1980s and 1990s), *see id.* at ¶¶ 116–129; and (4) stated that it had never had an asbestos-related workers' compensation claim or been sued by an employee for an asbestos-related disease (but it had), *id.* at ¶¶ 130–39.

Plaintiffs assert three causes of action: (1) fraudulent inducement; (2) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. § 1961 *et seq.*; and (3) violation of Hawaii's anti-racketeering statute, Haw. Rev. Stat. § 842-2 (Hawaii RICO). Dkt. No. 128, ¶¶ 99, 103, 111.

## RELEVANT LEGAL PRINCIPLES

The statement of the law that applies to Plaintiffs' Motion to Determine the

---

& Waxman LLP) and some of the same attorneys that represented Plaintiffs in the underlying asbestos actions. *See Agena v. Cleaver-Brooks, Inc.*, 428 F. Supp. 3d 267, 271 (D. Haw. 2019).

Legal Standard for the Measurement of Fraud Damages, Dkt. No. 152, was set forth most recently by the Hawaii Supreme Court in *Exotics Hawaii-Kona, Inc. v. E. I. du Pont de Nemours & Co.*, 172 P.3d 1021 (Haw. 2007). Similar to the instant action, *Exotics* involved claims that Dupont had fraudulently withheld discovery to induce plaintiffs to settle their underlying product liability claims arising from an agricultural fungicide that allegedly damaged plaintiffs' plants and nurseries. *See Exotics*, 172 P.3d at 1026.

The court held in *Exotics* that, where the claim is fraudulent inducement of a settlement agreement,[3] the measure of a plaintiff's damages is "the probable amount of settlement in the absence of fraud after considering *all known or foreseeable facts and circumstances affecting the value of the claim on the date of settlement*," minus "the amount in settlement already received." *Exotics*, 172 P.3d at 1038, 1042 (emphasis added; citation and internal quotation marks omitted); *accord Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 368 (9th Cir. 2005). That is, a plaintiff's damages "would be the difference between the fair settlement value absent fraud and the amount of the plaintiffs' actual settlement." *Exotics*, 172 P.3d at 1045. In this calculation, "[t]he critical consideration is the settlement value

---

[3] A claim for fraudulent inducement requires a plaintiff to prove the following: "(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to his or her damage." *Exotics*, 172 P.3d at 1042 (emphasis omitted) (quoting *Matsuura v. E.I. du Pont de Nemours & Co.*, 73 P.3d 687, 701 (Haw. 2003)).

of the case on the date settlement was reached." *Id.* at 1042 (quoting *Living Designs*, 431 F.3d at 368).

In determining the "fair compromise value" of a case absent fraud, "the trier of fact must be guided by expert legal testimony." *Exotics*, 172 P.3d at 1045. Relevant factors for a plaintiff's expert(s) to address include:

> (1) the type of case and difficulty of proof at trial, *e.g.*, rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) **the realistic approximation of total damages that the plaintiff seeks**; (3) **the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial;** (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

*Exotics*, 172 P.3d at 1044 (emphasis added). As such, "one factor among many relevant factors in determining the fair compromise value of a particular claim on the date of settlement is the validity -- or lack thereof -- of the plaintiffs' claim for damages at the time of trial." *Id.* at 1046 (citation omitted). While this *does not* mean a fraudulently induced plaintiff must "demonstrate that their settled claim had merit," *id.* at 1038 (quoting *Living Designs*, 431 F.3d at 367), "the relative strength of the claim in the absence of fraud should be used by the trier of fact to determine the amount of the defrauded party's damages." *Id.* (quoting *Living Designs*, 431 F.3d at 368). "*Evidence of the legal and factual strength of the claim merely goes*

- 5 -

*to the value of the claim that was compromised in determining damages from the fraud.*" *Id.* (emphasis in original) (quoting *DiSabatino v. U.S. Fidelity & Guaranty Co.*, 635 F. Supp. 350, 351 (D. Del. 1986)). For example, "[t]he nature of the injuries in the foregone tort action are relevant only to the extent of how they would affect the value of the claim to be compromised." *Id.* at 1038, 1046 (quoting *DiSabatino*, 635 F. Supp. at 355).

## DISCUSSION

Although styled as "Plaintiffs' Motion to Determine the Legal Standard for the Measurement of Fraud Damages," Dkt. No. 152, Plaintiffs' motion advances two overarching questions. Plaintiffs "seek guidance or a determination from the court on [a] the measure of fraud damages and [b] evidence relevant to so proving damages." Dkt. No. 152-1 at 20; *id.* at 18; Dkt. No. 152 at 2.[4] Plaintiffs contend that: "(1) the affirmed settlement [i]s the baseline; [and] (2) the settlement factors [are] then to be applied *to the withheld evidence* to see how much more, if any, the settlement would be enhanced." Dkt. No. 152-1 at 1 (emphasis added).

---

[4]Plaintiffs specifically note that "[t]his is not a discovery motion on reliance and materiality. This is a motion to determine the legal standard for the measurement of discovery fraud damages." Dkt. No. 169 at 8. "If there is a dispute about what is discoverable on 'materiality' and/or 'reliance,' that will be raised and briefed in the proper course." *Id.* As such, nothing the Court says today should be construed to apply to what information is relevant to the fraud elements of "reliance" and "materiality." Further, since evidence relevant to a party's claim, to a large extent, defines the very scope of discovery under the federal rules, *see* Fed.R.Civ.P. 26(b)(1), it is difficult to see how the second half of Plaintiffs' request can be seen as anything other than a discovery motion.

### A.    The Measure of Fraud Damages

The first question Plaintiffs' pose is easily answered and, in fact, has been easily answered by the parties themselves: The measure of damages in a fraudulent inducement case is "the probable amount of settlement in the absence of fraud after considering all known or foreseeable facts and circumstances affecting the value of the claim on the date of settlement," minus "the amount in settlement already received." *See, e.g.*, *Exotics*, 172 P.3d at 1038, 1042 (citation and internal quotation marks omitted); *accord Living Designs*, 431 F.3d at 368; Dkt. No. 152-1 at 4–5; Dkt. No. 158 at 1, 3; Dkt. No. 169 at 5–6.

Plaintiffs veer off course, however, in contending that "the affirmed settlement [i]s the baseline" for determining fraud damages.  Dkt. No. 152-1 at 1, 18.  There is no "baseline" under *Exotics*.  The measure of damages is "the difference between the fair settlement value absent fraud and the amount of the plaintiffs' actual settlement." *Exotics*, 172 P.3d at 1045.  Nothing in *Exotics* precludes a legal expert from opining that the fair compromise value of the case on the date of settlement, absent fraud, is less than that accepted at settlement.  *See id.* at 1045 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." (citation omitted)).

### B.     Evidence Relevant to Plaintiffs' Fraud Damages

The second question in Plaintiffs' motion—the "evidence relevant to" the fraud damages assessment—is the thrust of Plaintiffs' motion.  The issue here boils down to "whether new evidence" (*e.g.*, undiscovered evidence in the underlying action) "can be generated" as "foreseeable facts and circumstances affecting the value of the claim on the date of settlement" in order to address such settlement factors as the "strength of [the] claim" and "likelihood of success."  *See* Dkt. No. 169 at 5–6.  The Court concludes, as explained below, that under *Exotics*, "*all known or foreseeable facts* and circumstances affecting the value of the claim on the date of settlement" are relevant to the issue of fraud damages.  *Exotics*, 172 P.3d at 1038, 1042 (emphasis added).  This means that "known or foreseeable facts" *that existed* at the time of settlement—irrespective of whether those facts were disclosed to the opposing party—are relevant to determining Plaintiffs' fraud damages.[5]  Arguments to the contrary stray from the principles in *Exotics*.

As a threshold matter, Plaintiffs incorrectly maintain that the settlement factors in *Exotics* are only "applied *to the withheld evidence* to see how much more, if any, the settlement would be enhanced."  Dkt. No. 152-1 at 1, 2, 9 (emphasis

---

[5]Notwithstanding Plaintiffs' assertion that Dkt. No. 152 is not a discovery motion, and the fact that no specific discovery dispute is presented therein, the Court offers the following general guidance to, *inter alia*, facilitate the parties' ongoing settlement efforts, presided over by the Magistrate Judge.

- 8 -

added).  Legal experts and jurors cannot consider the withheld evidence in a vacuum. Context matters.  To understand the relevance (or lack thereof) of the withheld evidence and how it might affect the fair settlement value of a case, the legal experts and the jury must have a comprehensive understanding of the other facts in a plaintiff's case.  As a result, the legal experts must apply the *Exotics* settlement factors to "*all known or foreseeable facts* and circumstances affecting the value of the claim on the date of settlement"—not just the withheld evidence—to enable those experts to render an opinion as to "the probable amount of settlement in the absence of fraud." *Exotics*, 172 P.3d at 1038, 1042 (emphasis added).

The result in *Exotics* is illustrative.  There, the plaintiffs' legal experts failed to establish fraud damages at summary judgment because they "merely presented conclusory opinions." *Exotics*, 172 P.3d at 1049.  The court outlined what the legal experts had failed to explain. *See id.*  The same instruction applies in this case.  Thus, as a practical matter, Plaintiffs' legal experts must provide "opinion testimony as to what specific settlement factors were or should be considered *in settling* each of the plaintiffs' underlying [asbestos personal injury] cases and the evaluation of how those factors would have been altered had they known about the concealed evidence." *Exotics*, 172 P.3d at 1049 (emphasis added).  In particular, the experts must explain "[1] how [Cleaver-Brooks]' conduct affected *the plaintiffs' evaluation* such that they would have settled for more, [2] *what each plaintiff claimed as his*

*damages in the [underlying] cases at the time he settled* and what he recovered, and [3] how the settlement factors would apply to each plaintiff's case." *Id.* (emphasis added). In other words, the legal experts must effectively stand in the shoes of Plaintiffs and their attorneys at the time of settlement and assist the jury in understanding how the case was valued and how the concealed evidence would change that valuation. Any principled legal opinion testimony will entail an assessment of the settlement value of the case absent the concealed evidence. Without that context, a legal opinion as to how the concealed evidence would alter the settlement value of the case would likely be "conclusory." *Id*.

Plaintiffs next contend that the "known or foreseeable facts and circumstances" do not encompass information that could have "reasonably" been discovered "if discovery had been conducted by the defendant in lieu of settling." Dkt. No. 152-1 at 10–11. To that end, Plaintiffs take the position that the only information relevant to fraud damages in this case is (1) the evidence concealed by Cleaver-Brooks and (2) that which the parties had actually exchanged in the underlying cases, not the "undiscovered facts." Dkt. No. 169 at 5–6; Dkt. No. 152-1 at 10–12. To the contrary, the relevant evidence includes much more.

Plaintiffs' line of argument again distorts the fact that the legal experts must apply the *Exotics* settlement factors to "*all known or foreseeable facts* and circumstances affecting the value of the claim on the date of settlement." *Exotics*,

172 P.3d at 1038, 1042 (emphasis added).  One of the prominent settlement factors is "the realistic approximation of total damages that the plaintiff seeks," *i.e.*, "what each plaintiff claimed as his damages in the [asbestos personal injury] cases at the time he settled . . ."  *Exotics*, 172 P.3d at 1044, 1049; *id.* at 1046 ("[O]ne factor among many relevant factors . . . is the validity -- or lack thereof -- of the plaintiffs' claim for damages at the time of trial.").  Attorneys do not determine the value of a case based only upon the facts disclosed to the opposing party; a case valuation is based upon everything the attorney and client know or foresee in their case on "the date of settlement."  *Exotics*, 172 P.3d at 1038, 1042.  It follows that the same universe of information must be considered by the legal expert(s) if they are to opine on the "fair compromise value" of a case and how the fraudulently withheld evidence would (or would not) change that fair compromise value.  As such, if this information existed on the date of settlement, it is relevant to a plaintiff's fraud damages (though still perhaps subject to non-disclosure for reasons aside from relevance, *e.g.*, privilege, on which the Court expresses no opinion).

Some of that relevant information may not have been disclosed in the underlying cases.  But the measure of damages is not focused on "discovered" facts, "disclosed" facts, or "produced" facts—the standard is concerned with "all known or foreseeable facts and circumstances."  A fact is "known" or "foreseeable" to a party even when it has not been disclosed to the opposing party at the time of

settlement. Moreover, a "known" fact (albeit undisclosed) has the potential to adversely affect the value of a case and, most importantly, that party's evaluation of the case at settlement. *Exotics*, 172 P.3d at 1049. Based on their briefs, if Plaintiffs had it their way in this case, that information would never come to light. As a result, nothing would prevent Plaintiffs from inflating what their cases were actually worth when they came to the settlement table. The Court will not license one side of this controversy to fight freestyle, while tying the hands of the other.

Similarly, without a clear picture of the underlying facts of a case that existed at the time of settlement (whether disclosed or not), "the strength of the plaintiffs' claim and the realistic likelihood of his or her success at trial" cannot be evaluated by a legal expert, the jury, or any other person. *Exotics*, 172 P.3d at 1044. How could a legal expert possibly determine the effect concealed evidence would have on the strength of some issue in the plaintiffs' case without knowing the underlying facts (disclosed or not) that existed on the date the plaintiff settled? It cannot be done.[6] As noted, the concealed evidence cannot be evaluated in a vacuum. The underlying facts of a case that existed at the time of settlement (including undisclosed facts) provide the context that matters. A clear picture of the strength

---

[6]To use Plaintiffs' hypothetical as an example, a legal expert (and perhaps the jury) would need to know whether or not a plaintiff had "a strong case on exposure" to Cleaver-Brooks' products and why that was the case at the time of settlement before the expert could engage in any reasoned assessment of how the concealed evidence would have "strengthened" a plaintiff's evidence on exposure to Cleaver-Brooks' products. Dkt. No. 152-1 at 19.

of a claim at the time of settlement will necessarily involve the universe of facts *known* to either party and in existence at the time of settlement, even if a particular fact was not disclosed to the opposing party. Without this information, a legal expert cannot guide the jury in determining (a) the relevance of the concealed evidence and (b) the degree to which that evidence would change the value of the case.

Lastly, Plaintiffs seek "guidance or a determination" on five specific questions:

1. In the 26 underlying federal cases settled in mediation, "[c]an the parties now (1) do discovery on the underlying merits or unknown weaknesses in the other side's case and (2) retain experts for economic loss, causation, safe-product/no defect?"

2. In cases settled after the close of discovery, such as *Cabasug* (in federal court) and *Kaneshiro* (in state court), "[c]an these cases be re-opened for depositions on the merits?"

3. "Can Cleaver-Brooks or [P]laintiffs choose to do more discovery on the underlying merits or probe for weaknesses in the negotiation position of the other side?"

4. "Can Cleaver-Brooks retain experts on the merits or on damages?"

5. "Can plaintiffs use expert reports that they obtained in these cases after the date of settlement with Cleaver-Brooks?"

Dkt. No. 152-1 at 20–21; Dkt. No. 169 at 3–4. "Plaintiffs believe the answer is 'no' to these questions." Dkt. No. 152-1 at 21; Dkt. No. 169 at 4. Cleaver-Brooks makes no effort to grapple with these questions but appears to contend that the answer is categorically "yes." *See* Dkt. No. 158 at 4–5, 7. The problem is that the majority of

these questions are transparent discovery disputes presented at a high level of generality and, thus, not properly before the Court. *See* LR 74.1. Without a material dispute grounded in a concrete set of facts and presented in the proper procedural posture, the Court will not issue an advisory ruling. That said, two matters merit attention.

First, *Exotics* makes clear that at least economic loss expert reports procured after the date of settlement "would likely be necessary" to determine a plaintiff's fraud damages. *Exotics*, 172 P.3d at 1046. As the court in *Exotics* explained, assessing "the validity -- or lack thereof -- of the plaintiffs' claim for damages at the time of trial," including how "[t]he nature of the injuries in the foregone tort action . . . would affect the value of the claim to be compromised . . . requires the application of economic principles to ascertain the reasonably certain future income/profits of the plaintiffs in a particular market, and, thus, economic experts would likely be necessary to aid the jury in determining the underlying tort damages at least in the context of how those economic damages affect the settlement value, if at all." *Id.* (citation omitted).

Second, Plaintiffs need not "demonstrate that their settled claim had merit," *Exotics*, 172 P.3d at 1038 (quoting *Living Designs*, 431 F.3d at 367), but "the relative strength of the claim in the absence of fraud should be used by the trier of fact to determine the amount of the defrauded party's damages." *Exotics*, 172 P.3d at 1038

(quoting *Living Designs*, 431 F.3d at 368). "*Evidence of the legal and factual strength of the claim*" will, therefore, be relevant "*to the value of the claim that was compromised in determining damages from the fraud.*" *Id.* (emphasis in original) (quoting *DiSabatino*, 635 F. Supp. at 351).

In sum, the evidence relevant to Plaintiffs' fraud damages is the "known or foreseeable facts" *that existed* at the time of settlement, including facts that were not disclosed to the opposing party.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion to Determine the Legal Standard for the Measurement of Fraud Damages, Dkt. No. 152, is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

DATED: August 13, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Terry N. Agena, et al. v. Cleaver-Brooks, Inc., et al.*; Civil No. 19-00089-DKW-RT; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DETERMINE THE LEGAL STANDARD FOR THE MEASUREMENT OF FRAUD DAMAGES**